**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
Brittany C. Casola (CA 306561)
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone: 619.762.1900
Facsimile: 619.756.6991
tcarpenter@carlsonlynch.com
bcasola@carlsonlynch.com

Edwin J. Kilpela (To be admitted *pro hac vice*)
1133 Penn Avenue
5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412.322.9243
Facsimile: 412.231.0246
ekilpela@carlsonlynch.com

Additional Counsel at Signature Block.

*Attorneys for Plaintiff and
Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB FIGUEROA, on Behalf of Himself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br>vs.<br><br>CAPITAL ONE, N.A., and Does 1-100, inclusive,<br><br>     Defendants. | Case No.   '18CV0692 JM   BGS<br><br>**CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

**CLASS ACTION COMPLAINT**

Plaintiff Jacob Figueroa ("Plaintiff"), on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.     Plaintiff brings this action on behalf of himself and a class of all similarly situated consumers against Defendant Capital One, N.A. ("Capital One" or "Bank"), arising from a) its unfair and unconscionable assessment of ATM fees on balance inquiries undertaken at its own, in-network ATMs, which it promises will be entirely fee-free; and b) its deceptive, unfair and unconscionable assessment of *two* out-of-network ATM fees ("OON Fees"), when an accountholder conducts a balance inquiry that precedes a cash withdrawal at out-of-network ATMs.

2.     ATM fee revenue for Capital One has risen dramatically in recent years and become one of the primary drivers of the Bank's fee income.  Capital One assesses OON Fees on its accountholders who perform transactions on ATMs not owned by Capital One, and it assesses ATM fees for nothing more than a balance inquiry at its own ATMs, despite contractual promises not to do so.

3.     Capital One's contract documents plainly and expressly promise its accountholders that they will not incur fees for use of in-network ATMs.  Yet Capital One does charge its accountholders for balance inquiries undertaken at its own ATMs.

4.     When Capital One accountholders use a non-Capital One ATM, ATM fees add up very quickly—to accountholders' surprise.  Not only does the non-Capital One ATM operator charge the consumer a fee for use of its ATM, a charge which now averages $3, but Capital One charges a OON Fee for a cash withdrawal as well—a punishing double-fee on accountholders that can rise to a total of several dollars for simply accessing their own money.  With most withdrawals below $100, the ratio of the ATM fees to the withdrawn amount can often be higher than a year's worth of interest.  Capital One never adequately informs consumers they will be charged two separate fees

for each non-bank ATM withdrawal, and never once tells consumers the total amount of that double-fee.

5.     Capital One does not stop there, however.   On some out-of-network ATM withdrawals, Capital One accountholders pay a *third* fee for withdrawing funds at an out-of-network ATM—one fee to the ATM operator and *two* OON Fees to Capital One. Specifically, when Capital One accountholders accept the ATM prompt and check their account balance prior to withdrawing funds at an out-of-network ATM, Capital One charges its accountholder two OON Fees—*one for the balance inquiry and one for the withdrawal*.

6.     For a simple out-of-network ATM withdrawal, for example, Plaintiff paid a total of $6.50 for three separate fees, including $4 for two separate fees to Capital One.

7.     Plaintiff, and other Capital One customers, have been injured by Capital One's improper practices.   On behalf of himself and the class, Plaintiff seeks damages, restitution, and injunctive relief for Capital One's breach of contract and violation of California consumer protection statutes.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Capital One.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Capital One is subject to personal jurisdiction here and regularly conducts business in this District, and because the Plaintiff resides in this District.

## PARTIES

10.     Plaintiff is a citizen of California.

11.     Defendant Capital One is a national bank with its headquarters and principal place of business located in McLean, Virginia.  Capital One has hundreds of affiliates,

such as Capital One Financial and Capital One Bank, N.A.  Among other things, Capital One is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts.  Capital One operates banking centers, and thus conducts business, throughout the State of California.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.   CAPITAL ONE CHARGES ATM FEES FOR BALANCE INQUIRIES UNDERTAKEN AT ITS OWN ATMS, IN VIOLATION OF ITS CONTRACT

