**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
Brittany C. Casola (CA 306561)
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone: 619.762.1900
Facsimile: 619.756.6991
tcarpenter@carlsonlynch.com
bcasola@carlsonlynch.com

Edwin J. Kilpela (To be admitted *pro hac vice*)
1133 Penn Avenue
5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412.322.9243
Facsimile: 412.231.0246
ekilpela@carlsonlynch.com

Additional Counsel at Signature Block.

*Attorneys for Plaintiffs and*
*Proposed Class Counsel*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB FIGUEROA and MARY JACKSON, on Behalf of Themselves and All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>CAPITAL ONE, N.A,, and Does 1-100, inclusive,<br><br>          Defendant. | Case No. 18cv692 JM(BGS)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Jacob Figueroa and Mary Jackson, ("Plaintiffs"), on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

## <u>INTRODUCTION</u>

1.     Plaintiffs bring this action on behalf of themselves and a class of all similarly situated consumers against Defendant Capital One, N.A. ("Capital One" or "Bank"), arising from a) its unfair and unconscionable assessment of ATM fees on balance inquiries undertaken at out of network ATMs; and b) its deceptive, unfair and unconscionable assessment of *two* out-of-network ATM fees ("OON Fees"), when an accountholder conducts a balance inquiry that precedes a cash withdrawal at out-of-network ATMs.

2.      ATM fee revenue for Capital One has risen dramatically in recent years and become one of the primary drivers of the Bank's fee income.  Capital One assesses OON Fees on its accountholders who perform balance inquiries and transactions on ATMs not owned by Capital One.

3.     When Capital One accountholders use a <u>non-Capital One ATM</u>, ATM fees add up very quickly—to accountholders' surprise.  Not only does the non-Capital One ATM operator charge the consumer a fee for use of its ATM, a charge which now averages $3, but Capital One charges a OON Fee for a cash withdrawal as well—a punishing double-fee on accountholders that can rise to a total of several dollars for simply accessing their own money.  With most withdrawals below $100, the ratio of the ATM fees to the withdrawn amount can often be higher than a year's worth of interest.  Capital One never adequately informs consumers they will be charged two separate fees for each non-bank ATM withdrawal, and never once tells consumers the total amount of that double-fee.

4.     Capital One does not stop there, however.  On some out-of-network ATM withdrawals, Capital One accountholders pay a *third* fee for withdrawing funds at an out-

of-network ATM—one fee to the ATM operator and *two* OON Fees to Capital One. Specifically, when Capital One accountholders accept the ATM prompt and check their account balance prior to withdrawing funds at an out-of-network ATM, Capital One charges its accountholder two OON Fees—*one for the balance inquiry and one for the withdrawal*.

5.      For a simple out-of-network ATM withdrawal, for example, Plaintiffs paid a total of $7 for three separate fees, including $4 for two separate fees to Capital One.

6.      Plaintiffs, and other Capital One customers, have been injured by Capital One's improper practices.   On behalf of himself and the class, Plaintiffs seeks damages, restitution, and injunctive relief for Capital One's breach of contract and violation of California consumer protection statutes.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Capital One.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Capital One is subject to personal jurisdiction here and regularly conducts business in this District, and because the Plaintiffs resides in this District.

## PARTIES

9.      Plaintiffs are citizens of California.

10.      Defendant Capital One is a national bank with its headquarters and principal place of business located in McLean, Virginia.  Capital One has hundreds of affiliates, such as Capital One Financial and Capital One Bank, N.A.  Among other things, Capital One is engaged in the business of providing retail banking services to consumers, including Plaintiffs and members of the putative classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts.  Capital

One operates banking centers, and thus conducts business, throughout the State of California.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I.     CAPITAL ONE CHARGES TWO OON FEES FOR CERTAIN OUT OF NETWORK ATM TRANSACTIONS IN VIOLATION OF ITS CONTRACT**

**Out-of-Network ATM Withdrawals**

11.     When consumers use ATMs not owned by their own bank, federal law requires the owners of those out of network ATMs to inform users of the amount of the usage fees charged by the ATM owner.

12.     Thus, it is standard at ATMs in the United States that when a consumer uses an ATM not owned by his home bank, a message is displayed on the screen stating that usage of the ATM will cost a specified amount to proceed with a withdrawal of funds, and that such a fee is in addition to a fee that may be assessed by a consumer's financial institution for use of the ATM.

13.     That message appears only after a user has decided to perform a cash withdrawal and entered the amount of cash he or she would like to withdraw.

14.     Through repeated exposure to such fee warning messages, consumers are accustomed to being warned of fee assessments at out of network ATMs, and to being provided with the opportunity to decide whether the fees charged are reasonable—before proceeding with their cash withdrawal.

15.     Capital One knows this—that consumers expect a fair fee disclosure at the ATM—and has designed a scheme to assess OON Fees on balance inquiries and exploit consumers' reasonable expectation that they will be provided an opportunity to cancel actions before being assessed a fee.  Capital One's scheme involves assessing fees for the mere act of checking a balance before proceeding with a cash withdrawal.

16.     In the US, most ATM display screens immediately ask consumers if they would like to "check" or "get" their account balance (or similar language) before proceeding with their transaction.

3

**FIRST AMENDED CLASS ACTION COMPLAINT**

17.     The ATM screen does not disclose that a balance inquiry alone will incur a usage fee, and indeed ATM owners in the United States in general do not charge usage fees to consumers for balance inquiries.

18.     Repeated exposure to such messages is partly responsible for building the reasonable consumer understanding that a balance inquiry is a common lead-in to a withdrawal; a mere first step to the real business at hand (the withdrawal); an informational exercise offered by the ATM to help inform the cash withdrawal.

19.     Reasonable consumers like Plaintiffs do not, in sum, understand a balance inquiry to be an independent transaction worthy of a separate fee.

20.     Capital One knows this——that consumers expect a balance inquiry fee to be an included part of a cash withdrawal—and yet has designed a scheme to assess OON Fees on those balance inquiries.  The Bank preys on the common sense that a balance inquiry preceded by a cash withdrawal is not an independent basis for a fee.

21.     Thus, in most circumstances, there is simply no warning at the ATM that a balance inquiry alone could incur a fee.

22.     As a result, consumers have zero expectation that their home bank will charge a separate fee for a balance inquiry, especially one that precedes a cash withdrawal at the same ATM.

23.     If a bank is going to charge such a conscience-shocking fee, it must fully and fairly disclose such a fee in its account documentation.  Capital One did the opposite— providing express and implied indications that balance inquires would *not* incur OON Fees.

## A.     Capital One's Account Contract

24.     Plaintiffs have a Capital One checking account, which is governed by Capital One's standardized account agreement.

25.     Capital One issues debit cards to its checking account customers, including Plaintiffs, which allows its customers to have electronic access to their checking accounts

for purchases, payments, and ATM withdrawals at both Capital One and non-Capital One ATMs.