12.   Pursuant to Capital One's EFTA Agreement in effect at the time of the relevant transactions:

**Charges for ATM/Debit Card Transactions:** You may…be charged a fee by us, as disclosed in our then current Schedule of Fees and Charges, for each cash withdrawal, funds transfer or balance inquiry that you may make using a non-Capital One Bank branded ATM. **You will not be charged this fee at most ATMs owned and operated by Capital One Bank**, except at certain gaming establishments and other non-branch locations, where we may charge a fee for each cash withdrawal. The amount of fees charged at such ATMs at non-branch locations varies. Any fee charged will be displayed on the ATM screen and you will be given an opportunity to cancel the transaction before the fee is imposed. Please refer to our then current Schedule of Fees and Charges for the amount of this fee.

See EFTA Agreement, p. 3 (emphasis added) (Exhibit A hereto).

13.   The Fee Schedule in effect during the relevant time simply provided that there is no fee "[w]hen you use a Capital One-branded ATM" for a "withdrawal, funds transfer or balance inquiry."

14.   In short, Capital One states no ATM fees whatsoever will be charged for in-network Capital One ATM transactions, except in rare circumstances not applicable here.

15.     In the rare exception when fees may be charged for using a Capital One ATM for any purpose, Capital One promises that "[a]ny fee charged will be displayed on the ATM screen and you will be given an opportunity to cancel the transaction before the fee is imposed."

16.     Capital One never states that a balance inquiry undertaken at a Capital One ATM will incur a fee—either in the EFTA Agreement, the Fee Schedule, or on its ATM screens at the time of the balance inquiry.

17.     Yet Capital One does in fact charge $2 fees for balance inquiries undertaken at its own ATMs.

18.     On June 15, 2015, Plaintiff withdrew $60 from a Capital One in-network ATM.  Despite contractual promises to the contrary, Capital One charged Plaintiff a fee for checking his balance prior to withdrawing the cash.  Plaintiff would not have checked his balance had he been warned that he would be charged a fee for doing so.

19.     Plaintiff was shocked to discover at a later date that he was charged a fee by Capital One for his in-network balance inquiry, especially because he was not warned that the balance inquiry would incur any fee at all.

20.     In violation of its contractual promise to do so, Capital One failed to display this balance inquiry fee on the ATM screen and did not give Plaintiff an opportunity to cancel the transaction before imposing this fee.

## II.    CAPITAL ONE CHARGES TWO OON FEES FOR CERTAIN OUT OF NETWORK ATM TRANSACTIONS IN VIOLATION OF ITS CONTRACT

### A.     Out-of-Network ATM Withdrawals

21.     When consumers use ATMs not owned by their own bank, federal law requires the owners of those out of network ATMs to inform users of the amount of the usage fees charged by the ATM owner.

22.     Thus, it is standard at ATMs in the United States that when a consumer uses an ATM not owned by his home bank, a message is displayed on the screen stating that usage of the ATM will cost a specified amount to proceed with a withdrawal of funds, and

that such a fee is in addition to a fee that may be assessed by a consumer's financial institution for use of the ATM.

23.     That message appears only after a user has decided to perform a cash withdrawal and entered the amount of cash he or she would like to withdraw.

24.     Through repeated exposure to such fee warning messages, consumers are accustomed to being warned of fee assessments at out of network ATMs, and to being provided with the opportunity to decide whether the fees charged are reasonable—before proceeding with their cash withdrawal.

25.     Capital One knows this—that consumers expect a fair fee disclosure at the ATM—and has designed a scheme to assess OON Fees on balance inquiries and exploit consumers' reasonable expectation that they will be provided an opportunity to cancel actions before being assessed a fee.  That scheme involves assessing fees for the mere act of checking a balance before proceeding with a cash withdrawal.

26.     In the US, most ATM display screens immediately ask consumers if they would like to "check their account balance" before proceeding with their transaction.

27.     The ATM screen does not disclose that a balance inquiry alone will incur a usage fee, and indeed ATM owners in the United States in general do not charge usage fees for balance inquiries.

28.     Repeated exposure to such messages is partly responsible for building the reasonable consumer understanding that a balance inquiry is a common lead-in to a withdrawal, a mere first step to the real business at hand, an informational exercise offered by the ATM to help inform the cash withdrawal.