26.     Against the backdrop of the reasonable consumer expectations and federal law above, Capital One's disclosures deceive consumers and reinforce the reasonable understanding that no fee will be assessed for a balance inquiry—especially if ATM users are not warned beforehand.

27.     Capital One's disclosures also reinforce the common sense presumption that there can be no balance inquiry fee when such an inquiry is in conjunction with a cash withdrawal at the same ATM.

28.     Pursuant to Capital One's EFTA Agreement in effect at the time of the relevant transactions:

> **Charges for ATM/Debit Card Transactions:** When you use your ATM/Debit Card at a non-Capital One Bank branded ATM, the ATM owner/operator may charge you a fee for your use of their ATM, and you may be charged a fee for a balance inquiry even if you do not complete a transaction. The fee charged should be disclosed to you on the ATM, and you should be given an opportunity to cancel the transaction before the fee is imposed. You may also be charged a fee by us, as disclosed in our then current Schedule of Fees and Charges, for each cash withdrawal, funds transfer or balance inquiry that you may make using a non-Capital One Bank branded ATM.

> See EFTA Agreement, p. 3 (attached as Exhibit A hereto).

29.     The Fee Schedule referenced by Capital One in the EFTA Agreement, which Capital One states will clarify precisely what fees will be charged "by us," has just one relevant line, stating that $2 will be charged per "transaction."

30.     First, the contract plainly promises that ATM owners will not assess fees for balance inquiries unless they inform consumers of the amount of the fee beforehand.  In general, and in Plaintiffs' case here, the ATM owner does not warn the user that there is a separate charge for a balance inquiry, and in fact the ATM owner does not charge a

separate fee to the user for a balance inquiry.  Therefore, the user can have no reasonable expectation that his home bank (Capital One) will assess a fee for an action that the ATM owner does not charge or warn about.

31.    Second, even by Capital One's own terms, a balance inquiry is not a transaction:  "you may be charged a balance inquiry even if you do not complete a *transaction*."   By simple logic, this means a balance inquiry cannot itself be a "transaction." And since Capital One has promised in the Fee Schedule that only "transactions" will incur a OON Fee, it violates its contract when it charges OON Fees on balance inquiries.

32.    Moreover, accountholders using a non-Capital One ATM are never warned that they will receive **two separate fees** from Capital One—plus another one from the ATM owner—when they check their balance before proceeding with a cash withdrawal at the same ATM.  But that is exactly what happens.

33.    As discussed *supra*, ATMs immediately prompt consumers to check their balance, and never warn that such a balance inquiry will be the basis for a fee, either from the ATM owner or from the consumer's own bank.  Capital One's disclosures do nothing to disabuse consumers of the reasonable understanding that a balance inquiry will not incur a separate fee when it precedes a cash withdrawal at the same ATM, and never state outright that such a fee will be assessed.  Again, the Fee Schedule says nothing more than "$2.00 per transaction."

34.    Moreover, reasonable consumers like Plaintiffs do not understand—and are never warned—that a mere balance inquiry (in which no funds are transferred in any way) counts on its own as a separate "transaction" that could be the basis for an independent OON Fee.

35.    Merriman-Webster defines "transaction" to mean "something transacted; *especially* : an exchange or transfer of goods, services, or funds." There is no exchange or transfer involved in a balance inquiry; a balance inquiry is merely a precursor to the actual "transaction"—the cash withdrawal.

36.   Further, Capital One's disclosure that the <u>ATM owner</u> may charge a fee for a balance inquiry "even if you do not complete a transaction" is problematic for several reasons.

37.   First, as is the case here, owners generally do not charge such fees to consumers (and therefore do not disclose such fees).  There can thus be no reasonable expectation that Capital One will do so.

38.   Second, even if ATM owners did charge such fees, the "even if you do not complete a transaction" phrase indicates that a consumer will **not** be charged a separate OON Fee for a balance inquiry if he **does** complete a cash withdrawal (and therefore does pay an OON Fee for that cash withdrawal)—especially where, as here, the ATM owner does not charge separate fees for balance inquiries and never provides an on-screen warning that either it or the consumer's bank will do so.

39.   The reasonable consumer understanding that a balance inquiry is not itself an independent transaction or basis for a fee is the very reason the "even if you do not complete a transaction" is necessary. *Indeed, the warning would be nonsensical if it was generally understood that the balance inquiry was an independent transaction worthy of a fee.*

40.   In other words, if the balance inquiry and the transaction (withdrawal) were not linked and intrinsic to each other in the minds of reasonable consumers—there would be no need to disclose the special case of when they are de-linked.

41.   At the very least, by the repeated use of "may," Capital One provides itself discretion as to when it will assess OON Fees, and it uses that discretion in bad faith when it assesses an OON Fee on both a balance inquiry and a cash withdrawal at the same ATM.

**B.   <u>Plaintiffs' Out of Network ATM Withdrawals</u>**

42.   On August 31, 2017, Plaintiffs withdrew $300 in cash from an out of network ATM in Studio City, CA.   Prior to withdrawing the cash, Plaintiffs were prompted to check their balance, and they did so.  They received no warning that doing so

would incur a fee from the ATM owner or from their own bank.  The ATM owner charged Plaintiffs $3 for the cash withdrawal, but did not charge a fee for the balance inquiry.  Later, Capital One charged Plaintiffs two OON Fees – one for the balance inquiry and one for the cash withdrawal – of $2 each.  Plaintiffs would not have proceeded with the balance inquiry or the cash withdrawal if he had been notified by the ATM owner or by Capital One that they would be charged <u>three separate fees, totaling $7, for their cash withdrawal.</u>

43.    Plaintiffs were shocked to discover that they were charged these two OON Fees by Capital One, in addition to the ATM owner's fee for the cash withdrawal, especially because they were not warned that the balance inquiry would incur any fee at all.

44.    On February 31, 2017, Plaintiffs withdrew $60 in cash from an out of network ATM in Hollywood, CA.  Prior to withdrawing the cash, Plaintiffs were prompted to check their balance, and they did so.  They received no warning that doing so would incur a fee from the ATM owner or from their own bank.  The ATM owner charged Plaintiffs $3 for the cash withdrawal, but did not charge a fee for the balance inquiry.  Later, Capital One charged Plaintiffs two OON Fees – one for the balance inquiry and one for the cash withdrawal – of $2 each.  Plaintiffs would not have proceeded with the balance inquiry or the cash withdrawal if he had been notified by the ATM owner or by Capital One that they would be charged <u>three separate fees, totaling $7, for their cash withdrawal.</u>

45.    Plaintiffs were shocked to discover that they were charged these two OON Fees by Capital One, in addition to the ATM owner's fee for the cash withdrawal, especially because they were not warned that the balance inquiry would incur any fee at all.