29.     Reasonable consumers like Plaintiff do not, in sum, understand a balance inquiry to be an independent transaction worthy of a separate fee.

30.     Capital One knows this——that consumers expect a balance inquiry fee to be an included part of a cash withdrawal—and has designed a scheme to assess OON Fees on those balance inquiries.  The Bank preys on the common sense that a balance inquiry preceded by a cash withdrawal is not an independent basis for a fee.

31.     Thus, in most circumstances, there is simply no warning at the ATM that a balance inquiry alone could incur a fee.

32.     As a result, consumers have zero expectation that their home bank will charge a separate fee for a balance inquiry, especially one that precedes a cash withdrawal at the same ATM.

33.     If a bank is going to charge such a conscience-shocking fee, it must fully and fairly disclose such a fee in its account documentation.  Capital One did the opposite— providing express and implied indications that balance inquires would not incur OON Fees.

### B.     Capital One's Account Contract

34.     Plaintiff has a Capital One checking account, which is governed by Capital One's standardized account agreement.

35.     Capital One issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, and ATM withdrawals at both Capital One and non-Capital One ATMs.

36.     Against the backdrop of the reasonable consumer expectations and federal law above, Capital One's disclosures deceive consumers and reinforce the reasonable understanding that no fee will be assessed for a balance inquiry—especially if ATM users are not warned beforehand.

37.     Capital One's disclosures also reinforce the common sense presumption that there can be no balance inquiry fee when such an inquiry is in conjunction with a cash withdrawal at the same ATM.

38.     Pursuant to Capital One's EFTA Agreement in effect at the time of the relevant transactions:

**Charges for ATM/Debit Card Transactions:** When you use your ATM/Debit Card at a non-Capital One Bank branded ATM, the ATM owner/operator may charge you a fee for your use of their ATM, and you may be charged a fee for a balance inquiry even if you do not complete a

transaction. The fee charged should be disclosed to you on the ATM, and you should be given an opportunity to cancel the transaction before the fee is imposed. You may also be charged a fee by us, as disclosed in our then current Schedule of Fees and Charges, for each cash withdrawal, funds transfer or balance inquiry that you may make using a non-Capital One Bank branded ATM.

<u>See</u> EFTA Agreement, p. 3 (Exhibit A hereto).

39.     The Fee Schedule referenced by Capital One in the EFTA Agreement, which Capital One states will clarify precisely what fees will be charged "by us," has just one relevant line, stating that $2 will be charged per "transaction."

40.     <u>First</u>, the contract plainly promises that ATM owners will not assess fees for balance inquiries unless they inform consumers of the amount of the fee beforehand.  In general, and in Plaintiff's case here, the ATM owner does not warn the user that there is a separate charge for a balance inquiry, and in fact the ATM owner does not charge a separate fee to the user for a balance inquiry.  Therefore, the user can have no reasonable expectation that his home bank will assess a fee for an action that the ATM owner does not charge or warn about.

41.     <u>Second</u>, even by Capital One's own terms, a balance inquiry is not a transaction:  "you may be charged a balance inquiry even if you do not complete a *transaction*."   By simple logic, this means a balance inquiry cannot itself be a "transaction." And since Capital One has promised only "transactions" will incur a OON Fee, it violates its contract when it charges OON Fees on balance inquiries.

42.     Moreover, accountholders using a non-Capital One ATM are never warned that they will receive **two separate fees** from Capital One—plus another one from the ATM owner—when they check their balance before proceeding with a cash withdrawal at the same ATM.  But that is exactly what happens.

43.    As discussed *supra*, ATMs immediately prompt consumers to check their balance, and never warn that such a balance inquiry will be the basis for a fee, either from the ATM owner or from the consumer's own bank.  Capital One's disclosures do nothing to disabuse consumers of the reasonable understanding that a balance inquiry will not incur a separate fee when it precedes a cash withdrawal at the same ATM, and never state outright that such a fee will be assessed.  Again, the Fee Schedule says nothing more than "$2.50 per transaction."

44.    Moreover, reasonable consumers like Plaintiff do not understand—and are never warned—that a mere balance inquiry (in which no funds are transferred in any way) counts on its own as a separate "transaction" that could be the basis for an independent OON Fee.