46.    On April 28, 2015, Plaintiff withdrew $20 in cash from an out of network ATM in New York, New York.  Prior to withdrawing the cash, Plaintiff was prompted to check his balance, and he did so.  He received no warning that doing so would incur a fee

from the ATM owner or from his own bank.  The ATM owner charged Plaintiff $3 for the cash withdrawal, but did not charge a fee for the balance inquiry.  Later, Capital One charged Plaintiff two OON Fees – one for the balance inquiry and one for the cash withdrawal – of $2 each.  Plaintiff would not have proceeded with the balance inquiry or the cash withdrawal if he had been notified by the ATM owner or by Capital One that he would be charged three separate fees, totaling $7, for his $20 cash withdrawal.

47.    Plaintiff was shocked to discover that he was charged these two OON Fees by Capital One, in addition to the ATM owner's fee for the cash withdrawal, especially because he was not warned that the balance inquiry would incur any fee at all.

## II.    CAPITAL ONE CHARGES FEES FOR OUT OF NETWORK BALANCE INQUIRIES EVEN THOUGH ACCOUNTHOLDERS ARE NOT WARNED AT THE ATM OR IN THE FEE SCHEDULE THAT CAPITAL ONE WILL DO SO

48.    On June 15, 2015, Plaintiffs performed a balance inquiry at an out of network ATM.  They were not warned at the ATM that checking their balance would incur a fee, either from the ATM owner or from his own bank.

49.    As discussed above, The Fee Schedule referenced by Capital One in the EFTA Agreement, which Capital One states will clarify precisely what fees will be charged "by us," has just one relevant line, stating that $2 will be charged per "transaction."

50.    First, the contract plainly promises that ATM owners will not assess fees for balance inquiries unless they inform consumers of the amount of the fee beforehand.  In general, and in Plaintiffs' case here, the ATM owner does not warn the user that there is a separate charge for a balance inquiry, and in fact the ATM owner does not charge a separate fee to the user for a balance inquiry.  Therefore, the user can have no reasonable expectation that his home bank will assess a fee for an action that the ATM owner does not charge or warn about.

51.   Second, even by Capital One's own terms, a balance inquiry is not a transaction:  "you may be charged a balance inquiry even if you do not complete a *transaction*."   By simple logic, this means a balance inquiry cannot itself be a "transaction." And since Capital One has promised only "transactions" will incur a OON Fee, it violates its contract when it charges OON Fees on balance inquiries.

52.   Because Plaintiffs undertook no "transaction" when they checked their balance at an out of network ATM, it was improper for Capital One to assess a $2 fee for doing so.

## CLASS ALLEGATIONS

53.   Plaintiffs bring this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

54.   The proposed classes are defined as:

- All Capital One checking account holders in the United States who within the applicable statute of limitations were assessed an OON Fee for a balance inquiry undertaken at the same time as a withdrawal at an out of network ATM (the "Withdrawal Class").

- All Capital One checking account holders in California who within the applicable statute of limitations were assessed an OON Fee for a balance inquiry undertaken at the same time as a withdrawal at an out of network ATM (the "California Withdrawal Sub-Class").

- All Capital One checking account holders in New York who within the applicable statute of limitations were assessed an OON Fee for a balance inquiry undertaken at the same time as a withdrawal at an out of network ATM (the "New York Withdrawal Sub-Class").

- All Capital One checking account holders in the United States who within the applicable statute of limitations were assessed an OON Fee when they performed a

balance inquiry at an out-of-network ATM (the "National Balance Inquiry Fee Class").

- All Capital One checking account holders in California who within the applicable statute of limitations were assessed an OON Fee when they performed a balance inquiry at an out-of-network ATM (the "California Balance Inquiry Fee Sub-Class").

- All Capital One checking account holders in New York who within the applicable statute of limitations were assessed an OON Fee when they performed a balance inquiry at an out-of-network ATM (the "New York Balance Inquiry Fee Sub-Class").

The National Classes and the California and New York Subclasses are collectively referred to as the "Classes."

55.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

56.    Excluded from the Classes are Capital One, its parents, subsidiaries, affiliates, officers, and directors; any entity in which Capital One has a controlling interest; all customers who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

57.    The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Capital One's records.

58.    The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members, were charged for a balance inquiry at an in-network ATM; was charged two OON Fees when he checked his balance prior to withdrawing cash at an out of network ATM; was charged OON Fees for transactions at an out-of-network ATM without the Fee charged by Capital One being displayed on the ATM screen and being given an opportunity to cancel the transaction

before the fee was imposed.  The representative Plaintiffs, like all Class members, have been damaged by Capital One's misconduct in that he was assessed unfair and unconscionable fees.  Furthermore, the factual basis of Capital One's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

59.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

60.    Among the questions of law and fact common to the Classes are whether Capital One:

        a.    Deceived consumers;

        b.    Breached its contract;

        c.    Breached its covenant of good faith and fair dealing with Plaintiffs and other members of the Classes through its ATM fee policies and practices;

        d.    Converted money belonging to Plaintiffs and other members of the Classes through its OON Fee policies and practices;

        e.    Was unjustly enriched through its OON Fee policies and practices; and

        f.    Violated the consumer protection acts of certain states through its OON Fee policies and practices.

61.    Other questions of law and fact common to the Classes include:

        a.    The proper method or methods by which to measure damages, and

        b.    The declaratory relief to which the Classes are entitled.

62.    Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful ATM fee policies and practices of Capital One's Account Agreement and other related documents.  Plaintiffs have suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

63.    Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in

particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Capital One, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Capital One's misconduct will proceed without remedy.

65.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
### (On Behalf of the National Classes)

66.     Plaintiffs repeat paragraphs 1 through 65 above.

67.     Plaintiffs and Capital One have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Capital One's EFTA Agreement, Schedule of Fees and Charges, and related documentation.

68.     No contractual provision authorizes Capital One to assess an OON Fee for a balance inquiry at an out-of-network ATM, without the Fee charged by Capital One being displayed on the ATM screen and being given an opportunity to cancel the transaction before the fee is imposed.

69.     Therefore, Capital One breached the terms of its EFTA Agreement by charging OON Fees for such transactions at an out-of-network ATM.

70.     Plaintiffs and members of the National Classes have performed all, or substantially all, of the obligations imposed on them under the EFTA Agreement.

71.     Plaintiffs and members of the National Classes have sustained damages as a result of Capital One's breach of the EFTA Agreement.

<u>SECOND CLAIM FOR RELIEF</u>
<u>Breach of the Covenant of Good Faith and Fair Dealing</u>
**(On Behalf of the National Classes)**

72.     Plaintiffs repeat paragraphs 1 through 65 above.

73.     Plaintiffs and Capital One have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Capital One's EFTA Agreement and related documentation.

74.     Under the laws of the states where Capital One does business, good faith is an element of every contract.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

75.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance,

abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

76.     Capital One has breached the covenant of good faith and fair dealing in the EFTA Agreement through its ATM Fee policies and practices as alleged herein.

77.     Plaintiffs and members of the National Classes have performed all, or substantially all, of the obligations imposed on them under the EFTA Agreement.

78.     Plaintiffs and members of the National Classes have sustained damages as a result of Capital One's breach of the covenant of good faith and fair dealing.