45.    Merriman-Webster defines "transaction" to mean "something transacted; *especially* : an exchange or transfer of goods, services, or funds." There is no exchange or transfer involved in a balance inquiry; a balance inquiry is merely a precursor to the actual "transaction"—the cash withdrawal.

46.    Further, Capital One's disclosure that the <u>ATM owner</u> may charge a fee for a balance inquiry "even if you do not complete a transaction" is problematic for several reasons.

47.    First, as is the case here, owners generally do not charge such fees (and therefore do not disclose such fees).  There can thus be no reasonable expectation that Capital One will do so.

48.    Second, even if ATM owners did charge such fees, the "even if you do not complete a transaction" phrase indicates that a consumer will **<u>not</u>** be charged a separate OON Fee for a balance inquiry if he **<u>does</u>** complete a cash withdrawal (and therefore does pay an OON Fee for that cash withdrawal)—especially where, as here, the ATM owner does not charge separate fees for balance inquiries and never provides an on-screen warning that either it or the consumer's bank will do so.

49.     The reasonable consumer understanding that a balance inquiry is not itself an independent transaction or basis for a fee is the very reason the "even if you do not complete a transaction" is necessary. *Indeed, the warning would be nonsensical if it was generally understood that the balance inquiry was an independent transaction worthy of a fee.*

50.     In other words, if the balance inquiry and the transaction (withdrawal) were not linked and intrinsic to each other in the minds of reasonable consumers—there would be no need to disclose the special case of when they are de-linked.

51.     At the very least, by the repeated use of "may," Capital One provides itself discretion as to when it will assess OON Fees, and it uses that discretion in bad faith when it assesses an OON Fee on both a balance inquiry and a cash withdrawal at the same ATM.

### C.     Plaintiff's Out of Network ATM Withdrawals

52.     On April 28, 2015, Plaintiff withdrew $20 in cash from an out of network ATM in New York, New York.  Prior to withdrawing the cash, Plaintiff was prompted to check his balance, and he did so.  He received no warning that doing so would incur a fee from the ATM owner or from his own bank.  The ATM owner charged Plaintiff $3 for the cash withdrawal, but did not charge a fee for the balance inquiry.  Later, Capital One charged Plaintiff two OON Fees – one for the balance inquiry and one for the cash withdrawal – of $2 each.  Plaintiff would not have proceeded with the balance inquiry or the cash withdrawal if he had been notified by the ATM owner or by Capital One that he would be charged three separate fees, totaling $7, for his $20 cash withdrawal.

53.     Plaintiff was shocked to discover that he was charged these two OON Fees by Capital One, in addition to the ATM owner's fee for the cash withdrawal, especially because he was not warned that the balance inquiry would incur any fee at all.

### CLASS ALLEGATIONS

54.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies

the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

55.    The proposed classes are defined as:

- All Capital One checking account holders in the United States who within the applicable statute of limitations were assessed an ATM fee for a balance inquiry at in-network ATM (the "In-Network Class").

- All Capital One checking account holders in California who within the applicable statute of limitations were assessed an ATM fee for a balance inquiry at in-network ATM (the "California In-Network Sub-Class").

- All Capital One checking account holders in New York who within the applicable statute of limitations were assessed an ATM fee for a balance inquiry at in-network ATM (the "New York In-Network Sub-Class").

- All Capital One checking account holders in the United States who within the applicable statute of limitations were assessed two OON Fees when they performed a balance inquiry prior to withdrawing cash at an out-of-network ATM (the "National Balance Inquiry Fee Class").

- All Capital One checking account holders in California who within the applicable statute of limitations were assessed two OON Fees when they performed a balance inquiry prior to withdrawing cash at an out-of-network ATM (the "California OON Fee Sub-Class").

- All Capital One checking account holders in New York who within the applicable statute of limitations were assessed two OON Fees when they performed a balance inquiry prior to withdrawing cash at an out-of-network ATM (the "New York OON Fee Sub-Class").

The National Classes and the California and New York Subclasses are collectively referred to as the "Classes."

56.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

57.     Excluded from the Classes are Capital One, its parents, subsidiaries, affiliates, officers, and directors; any entity in which Capital One has a controlling interest; all customers who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

58.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Capital One's records.