### THIRD CLAIM FOR RELIEF
### Conversion
### (On Behalf of the National Classes)

79.     Plaintiffs repeat paragraphs 1 through 65 above.

80.     Capital One had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

81.     Capital One has wrongfully collected ATM fees from Plaintiffs and the members of the National Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

82.     Capital One has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Classes, without legal justification.

83.     Capital One continues to retain these funds unlawfully without the consent of Plaintiffs or members of the National Classes.

84.     Capital One intends to permanently deprive Plaintiffs and the members of the National Classes of these funds.

85.     These funds are properly owned by Plaintiffs and the members of the National Classes, not Capital One, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the National Classes.

86.     Plaintiffs and the members of the National Classes are entitled to the immediate possession of these funds.

87.     Capital One has wrongfully converted these specific and readily identifiable funds.

88.     Capital One's wrongful conduct is continuing.

89.     As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Classes have suffered and continue to suffer damages.

90.     By reason of the foregoing, Plaintiffs and the members of the National Classes are entitled to recover from Capital One all damages and costs permitted by law, including all amounts that Capital One has wrongfully converted.

<u>**FOURTH CLAIM FOR RELIEF**</u>
<u>**Unjust Enrichment**</u>
**(On Behalf of the National Classes)**

91.     Plaintiffs repeat paragraphs 1 through 65 above.

92.     Plaintiffs, on behalf of himself and the National Classes, assert a common law claim for unjust enrichment.

93.     By means of Capital One's wrongful conduct alleged herein, Capital One knowingly provided banking services to Plaintiffs and members of the National Classes that was unfair, unconscionable, and oppressive.

94.     Capital One knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National Classes.  In so doing, Capital One acted with conscious disregard for the rights of Plaintiffs and members of the National Classes.

95.     As a result of Capital One's wrongful conduct as alleged herein, Capital One has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National Classes.

96.     Capital One's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

97.     Under the common law doctrine of unjust enrichment, it is inequitable for

Capital One to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of ATM fees on Plaintiffs and members of the National Classes in an unfair, unconscionable, and oppressive manner.  Capital One's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

98.   The financial benefits derived by Capital One rightfully belong to Plaintiffs and members of the National Classes.  Capital One should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the National Classes all wrongful or inequitable proceeds received by them.   A constructive trust should be imposed upon all wrongful or inequitable sums received by Capital One traceable to Plaintiffs and the members of the National Classes.

99.   Plaintiffs and members of the National Classes have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### Violation of California Unfair Competition Law, Unfair Prong
### Business and Professions Code § 17200
### (On Behalf of the California Subclasses)

100.   Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

101.   Defendant's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, et seq.

102.   The UCL prohibits, and provides civil remedies for, unfair competition.  Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

103.   By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable,  and sweeps within its scope acts

and practices not specifically proscribed by any other law.

104.   Defendant's conduct violates the UCL's "unfair" prong insofar as Defendant charged two separate OON Fees for a cash withdrawal preceded by a balance inquiry at the same out of network ATM.

105.   Defendant's conduct violates the UCL's "unfair" prong insofar as Defendant charged an OON Fee for a balance inquiry at an out of network ATM without warning accountholders.

106.   Defendant's conduct was not motivated by any business or economic need or rationale.   The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

107.   The harm to Plaintiffs and Class Members arising from Defendant's unfair practices relating to the imposition of OON Fees outweighs the utility, if any, of those practices.

108.   Defendant's unfair business practices relating to OON Fees as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiffs and members of the Class.

109.   Defendant's conduct was substantially injurious to consumers in that they have been forced to pay OON Fees which are not disclosed in their contract with Capital One.

110.   As a result of Defendant's violations of the UCL's "unfair" prong, Plaintiffs and members of the Class have paid, and/or will continue to pay OON Fees and thereby have suffered and will continue to suffer actual damages.

## SIXTH CLAIM FOR RELIEF
### Violation of California Unfair Competition Law, Fraudulent Prong
### Business and Professions Code § 17200
### (On Behalf of the California Subclasses)

111.   Plaintiffs incorporate the preceding allegations by reference as if fully set

forth herein.

112.   Defendant's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, et seq.

113.   The UCL prohibits, and provides civil remedies for, unfair competition.  Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

114.   By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

115.   Defendant committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when it affirmatively and knowingly misrepresented its OON Fee practices.  Such representations misled the Plaintiffs and are likely to mislead the public.

116.   In addition, Defendant committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it affirmatively and knowingly omitted the total price of out of network ATM transactions and failed to inform consumers they would be charged two fees for a cash withdrawal preceded by a balance inquiry at the same out of network ATM; and failed to warn consumers of balance inquiry fees at out of network ATMs. Such omissions misled the Plaintiffs and are likely to mislead the public.

117.   As a result of Defendant's violations of the UCL's "fraudulent" prong, Plaintiffs and members of the Class have paid, and/or will continue to pay, unreasonably excessive amounts of money for banking services and thereby have suffered and will continue to suffer actual damages.

///

///

### SEVENTH CLAIM FOR RELIEF
### Violation of California Consumer Legal Remedies Act
### Cal. Civ. Code 1770 *et seq.*
### (On Behalf of the California Subclasses)

118.    Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

119.    Defendant is a "person" as defined by the CLRA. Cal. Civ. Code § 1761(c).

120.    Plaintiffs and Class members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code § 1761(d).

121.    The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

122.    Defendant's affirmative misrepresentations regarding the total price of out of network ATM transactions, specifically, that consumers would be charged two fees for a cash withdrawal preceded by a balance inquiry at the same out of network ATM, and its failure to warn consumers of balance inquiry fees at out of network ATMs, constitute deceptive and misleading business practices in violation of the CLRA.

123.    Defendant continues to violate the CLRA and continues to injure the public by making such omissions regarding the total amount of fees charged at out of network ATMs.  Accordingly, Plaintiffs seek injunctive relief on behalf of the general public to prevent Defendant from continuing to engage in these deceptive and illegal practices.

124.    Defendant's violation of the CLRA caused Plaintiffs and putative Class members to suffer ascertainable losses.

125.    Pursuant to Section 1782(d) of the CLRA, Plaintiffs reserve the right to amend this Complaint to include a request for damages under the CLRA within thirty (30) days of providing the required notice.

///

///

### EIGHTH CLAIM FOR RELIEF
### NY GBL § 350
### (On Behalf of the Classes)

126.   Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

127.   The New York Consumer Protection Act (N.Y. Gen. Bus. Law §§ 349, 350 (Consol.)) was enacted by the New York legislature to protect consumers from unfair, unconscionable and deceptive business practices.

128.   Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices.   Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy assessing and collecting ATM fees where it is not legally permitted to do so.

129.   In addition, Defendant has done so through substantially aggravating circumstances in which it intentionally and knowingly engaged in this unlawful practice that was targeted and directed at the poorest and most financially vulnerable customers. As a result of the unlawful collection of ATM fees, Plaintiffs and the class have been harmed and Defendant has been improperly and unjustly enriched.