59.     The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was charged for a balance inquiry at an in-network ATM; was charged two OON Fees when he checked his balance prior to withdrawing cash at an out of network ATM; was charged OON Fees for transactions at an out-of-network ATM without the Fee charged by Capital One being displayed on the ATM screen and being given an opportunity to cancel the transaction before the fee was imposed.  The representative Plaintiff, like all Class members, has been damaged by Capital One's misconduct in that he was assessed unfair and unconscionable fees.  Furthermore, the factual basis of Capital One's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

60.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

61.     Among the questions of law and fact common to the Classes are whether Capital One:

        a.      Deceived consumers;

        b.      Breached its contract;

        c.      Breached its covenant of good faith and fair dealing with Plaintiff and other members of the Classes through its overdraft policies and practices;

d.      Converted money belonging to Plaintiff and other members of the Classes through its OON Fee policies and practices;

e.      Was unjustly enriched through its OON Fee policies and practices; and

f.      Violated the consumer protection acts of certain states through its OON Fee policies and practices.

62.     Other questions of law and fact common to the Classes include:

a.      The proper method or methods by which to measure damages, and

b.      The declaratory relief to which the Classes are entitled.

63.     Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices of Capital One's Account Agreement and other related documents.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

64.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Capital One, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Capital One's misconduct will proceed without remedy.

66.     Even if Class members themselves could afford such individual litigation, the court system could not.   Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management

difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

#### (On Behalf of the National Classes)

67.     Plaintiff repeats paragraphs 1 through 66 above.

68.     Plaintiff and Capital One have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Capital One's EFTA Agreement, Schedule of Fees and Charges, and related documentation.

69.     No contract provision authorizes Capital One to charge a fee for a balance inquiry at an in-network ATM, especially when, in violation of its contractual promise to do so, Capital One failed to display this balance inquiry fee on the ATM screen and did not give Plaintiff an opportunity to cancel the transaction before imposing this fee.

70.     Therefore, Capital One breached the terms of its EFTA Agreement by charging such fees on a transaction at an in- network ATM.

71.     No contractual provision authorizes Capital One to assess an OON Fee for a transaction at an out-of-network ATM, without the Fee charged by Capital One being displayed on the ATM screen and being given an opportunity to cancel the transaction before the fee is imposed.

72.     Therefore, Capital One breached the terms of its EFTA Agreement by charging OON Fees for such transactions at an out-of-network ATM.

73.     Plaintiff and members of the National Classes have performed all, or substantially all, of the obligations imposed on them under the EFTA Agreement.

74.    Plaintiff and members of the National Classes have sustained damages as a result of Capital One's breach of the EFTA Agreement.

## SECOND CLAIM FOR RELIEF

### Breach of the Covenant of Good Faith and Fair Dealing

### (On Behalf of the National Classes)

75.    Plaintiff repeats paragraphs 1 through 74 above.

76.    Plaintiff and Capital One have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Capital One's EFTA Agreement and related documentation.

77.    Under the laws of the states where Capital One does business, good faith is an element of every contract.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

78.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

79.    Capital One has breached the covenant of good faith and fair dealing in the EFTA Agreement through its ATM Fee policies and practices as alleged herein.

80.    Plaintiff and members of the National Classes have performed all, or substantially all, of the obligations imposed on them under the EFTA Agreement.

Case No.                                          14
CLASS ACTION COMPLAINT

81.     Plaintiff and members of the National Classes have sustained damages as a result of Capital One's breach of the covenant of good faith and fair dealing.

### THIRD CLAIM FOR RELIEF

### Conversion

### (On Behalf of the National Classes)

82.     Plaintiff repeats paragraphs 1 through 81 above.

83.     Capital One had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

84.     Capital One has wrongfully collected overdraft fees from Plaintiff and the members of the National Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

85.     Capital One has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the National Classes, without legal justification.

86.     Capital One continues to retain these funds unlawfully without the consent of Plaintiff or members of the National Classes.

87.     Capital One intends to permanently deprive Plaintiff and the members of the National Classes of these funds.

88.     These funds are properly owned by Plaintiff and the members of the National Classes, not Capital One, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the National Classes.