130.   These violations have directly, foreseeably, and proximately caused damages to Plaintiffs and the proposed Classes in amounts yet to be determined.   They have also unjustly enriched Defendant by an amount yet to be determined.

131.   As a result of Defendant's violations of the New York Consumer Protection Act prohibiting unfair and deceptive acts and practices, Plaintiffs and members of the proposed Classes have suffered actual damages for which Defendant is liable in an amount up to and equal to threefold damages.   Plaintiffs and the Classes are likewise entitled to recover by disgorgement an amount sufficient to restore to Plaintiffs and the Classes all monies improperly taken from them.   In addition, Plaintiffs and the Classes are entitled to injunctive relief to prevent Defendant from continuing to harm them through its wrongful actions and conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray on behalf of themselves and all others similarly situated, for judgment against Defendant as follows:

132.   Declaring Capital One's ATM fee policies and practices to be wrongful, unfair, and unconscionable;

133.   Restitution of all ATM fees paid to Capital One by Plaintiffs and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

134.   Disgorgement of the ill-gotten gains derived by Capital One from its misconduct;

135.   Actual damages in an amount according to proof;

136.   Punitive and exemplary damages;

137.   Pre-judgment interest at the maximum rate permitted by applicable law;

138.   Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

139.   Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

140.   Plaintiffs hereby demand a jury trial for all of the claims so triable.

Dated: May 30, 2018

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

 */s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
Brittany C. Casola (CA 306561)
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone: (619) 762-1900
Facsimile: (619) 756-6990
tcarpenter@carlsonlynch.com
bcasola@carlsonlynch.com

Edwin J. Kilpela
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246

1    ekilpela@carlsonlynch.com

2    **KALIEL PLLC**
     Jeffrey D. Kaliel, Esq. (CA 238293)
3    jkaliel@kalielpllc.com
     Sophia Gold (To be admitted *pro hac vice*)
4    sgold@kalielpllc.com
     1875 Connecticut Avenue NW, 10th Floor
5    Washington, DC 20009
     Telephone: 202-350-4783
6
     **MCCUNE WRIGHT LLP**
7    Richard D. McCune, Esq. (CA 132124)
     Jae (Eddie) K. Kim, Esq. (CA 236805)
8    2068 Orange Tree Lane, Suite 216
     Redlands, California  92374
9
     **THE KICK LAW FIRM**
10   Taras P. Kick, Esq. (CA 143379)
     APC 201 Wilshire Boulevard, Suite 350
11   Santa Monica, California 90401

12   *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT A

# ELECTRONIC FUND TRANSFER AGREEMENT AND DISCLOSURE FOR PERSONAL AND COMMERCIAL ACCOUNTS

Effective August 22, 2014

Welcome to Capital One, N.A. (hereinafter referred to as "Capital One Bank", "us", "our" or "we"). In this Agreement, "you", "your", and "yours" mean the authorized person or persons who conduct electronic fund transfers, including but not limited to persons to whom a Capital One Bank ATM or Debit Card is issued and anyone else you allow to use the ATM or Debit Card. Capital One Bank provides various electronic banking services to you. These services include, but are not limited to:

- Automated Teller Machine ("ATM") transactions.
- Telephone transfers.
- Point-of-Sale ("POS") transactions, whether or not initiated through an electronic terminal.
- Pre-authorized transfers to or from an account ("ACH").
- Smart phone or other mobile device transfers.
- Online banking (see the Online Banking Terms and Conditions at www.capitalonebank.com).

This Electronic Fund Transfers Agreement and Disclosure ("Agreement") contains disclosures required by Regulation E that apply to consumer accounts, in addition to disclosures that apply to commercial accounts as they relate to electronic banking services and it contains our terms and conditions with respect to these services.  A consumer account is an account held by an individual and used primarily for personal, family, or household purposes.

**1. Your Access Device and Your Personal Identification Number:**  An access device is a card, personal identification number ("PIN"), or other code used to initiate an electronic fund transfer ("EFT") to or from your account.  The Capital One Bank, ATM card, platinum Debit Card, or Business Debit Card (hereinafter referred to collectively as "ATM/Debit Card") that you have requested is an access device.

You have selected or have been provided with a special PIN, a code you must enter into the ATM or that you may be required to enter into the POS terminal whenever you use your ATM/Debit Card. For your own protection, please memorize the PIN, and do not keep any notation of the PIN on the ATM/Debit Card or in the same wallet or purse as the ATM/Debit Card and do not disclose the PIN to anyone who is not authorized to use your ATM/Debit Card.

**Important Information Concerning International Use of Your ATM or Debit Card:** Capital One Bank employs fraud monitoring and protection capabilities to help protect you from ATM/Debit card fraud. These protection systems are designed to block transactions that occur outside of our customers' ordinary transaction patterns and may block transactions originating in countries that are experiencing a high incidence of card fraud. **To avoid the inconvenience of having your ATM/Debit card blocked while you are traveling abroad, please notify us before any international travel or international purchases by calling 1-800-655-2265 from inside the United States or 972-916-4111 collect from outside the United States.**

**2. Accounts That May Be Accessed:**  When you requested your ATM/Debit Card, you provided us with a list of your accounts that you wish to access using your ATM/Debit Card.  These accounts are referred to in this Agreement as "designated accounts."  You may access only the designated accounts.  If you requested access to multiple accounts, you chose one checking account and one savings account as your primary checking and savings accounts.  If you wish to access additional accounts or change your primary accounts, please contact your banking officer.

You may use your ATM/Debit Card and PIN to access the following types of designated accounts:

- Checking account.
- NOW account.
- Savings account (other than Passbook Savings accounts).
- Money Market account.*

*At certain ATMs, when accessing your Money Market accounts you may need to select the 'checking' option rather than the 'savings' option.

**3. Types of Transactions That Can Be Completed:**

You may use your ATM/Debit Card at any Capital One Bank ATM.  You may also use your ATM/Debit Card to complete transactions at non-Capital One Bank ATMs that are members of the EFT networks in which we participate.

Purchases may also be made using your ATM/Debit Card at merchant locations which are members of the POS networks in which we participate.  You may also use your Platinum Debit Card or Business Debit Card to make purchases at locations which accept Debit MasterCard™ Cards.  (Note:  Your Platinum Debit Card or your Business Debit Card is not a MasterCard credit card, and this Agreement does not replace or affect any MasterCard account agreement that you may have with us or any other financial institution.)

Please note that some of the below services may not be available at all ATMs.

**(A) Cash Withdrawals:** You can use your ATM/Debit Card and PIN at ATMs to obtain cash withdrawals from your designated accounts. At certain ATMs, cash withdrawals may only be made from your primary savings and primary checking account.  Withdrawals made at ATMs owned and operated by other entities will be automatically deducted from your designated primary checking or savings account. Each time you use your ATM/Debit Card we may place a hold on a corresponding amount of funds in your account until the transaction is posted against your account.