89.     Plaintiff and the members of the National Classes are entitled to the immediate possession of these funds.

90.     Capital One has wrongfully converted these specific and readily identifiable funds.

91.     Capital One's wrongful conduct is continuing.

92.     As a direct and proximate result of this wrongful conversion, Plaintiff and the

members of the National Classes have suffered and continue to suffer damages.

93.     By reason of the foregoing, Plaintiff and the members of the National Classes are entitled to recover from Capital One all damages and costs permitted by law, including all amounts that Capital One has wrongfully converted.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

### (On Behalf of the National Classes)

94.     Plaintiff repeats paragraphs 1 through 93 above.

95.     Plaintiff, on behalf of himself and the National Classes, assert a common law claim for unjust enrichment.

96.     By means of Capital One's wrongful conduct alleged herein, Capital One knowingly provided banking services to Plaintiff and members of the National Classes that was unfair, unconscionable, and oppressive.

97.     Capital One knowingly received and retained wrongful benefits and funds from Plaintiff and members of the National Classes.  In so doing, Capital One acted with conscious disregard for the rights of Plaintiff and members of the National Classes.

98.     As a result of Capital One's wrongful conduct as alleged herein, Capital One has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the National Classes.

99.     Capital One's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

100.    Under the common law doctrine of unjust enrichment, it is inequitable for Capital One to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiff and members of the National Classes in an unfair, unconscionable, and oppressive manner.  Capital One's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

101.    The financial benefits derived by Capital One rightfully belong to Plaintiff

and members of the National Classes.  Capital One should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the National Classes all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Capital One traceable to Plaintiff and the members of the National Classes.

102.   Plaintiff and members of the National Classes have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF

### Violation of California Unfair Competition Law, Unfair Prong

### Business and Professions Code § 17200

### (On Behalf of the California Subclasses)

103.   Plaintiff repeats paragraphs 1 through 102 above.

104.   Defendant's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, et seq.

105.   The UCL prohibits, and provides civil remedies for, unfair competition.  Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

106.   By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable,  and sweeps within its scope acts and practices not specifically proscribed by any other law.

107.   Defendant's conduct violates the UCL's "unfair" prong insofar as Defendant charged OON Fees for a cash withdrawal preceded by a balance inquiry at the same out of network ATM.

108.   Defendant's conduct was not motivated by any business or economic need or rationale.  The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons,

justifications, or motives.

109.   The harm to Plaintiff and Class Members arising from Defendant's unfair practices relating to the imposition of OON Fees outweighs the utility, if any, of those practices.

110.   Defendant's unfair business practices relating to OON Fees as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and members of the Class.

111.   Defendant's conduct was substantially injurious to consumers in that they have been forced to pay OON Fees, which are not disclosed in their contract with CAPITAL ONE.

112.   As a result of Defendant's violations of the UCL's "unfair" prong, Plaintiff and members of the Class have paid, and/or will continue to pay OON Fees and thereby have suffered and will continue to suffer actual damages.

## FIFTH CLAIM FOR RELIEF
### Violation of California Unfair Competition Law, Fraudulent Prong
### Business and Professions Code § 17200
### (On Behalf of the California Subclasses)

113.   Plaintiff repeats paragraphs 1 through 112 above.

114.   Defendant's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, et seq.

115.   The UCL prohibits, and provides civil remedies for, unfair competition.  Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

116.   By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

117.   Defendant committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when it affirmatively and knowingly misrepresented its OON Fee practices.  Such representations misled the Plaintiff and are likely to mislead the public.

118.   In addition, Defendant committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when it affirmatively and knowingly omitted the total price of out of network ATM transactions and failed to inform consumers they would be charged two fees for a cash withdrawal preceded by a balance inquiry at the same out of network ATM. Such omissions misled the Plaintiff and are likely to mislead the public.

119.   As a result of Defendant's violations of the UCL's "fraudulent" prong, Plaintiff and members of the Class have paid, and/or will continue to pay, unreasonably excessive amounts of money for banking services and thereby have suffered and will continue to suffer actual damages.