**(B) Deposits:** You can use your ATM/Debit Card and PIN at Capital One Bank-branded ATMs to make deposits into your designated accounts.  Deposits made at an ATM may not be available for immediate withdrawal.  Please refer to the Deposit Availability Disclosure contained in our Rules Governing Deposit Accounts Agreement to determine when the deposit will be credited to your account and when funds will be available for withdrawal or for paying transactions on your account.

**(C) Transfers Between Your Capital One Accounts:** You can use your ATM/Debit Card and PIN at a Capital One Bank-branded ATM to transfer available funds between your designated accounts. Transfers made at a non-Capital One Bank ATM can only be made between your designated primary checking and primary savings accounts.

You may also transfer funds between your Capital One Bank accounts via the telephone, online banking, or by establishing an automatic transfer schedule.

**(D) Purchases:** You can use your ATM/Debit Card and PIN to make purchases at merchant locations which are members of POS networks in which we participate. At certain Capital One Bank-branded ATMs, you can also use your ATM/Debit Card and PIN to purchase non-monetary items (such as stamps and gift certificates). Purchases of this type may also be made at certain non-Capital One Bank ATMs.

WELRGEFT (8/14)   620241          Products and services offered by Capital One, N.A.,Member FDIC. ©2014 Capital One. All rights reserved.          CSR ID: _____

**ELECTRONIC FUNDS TRANSFER AGREEMENT, Contd.**

You may also use your ATM/Debit Card without your PIN to make purchases at merchant locations accepting Debit MasterCard Cards. The merchant may request a preauthorization for the transaction.  If we authorize the transaction, the funds will be debited from your primary checking account immediately or a hold may be placed on your account for up to several days after the purchase transaction has occurred, depending upon the promptness with which the merchant processes your transaction.

Some purchases may result in a longer hold.  Sometimes the preauthorization requests may be in amounts different from the total amount of the transaction.  For example, a gas station typically requests authorization in the amount of $1.00.  Also, restaurants typically request authorization for 20% more than the price of the meal.  If the preauthorization request varies from the amount of the actual transaction, payment of the transaction may not remove the preauthorization hold immediately.  Generally, the preauthorization hold may remain on your account for up to three (3) business days after the date of the transaction and may affect the availability of funds from your designated account for other transactions.  We will not be responsible for damages for wrongful dishonor of an item resulting from a preauthorization hold.  You agree not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted against your account.

**(E) Inquiries:** You can use your ATM/Debit Card and PIN at ATMs to check the balance in your designated accounts. At non-Capital One Bank ATMs, you may only make balance inquiries on your designated primary checking or savings account. You may also check the balance in your designated accounts via our telephone or online banking service.

**(F) Change PIN:** You may use your ATM/Debit Card and PIN to change your current PIN at Capital One Bank-branded ATMs. You must know your current PIN in order to change your PIN. If you have forgotten your current PIN, you may contact your banking officer to have your PIN re-established.

**(G) Mini-Statements:** You may use your ATM/Debit Card and PIN at Capital One Bank-branded ATMs to obtain a statement of up to the last ten (10) transactions performed through the previous business day.

**(H) Transfers Between Your Capital One Bank Accounts and Accounts at Other Financial Institutions (or Third Parties) and Check Conversion:** You can authorize a third party to initiate transfers between your accounts and the third party's accounts by providing the third party with our routing number and your account number.

You may also authorize a merchant or other payee to make a one-time electronic payment from your checking account using information from your check to: (i) pay for purchases, or (ii) pay bills.

When you provide a check as payment, you authorize us to use information from your check to make a one-time electronic fund transfer from your account.  In certain circumstances, such as for technical or processing reasons, we may process your payment as a check transaction.  When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account on the same day you make your payment.

You should only provide your financial institution and account information (whether over the phone, the internet, or via some other method) to trusted third parties whom you have authorized to initiate electronic fund transfers.

**4. Limitations on Transactions:** There are certain limitations on the use of electronic banking services. These include, but are not limited to, the following:

**(A) Designated Accounts:** You may only access your designated accounts with Capital One Bank.

**(B) Daily Limitation:** A daily withdrawal limitation exists on all ATM/Debit Cards. This limitation combines two categories: cash withdrawals and point of sale purchases. There is no limit on the number of transactions that may be completed. You may not aggregate withdrawals during any one (1) day (including either cash withdrawals, purchase withdrawals, or a combination of both) that exceed the established card limit. See the chart below for the limits established for the card product that you have. The limits listed below are default limits. Different limits may be assigned to individual cards on a case-by-case basis.

|  | Established card limit | Cash limit | POS limit |
|---|---|---|---|
| Platinum Debit | $2,500 | $600 | $2,500 |
| Business Debit | $5,000 | $800 | $5,000 |
| ATM CARD | $2,500 | $600 | $2,500 |

Other ATM owners and operators may impose lower dollar limitations on the amount of cash withdrawals made at their ATMs.

**(C) Online Banking External Funds Transfer Limitation:** You may enroll in online banking to perform electronic transfers. When you enroll, you will be provided with additional terms and conditions that apply to electronic transfers using our online banking services. The below charts provide the default limits established for online banking transfers into and out of your designated accounts. Different limits may be assigned on a case-by- case basis. These limits do not apply to internal transfers between accounts opened in a Capital One Bank branch and accounts opened with Capital One Direct Banking accounts, bill pay transfers or pre-authorized third party Payments.

The below limits apply to High Yield Checking and High Interest Checking accounts:

|  | Per transfer limit | Daily limit | Monthly limit |
|---|---|---|---|
| Inbound Transfer | $10,000 | $10,000 | $25,000 |
| Outbound Transfer | $10,000 | $10,000 | $25,000 |
| Total Transfer Limit (Combined Inbound and Outbound) |  | $20,000 | $50,000 |

WELRGEFT (8/14)   620241                         Products and services offered by Capital One, N.A.,Member FDIC. ©2014 Capital One. All rights reserved.                         CSR ID: _____

The below limits apply to all other products (excluding High Yield Checking and High Interest Checking accounts):

|  | Per transfer limit | Daily limit | Monthly limit |
|---|---|---|---|
| Inbound Transfer | $3,000 | $3,000 | $6,000 |
| Outbound Transfer | $3,000 | $3,000 | $6,000 |
| Total Transfer Limit (Combined Inbound and Outbound) |  | $6,000 | $12,000 |

**(D) Third Party Transaction Limitation:** Savings and money market accounts are permitted no more than six (6) transfers per statement cycle to a third party or to another account of the depositor at Capital One Bank by means of preauthorized, automatic, telephone or, to the extent any online banking program is available for your account, online transfer or withdrawal.

**(E) Other Reasons:** We and other ATM owners and operators may limit or refuse to complete your ATM/Debit Card transactions for security or technical reasons.

We may also suspend your ATM/Debit Card if we consider your designated account to be inactive or dormant.