## FIFTH CLAIM FOR RELIEF

## NY GBL § 350

## (On Behalf of the Classes)

120.   Plaintiff repeats paragraphs 1 through 119 above.

121.   The New York Consumer Protection Act (N.Y. Gen. Bus. Law §§ 349, 350 (Consol.)) was enacted by the New York legislature to protect consumers from unfair, unconscionable and deceptive business practices.

122.   Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices.   Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy assessing and collecting overdraft fees where it is not legally permitted to do so.

123.   In addition, Defendant has done so through substantially aggravating circumstances in which it intentionally and knowingly engaged in this unlawful practice that was targeted and directed at the poorest and most financially vulnerable customers.

As a result of the unlawful collection of overdraft fees, Plaintiffs and the class have been harmed and Defendant has been improperly and unjustly enriched.

124.   These violations have directly, foreseeably, and proximately caused damages to Plaintiffs and the proposed Classes in amounts yet to be determined.  They have also unjustly enriched Defendant by an amount yet to be determined.

125.   As a result of Defendant's violations of the New York Consumer Protection Act prohibiting unfair and deceptive acts and practices, Plaintiff and members of the proposed Classes have suffered actual damages for which Defendant is liable in an amount up to and equal to threefold damages.  Plaintiff and the Classes are likewise entitled to recover by disgorgement an amount sufficient to restore to Plaintiff and the Classes all monies improperly taken from them.  In addition, Plaintiffs and the Classes are entitled to injunctive relief to prevent Defendant from continuing to harm them through its wrongful actions and conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays on behalf of himself and all others similarly situated, for judgment against Defendant as follows:

126.   Certifying the Classes as requested herein, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;

127.   Declaring Capital One's overdraft fee policies and practices to be wrongful, unfair, and unconscionable;

128.   Restitution of all overdraft fees paid to Capital One by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

129.   Disgorgement of the ill-gotten gains derived by Capital One from its misconduct;

130.   Actual damages in an amount according to proof;

131.   Punitive and exemplary damages;

132.   Pre-judgment interest at the maximum rate permitted by applicable law;

133.   Costs and disbursements assessed by Plaintiff in connection with this action,

1    including reasonable attorneys' fees pursuant to applicable law; and

2         134.   Such other relief as this Court deems just and proper.

3                        **DEMAND FOR JURY TRIAL**

4         Plaintiff hereby demands a jury trial for all of the claims so triable.

5

6    Dated: April 6, 2018                    **CARLSON LYNCH SWEET**
                                             **KILPELA & CARPENTER, LLP**

7

8                                             */s/ Todd D. Carpenter*
                                             Todd D. Carpenter (CA 234464)
9                                            Brittany C. Casola (CA 306561)
                                             1350 Columbia Street, Ste. 603
10                                           San Diego, California 92101
                                             Telephone: 619.762.1900
11                                           Facsimile: 619.756.6991
                                             tcarpenter@carlsonlynch.com
12                                           bcasola@carlsonlynch.com

13                                           Edwin J. Kilpela
                                             1133 Penn Avenue, 5th Floor
14                                           Pittsburgh, Pennsylvania 15222
                                             Telephone: (412) 322-9243
15                                           Facsimile: (412) 231-0246
                                             ekilpela@carlsonlynch.com

16                                           **KALIEL PLLC**
                                             Jeffrey D. Kaliel, Esq. (CA 238293)
17                                           jkaliel@kalielpllc.com
                                             Sophia Gold (To be admitted *pro hac vice*)
18                                           sgold@kalielpllc.com
                                             1875 Connecticut Avenue NW, 10th Floor
19                                           Washington, DC 20009
                                             Telephone: 202-350-4783
20

21                                           **MCCUNE WRIGHT LLP**
                                             Richard D. McCune, Esq. (CA 132124)
22                                           Jae (Eddie) K. Kim, Esq. (CA 236805)
                                             2068 Orange Tree Lane, Suite 216
23                                           Redlands, California  92374

24                                           **THE KICK LAW FIRM**
                                             Taras P. Kick, Esq. (CA 143379)
25                                           APC 201 Wilshire Boulevard, Suite 350
                                             Santa Monica, California 90401

26                                           *Attorneys for Plaintiff*

27

28

Case No.                        21
                        CLASS ACTION COMPLAINT