**5. Overdraft Situations:** An Overdraft occurs when you do not have enough money in your designated account to cover a transaction, but we pay it anyway. Generally, we will not authorize and pay overdrafts for ATM withdrawals and everyday debit card transactions against your designated account unless you have authorized us to do so*. You understand and agree that even if you have authorized us to do so, you have no right to overdraw your account at any time, for any reason, and our decision to pay Overdraft items is solely within our discretion. You further agree that if we elect to pay Overdraft items, you must deposit additional funds into your designated account immediately in an amount sufficient to cover the Overdraft and to pay us Overdraft fees for each Overdraft item in accordance with our then current Schedule of Fees and Charges. Available credit on an overdraft protection line of credit associated with the designated account may be used to fund ATM/Debit Card transactions when you do not have sufficient collected funds in your designated account(s). If the amount of the Overdraft causes you to exceed the amount of credit available on the overdraft protection line of credit or balance in the overdraft protection deposit account linked to the overdrawn deposit account, you agree to pay the amount by which the deposit account has been overdrawn, plus all associated fees and charges as reflected in our then current Schedule of Fees and Charges and the applicable line of credit agreement.

* Applies only to consumer accounts.

**6. Transactions That Are Not Completed:** If we do not complete a transfer to or from your account on time or in the correct amount according to our Agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will not be liable, for instance:

(A) If, through no fault of ours, you do not have enough money in your account to make the transfer;

(B) if we have terminated this Agreement for any reason;

(C) if the funds in your designated accounts are subject to legal process or other encumbrance restricting the transaction;

(D) if circumstances beyond our control (such as fire or flood) prevent the transaction from being completed despite reasonable precautions that we have taken; if the transfer would exceed the available credit on your overdraft line of credit;

(E) if an ATM does not have enough cash to complete the transaction;

(F) if there is a technical malfunction in the ATM that is known to you when you try to perform the transaction;

(G) if we have reason to believe that you or someone else is using our electronic banking services for fraudulent or illegal purposes;

(H) Section 4 of this Agreement entitled "Limitations on Transactions" contains a list of transactions we will not complete;

(I) if your ATM/Debit Card has deteriorated or has been damaged so that it does not function properly;

(J) if your ATM/Debit Card or PIN has been reported lost or stolen. There may also be other exceptions as provided by applicable law, or

(K) if the transfer would exceed the available credit on your overdraft line of credit.

You agree that we will not be liable for any damages resulting from a failure or refusal for any reason to authorize a transaction that you have attempted. You further agree that we will not be responsible or liable for a merchant's refusal to accept your ATM/Debit Card.

**7. Charges for ATM/Debit Card Transactions:** When you use your ATM/Debit Card at a non-Capital One Bank branded ATM, the ATM owner/operator may charge you a fee for your use of their ATM, and you may be charged a fee for a balance inquiry even if you do not complete a transaction. The fee charged should be disclosed to you on the ATM, and you should be given an opportunity to cancel the transaction before the fee is imposed. You may also be charged a fee by us, as disclosed in our then current Schedule of Fees and Charges, for each cash withdrawal, funds transfer or balance inquiry that you may make using a non-Capital One Bank branded ATM. You will not be charged this fee at most ATMs owned and operated by Capital One Bank, except at certain gaming establishments and other non-branch locations, where we may charge a fee for each cash withdrawal. The amount of fees charged at such ATMs at non-branch locations varies. Any fee charged will be displayed on the ATM screen and you will be given an opportunity to cancel the transaction before the fee is imposed. Please refer to our then current Schedule of Fees and Charges for the amount of this fee.

For international transactions, MasterCard's currency conversion procedure includes use of either a government mandated exchange rate, or a wholesale exchange rate selected by MasterCard for the processing cycle in which the transaction is processed, increased by an adjustment factor established from time to time by MasterCard. The currency conversion rate used by MasterCard on the processing date may differ from the rate that would have been used on the purchase date or cardholder statement posting date.

Withdrawals from an ATM outside of the United States, Puerto Rico, and U.S. Virgin Islands may incur an international transaction fee, as disclosed in our then current Schedule of Fees and Charges.

**8. Receipts and Account Statement:** You will be given a receipt for transactions made with your ATM/Debit Card at ATMs owned by Capital One Bank where this option is offered, unless you decline to receive the receipt. Your periodic account statement(s) for your designated accounts will also detail electronic transfer activity on the designated account. Generally, if you have a consumer account, you will receive a monthly statement if you have an EFT in that month. In any case, you will get the statement at least quarterly.

WELRGEFT (8/14)  620241          Products and services offered by Capital One, N.A.,Member FDIC. ©2014 Capital One. All rights reserved.          CSR ID: ___

**9. In Case of Errors or Questions About Your Electronic Transfers:**

(For information pertaining to the error resolution process for international wire transfers, please refer to the Wire Funds Transfer Disclosure Statement and related disclosures.)

Call us at:  1 (866) 536-9023,
Write us at:  Capital One, N.A.
P O Box 31277
Salt Lake City, Utah  84130-0277
Attn: Customer Service Center

or e-mail us using the Contact Us link in the Customer Service section of www.capitalonebank.com, as soon as you can if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt.

*The following section applies only to consumer accounts:* We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the problem or error appeared.

(1) Tell us your name and account number.

(2) Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error, or why you need more information.

(3) Tell us the dollar amount of the suspected error.

If you tell us verbally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five (45) days (ninety (90) days for those transactions at merchant POS terminals, processed on a new account, or initiated outside the United States) to investigate your complaint or question. If we decide to do this, we will credit your account within ten (10) business days for the amount you think is in error, so that you will have full use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days, we may not credit your account.

For errors involving new accounts, we may take up to twenty (20) business days to credit your account for the amount you think is in error.

We will tell you the results within three (3) business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

*The following section applies only to commercial accounts:* If you are a business or other entity that is not a natural person, the above referenced procedures do not apply to any accounts held by you.  If you believe that an unauthorized transaction has occurred, we must hear from you within twenty four (24) hours of the time the transaction posts to your account. We will require you to submit an affidavit of unauthorized activity in connection with any such transaction immediately thereafter.

(A) Right to stop payment:  if you have authorized regular payments out of your account, you can stop any of these payments.  If the account requires multiple signatures to transact the withdrawal of funds, it is understood that we will recognize and accept stop payment instructions from any one authorized signer. Here is how:  Visit your nearest Capital One Bank location, or e-mail us using the Contact Us link in the Customer service section of www.capitalonebank.com. You may also:

**10. Pre-Authorized Payments:**

Call us at:  1 (800) 655-2265, or
Write us at:  Capital One, N.A.
3939 W. John Carpenter Frwy.
Irving, TX 75063
Attn: Customer Service Center

We must receive your request at least three (3) business days before the payment is scheduled to be made. If you call us, we may also require you to put your request in writing to the above address and to get it to us within fourteen (14) days after you call. If you do not, then your verbal request will expire after fourteen (14) days. We will charge you a fee, as disclosed in our then current Schedule of Fees and Charges, for each stop payment order you give.

Merchants may allow returns or refunds on purchases; however, except as provided above for recurring payments you cannot stop a one-time payment on any ATM/Debit Card transactions. For this reason, you should inquire about the merchant's return or refund policy before entering into a purchase transaction. Merchandise purchased using your ATM/Debit Card that is subsequently returned will be reflected as a credit on your designated account statement, provided you elect to have the return credited to your designated account.  Please refer to section 9 for information on error resolution.

(B) Varying amounts: If these regular payments vary in amount, the person you are paying must tell you ten (10) days before each payment when it will be made and how much it will be.  If you do not know this information, you may be unable to have the payment stopped without closing your account.  (You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.)

(C) Liability: If you order us to stop one of these payments three (3) business days or more before the transfer is scheduled, and we do not do so, we will be liable for your actual losses or damages.  We will pay other damages only as required by applicable law. *We will not be liable for any consequential or special losses or damages unless we act in bad faith. In addition, we will not be liable if the merchant or other third party initiating the transaction changes the dollar amount of the transaction or makes other changes so that we do not recognize it as the payment you stopped.*

**11. Verifying Pre-Authorized Deposits:** You can verify whether a direct deposit has been processed to your account by calling us at 1 (800) 655-2265.

**12. Joint Accounts:** If more than one person signed your request for electronic banking services, each person who signed will be bound by this Agreement and will be responsible for paying all amounts owed as a result of this Agreement. If two (2) signatures are required to transact business on a designated account any ONE (1) signer may initiate an electronic banking transaction on the account.

**13. Authorized Users:** You should not allow unauthorized persons to use your ATM/Debit Card and PIN without first advising us in writing that you are adding them as an authorized user. You must also advise us in writing should such persons no longer be authorized to use your ATM/Debit Card.

WELRGEFT (8/14)  620241          Products and services offered by Capital One, N.A.,Member FDIC. ©2014 Capital One. All rights reserved.          CSR ID: _____

**14. Liability for Unauthorized Transfers on Consumer Accounts Only:**

(A) Tell us at ONCE if you believe your ATM/Debit Card has been lost or stolen, or if you believe that an electronic fund transfer has been made without your permission. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your designated accounts (plus any available revolving line of credit, if applicable).  If you tell us within two (2) business days after you learn of the loss or theft, you can lose no more than $50.00 if someone used your ATM/Debit Card without your permission.

(B) If you DO NOT tell us within two (2) business days after you learn of the loss or the theft of your ATM/Debit Card, and we can prove we could have stopped someone from using your ATM/Debit Card without your permission if you had told us, you could lose as much as $500.00.

(C) If you think that a transfer or withdrawal shown on your periodic statement is incorrect, or if you believe an unauthorized transfer or withdrawal has taken place, including those made by your ATM/Debit Card, code or other means, contact us at once. We must be notified within sixty (60) days after the first statement we mailed to you on which the suspected problem appeared. If you do not contact us within this sixty (60) day time period, you could be held responsible for all unauthorized transfers and withdrawals that occurred between the end of the sixty (60) day period and the time you actually notified us if the transaction could have been prevented if we had been notified.

(D) If a good reason (such as a long trip or a hospital stay) kept you from telling us, we may extend the above time periods.

(E) If you believe that your ATM/Debit Card has been lost or stolen or that someone has transferred or may transfer money from your account without your permission, you may e-mail us using the Contact Us link in the Customer service section of www.capitalonebank.com. You may also:

Call us at:  1(800) 655-2265, or
Write us at:  Capital One, N.A.
              3939 W. John Carpenter Frwy.
              Irving, TX 75063
              Attn: Customer Service Center

**15. MasterCard Zero Liability:** You may have additional rights under the MasterCard rules. Provided that the PIN is not used as the cardholder verification method, you will not be responsible for unauthorized use of the Platinum Debit and Business Debit Cards under the following conditions:

(A) Your account is in good standing;

(B) You have exercised reasonable care in safeguarding your card from any unauthorized use. Unauthorized use means that you did not provide directly, by implication or otherwise, the right to use your card and you received no benefit from the "unauthorized" purchase; and

(C) You have not reported two or more unauthorized events in the past 12 months.

If you have questions regarding zero liability coverage or you suspect unauthorized use of your ATM/Debit card, contact us IMMEDIATELY.

**16. Evidence:** If we go to court for any reason, we can use a copy, microfilm, or microfiche of any document or electronic documentation, e-mail, or database information to prove what you owe or that a transaction has taken place. These facsimiles will have the same validity as the original documents.

**17. Our Rules and Regulations and Other Agreements:** The designated deposit accounts are also subject to other agreements that you may have with us including, but not limited to, our Rules Governing Deposit Accounts and Online Banking Terms and Conditions.

**18. Disclosure of Information About Your Account:** In the ordinary course of business, we may disclose information to third parties about your designated accounts or the transfers you make:

- Where it is necessary for completing transfers or resolving errors involving transfers;
- In order to verify the existence and condition of your account for a third party, such as a consumer reporting agency or a merchant;
- In order to comply with orders or subpoenas of government agencies or courts;
- If you give us your written permission;
- As disclosed in our Privacy Notice; or
- As otherwise permitted by law.

**19. Our Business Days:** For purposes of this Agreement, our business days are Monday through Friday.  Federal holidays or other days we are closed are not considered business days.

**20. Terminating This Agreement:** You can terminate this Agreement at any time by notifying us in writing. We reserve the right to deactivate any ATM/Debit Card that has not been used for an extended period of time. We can also terminate this Agreement at any time. The termination of this Agreement by either party will not affect your obligations under this Agreement, even if we allow any transaction to be completed after this Agreement has been terminated.

**21. Changing This Agreement:** We have the right to change the terms of this Agreement from time to time. We will notify you at least twenty-one (21) days before the change will take effect if the change will cause you greater costs or liability or if it will limit your access to your designated accounts. We will not have to notify you in advance, however, if the change is necessary for security reasons.

**22. Notices:** All notices from us will be effective when we have e-mailed them, mailed them or delivered them to the last address that we have for you in our records. Notices from you will generally be effective when received at the appropriate address specified in this Agreement; but notices under Section 14 ("Liability for Unauthorized Transfers on Consumer Accounts Only") will be effective once you have done whatever is reasonably necessary to give us the information we need. A mailed notice will be considered delivered to us when it is received by us at the notice address in Section 14 of this Agreement. If more than one person signs your request for electronic banking services, notice to or from one of the people who signed the request will be effective for everybody who signed.

**23. Collection Expenses:** If we have to file a lawsuit to collect whatever you owe us, you will pay our reasonable expenses, including attorney's fees.

**24. Governing Law:** Any questions under this Agreement will be decided by applicable Federal law, or, if no Federal law exists, applicable state law. If any term of this Agreement cannot legally be enforced, the Agreement is to be considered changed to the extent necessary to comply with the law.

**25. Acceptance of This Agreement:** You have agreed to be bound and obligated under the terms of this Agreement and any subsequent amendments to this Agreement by using our electronic banking services.