**DOLL AMIR & ELEY LLP**
HUNTER R. ELEY (SBN 224321)
heley@dollamir.com
1888 Century Park East, Suite 1850
Los Angeles, California 90067
Tel: 310.557.9100
Fax: 310.557.9101

Attorneys for Defendant,
CAPITAL ONE, N.A.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB FIGUEROA and MARY JACKSON, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE, N.A., and Does 1-100, inclusive,<br><br>Defendant. | Case No. 3:18-cv-00692-JM-BGS<br><br>*Assigned to Judge Jeffrey T. Miller; Referred to Magistrate Judge Bernard G. Skomal*<br><br>**DEFENDANT CAPITAL ONE, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>[*Notice of Motion and Motion to Dismiss First Amended Class Action Complaint and Declaration of Thomas Stainback concurrently filed herewith*]<br><br>Date:      August 20, 2018<br>Time:      10:00 a.m.<br>Place:     Courtroom 5D, 5th Floor<br>              221 West Broadway<br>              San Diego, CA 92101<br><br>FAC Filed:          May 30, 2018<br>Complaint Filed:   April 6, 2018<br>Trial Date:         TBA |

DOLL AMIR & ELEY LLP

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................... 1

II. SUMMARY OF FACTUAL ALLEGATIONS ........................................ 3

   A. Plaintiffs Hold A Capital One Bank Account That Provides For Non-Capital One ATM Fees. ........................................................ 3

   B. Plaintiffs Were Charged Fees At Non-Capital One ATMs. ................ 5

III. LEGAL STANDARD ............................................................................. 5

IV. ARGUMENT .......................................................................................... 6

   A. New Jersey Law Governs Plaintiffs' Claims. ...................................... 6

   B. Plaintiffs Have Failed To Allege Adequately Their First Claim For Breach Of Contract. ........................................................................ 7

      1. The Account Agreements plainly state that a fee may be charged for balance inquiries separately from other actions. ..... 8

      2. The Account Agreements do not obligate Capital One to provide disclosures and a right to cancel on foreign ATMs prior to charging balance inquiry fees. ................................. 10

   C. Plaintiffs Have Failed To Allege Adequately Their Second Claim For Breach Of Good Faith And Fair Dealing. ................................. 12

   D. Plaintiffs Have Failed To Allege Adequately Their Third Claim For Conversion. .................................................................................. 13

   E. Plaintiffs Have Failed To Allege Adequately Their Fourth Claim For Unjust Enrichment. ................................................................... 14

   F. Plaintiffs Have Failed To Allege Adequately Their Fifth, Sixth, Seventh and Eighth Claims Based On California and New York Statutes. ...................................................................................... 15

      1. Plaintiffs' Fifth and Sixth Claims Under The "Unfair" And Fraudulent" Prongs Of UCL Are Barred By A "Safe Harbor." ............................................................................... 16

      2. Plaintiffs' Fifth Claim Under The "Unfair" Prong Of UCL Fails Because Capital One Disclosed Its Fees To Customers.. 17

         a. Plaintiff's Claim Is Derivative Of Their First Claim. .... 18

         b. Plaintiffs Have Failed To Allege Adequately An "Unfair" Business Practice. ........................................... 18

DOLL AMIR & ELEY LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOLL AMIR & ELEY LLP

3.      Plaintiffs' Sixth Claim Under The "Fraudulent" Prong Of UCL Fails Because Plaintiffs Fail To Allege Adequately A Misrepresentation Or Omission.................................................19

4.      Plaintiffs' Seventh Claim For Violation Of CLRA Claim Fails Because No "Goods" Or "Services" Are At Issue. .........21

5.      Plaintiffs' Eighth Claim For Violation Of NY GBL Fails Because It Based On The Same Mischaracterization Of The Account Agreements. ..........................................................23

VI.    CONCLUSION ...........................................................................25

ii

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

Page

**Cases**

*Aliya Medcare Finance, LLC v. Nickell*,
   2015 WL 4163088 ........................................................................ 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................... 6

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ....................................................................... 6

*Augustine v. FIA Card Servs., N.A.*,
   485 F. Supp. 2d 1172 (E.D. Cal. 2007) ........................................ 23

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ......................................................... 6

*Berry v. American Express Publishing, Inc.*,
   147 Cal. App. 4th 224 (2007) ...................................................... 22

*Carma Developers (Cal.), Inc., v. Marathon Dev. California, Inc.*,
   2 Cal. 4th 342 (1992) ................................................................... 12

*Cel-Tech Communicatoins v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ........................................................... 16, 17

*Century 21 Real Estate LLC v. All Professional Realty, Inc.*,
   889 F. Supp. 2d 1198 (E.D. Cal. 2012) ........................................ 16

*Chavez v. Bank of Am. Corp.*,
   2012 WL 1594272 (N.D. Cal. May 4, 2012) ................................ 14

*Cohen v. JP Morgan Chase & Co.*,
   498 F.3d 111 (2d Cir. 2007) ......................................................... 24

*Conder v. Home Sav. of Am.*,
   680 F. Supp. 2d 1168 (C.D. Cal. 2010) ........................................ 18

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ....................................................... 4

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ......................................................... 4

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ..................................................... 17

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) ................................................. 18, 19

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) .................................................... 15

iii

DOLL AMIR & ELEY LLP

DOLL AMIR & ELEY LLP

*East Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*,
    294 N.J. Super. 158 (1996)................................................................. 12

*Eisen v. Porsche Cars N.A., Inc.*,
    2012 WL 841019 (C.D. Cal. Feb. 22, 2012).................................... 20

*Fields v. Legacy Health Sys.*,
    413 F.3d 943 (9th Cir. 2005)............................................................. 6

*Globe Motor Co. v. Igdalev*,
    225 N.J. 469 (2016)........................................................................... 7

*Gutierrez v. Wells Fargo & Co.*,
    622 F. Supp. 2d 946 (N.D. Cal. 2009) ................................ 13, 14, 23

*Hassler v. Sovereign Bank*,
    644 F. Supp. 2d 509 (D.N.J. 2009) ............................................ 12, 15

*Herrejon v. Ocwen Loan Servicing, LLC*,
    980 F. Supp. 2d 1186 (E.D. Cal. 2013).......................................... 20

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011)......................................................... 15

*Hoffman v. 162 North Wolfe LLC*,
    228 Cal.App.4th 1178 (2014)........................................................... 21

*In re Anthem, Inc. Data Breach Litig.*,
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ........................... 21, 24

*In re Carrier IQ*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................ 21

*In re Checking Account Overdraft Litig.*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) .......................................... 23

*In re DirecTV Early Cancellation Litig.*,
    738 F. Supp. 2d 1062 (C.D. Cal. 2010).......................................... 15

*In re NJOY, Inc. Consumer Class Action Litig.*,
    2014 WL 12586074 (C.D. Cal. 2014)........................................ 23, 24

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir.2009).......................................................... 20

*Kirsopp v. Yamaha Motor Co.*,
    2015 WL 11197829 (C.D. Cal. Jan. 7, 2015) ................................. 21

*La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*,
    9 Cal. 4th 27 (1994), as modified.................................................... 9

*Letizia v. Facebook, Inc.*,
    267 F. Supp. 3d 1235 (N.D. Cal. 2017) .......................................... 20

*Lloyd v. Navy Fed. Credit Union*,
    2018 WL 1757609 (S.D. Cal. Apr. 12, 2018) .......................... passim

iv

DOLL AMIR & ELEY LLP

*Mass. Mut. Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (2002)........................................................................... 20

*McKell v. Wash. Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006)......................................................................... 20

*McMillan v. Bank of Am., N.A.*,
    2015 WL 1942743 (S.D. Cal. Apr. 15, 2015) ................................................. 20

*Medimatch, Inc. v. Lucent Techs., Inc.*,
    120 F. Supp. 2d 842 (N.D. Cal.2000) .............................................................. 16

*Melchoir v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003)........................................................................... 15

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001)............................................................................. 5

*Nedlloyd Lines B.V. v. Super. Ct.*,
    3 Cal. 4th 459 (1992)........................................................................................ 7

*Oasis W. Realty, LLC v. Goldman*,
    51 Cal. 4th 811 (2011)...................................................................................... 7

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) ........................................................................... 24

*Phipps v. Wells Fargo Bank, N.A.*,
    2011 WL 302803 (E.D. Cal. Jan. 27, 2011).............................................. 18, 19

*PHL Variable Ins. Co. v. Crescent Fin. & Ins. Agency, Inc.*,
    2018 WL 1577709 (C.D. Cal. Mar. 26, 2018) ................................................. 7

*Plascencia v. Wachovia Bank*,
    2011 WL 249492 (N.D. Cal. Jan. 26, 2011) ................................................... 18

*Puentes v. Wells Fargo Home Mtg., Inc.*,
    160 Cal.App.4th 638 (2008).............................................................................. 18

*Ramirez v. Baxter Credit Union*,
    2017 WL 118859 (N.D. Cal. 2017)................................................................... 12

*Romero v. Securus Technologies, Inc.*,
    216 F. Supp. 3d 1078 (S.D. Cal 2016) ............................................................ 14

*Rosell v. Wells Fargo Bank, N.A.*,
    2014 WL 4063050 (N.D. Cal. Aug. 15, 2014).................................................. 18

*Schor v. FMS Financial Corp.*,
    357 N.J. Super. 185 (2002)................................................................................ 9

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)............................................................................. 6

*St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co. of North America*,
    32 N.J. 17 (1960) ............................................................................................. 15

v

*Stewart v. Electrolux Home Prod., Inc.*,
  2018 WL 339059 (E.D. Cal. Jan. 9, 2018) ........................................................ 20

*Suburban Transfer Service, Inc.*,
  716 F.2d 220 (1983) .......................................................................................... 14

*Torsiello v. Strobeck*,
  955 F. Supp. 2d 300 (D.N.J. 2013) .................................................................... 13

*Van Slyke v. Capital One Bank*,
  503 F. Supp. 2d 1353 (N.D. Cal. 2007) ............................................................. 22

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ............................................................................... 6

*Walters v. Target Corp.*,
  2017 WL 4700087 (S.D. Cal. Oct. 19, 2017) ............................................... 12, 13

*Wilson v. Amerada Hess Corp.*,
  168 N.J. 236 (2001) ........................................................................................... 12

**Statutes**

15 U.S.C. § 45(n) ................................................................................................ 19

Cal. Bus. & Prof. Code § 17200 ................................................................... passim

Cal. Civ. Code § 1770 ................................................................................... passim

Cal. Civ. Code § 1770(a) .................................................................................... 21

N.Y. Gen. Bus Law §§ 349-350 ............................................... 1, 3, 15, 23, 24

**Rules**

Fed. R. Civ. P. 8 ................................................................................................. 24

Fed. R. Civ. P. 9(b) ...................................................................................... 20, 24

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1, 5, 6

**Regulations**

12 C.F.R. § 1005.16(a) ...................................................................................... 11

12 C.F.R. § 1005.16(b) ...................................................................................... 11

12 C.F.R. § 1005.16(c) ...................................................................................... 12

12 C.F.R. § 1005.7 ............................................................................................. 17

12 C.F.R. § 1005.7(a) ........................................................................................ 11

12 C.F.R. § 1005.7(b)(5) .................................................................................... 11

DOLL AMIR & ELEY LLP

1

12 C.F.R. § 1005.7(b)(11) .......................................................................... 11

2

12 C.F.R. § 1005.9(b)(3) ........................................................................... 11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOLL AMIR & ELEY LLP

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Capital One, N.A. ("Capital One") respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiffs' First Amended Class Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

Plaintiffs Jacob Figueroa and Mary Jackson ("Plaintiffs") bring this action over ATM fees that were charged to them in accordance with the express terms of the governing agreement. Specifically, their contract with Capital One provides that they may be charged a fee for "each balance inquiry, cash withdrawal, or funds transfer" undertaken at a non-Capital One branded ATM ("foreign ATM"). And, when Plaintiffs conducted balance inquiries and cash withdrawals at foreign ATMs, Capital One imposed a fee for each such balance inquiry and cash withdrawal. Despite the clear contractual language providing for these fees, Plaintiffs now bring eight causes of action against Capital One in this putative class action.

Plaintiffs allege the following claims against Capital One: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) conversion, (4) unjust enrichment, (5) violation of the unfair prong of California's Unfair Competition Law, Cal. Bus. And Prof. Code § 17200, *et seq.* ("UCL"), (6) violation of the fraudulent prong of the UCL, (7) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770 *et seq.* ("CLRA"), and (8) violation of the New York Consumer Protection Act, ("NY GBL"), N.Y. Gen. Bus Law §§ 349-350. Plaintiffs seek to bring this action on behalf of themselves and six purported classes— two national classes and two state-specific sub-classes within each national class based on the imposition of balance inquiry fees (either as a stand-alone fee or in conjunction with a cash withdrawal).

As a preliminary matter, Plaintiffs' claims are governed by New Jersey law pursuant to the choice of law provision in the governing agreement. Application of

DOLL AMIR & ELEY LLP

1

CAPITAL ONE, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

New Jersey law is appropriate because Plaintiffs opened their Capital One bank account at a New Jersey branch location, and New Jersey law does not conflict with any fundamental policy of California law. Regardless, whether New Jersey or California law applies, Plaintiffs' claims fail for multiple independent reasons.

Plaintiffs' primary claim is that Capital One breached the governing account agreement by charging a fee for each balance inquiry performed at a foreign ATM, even if Plaintiffs also conducted a cash withdrawal at that foreign ATM, giving rise to a separate foreign ATM fee. Plaintiffs argue that they did not expect Capital One to charge these balance inquiry fees because Capital One's fee schedule only stated that fees would be provided for "transactions," and the foreign ATMs did not display any disclosure that Capital One would charge a freestanding balance inquiry fee. Plaintiffs' claim is untenable because it ignores the plain language of the contract.

First, the contract unambiguously provides that Capital One may impose a charge for *every* foreign ATM balance inquiry, as follows: "You may also be charged a fee by [Capital One], as disclosed in our then current Schedule of Fees and Charges, for *each* cash withdrawal, funds transfer *or balance inquiry* that you may make using a non-Capital One Bank branded ATM" (emphasis added). Second, this language does not limit imposition of the fee to "transactions" and, in fact, does not even use the word "transaction" in describing what events give rise to the fee. The only other pertinent language is in the Schedule of Fees and Charges, which simply sets forth the amount of $2.00 for this "fee" (and also does not limit this fee to "transactions"). Third, Plaintiffs misconstrue language describing the foreign ATM operators in an effort to manufacture a requirement that Capital One include a disclaimer and opportunity to cancel *on the foreign ATM* before imposing the balance inquiry fee. This assertion is illogical on a common sense basis, as Capital One cannot control non-Capital One ATMs, and it also is unsupported by the contract language.

Plaintiffs have also failed to allege adequately their remaining claims. Plaintiffs' second claim for breach of the covenant of good faith and fair dealing and

DOLL AMIR & ELEY LLP

fourth claim for unjust enrichment cannot stand as a matter of law in light of the express contract governing Plaintiffs' claims. Plaintiffs' third claim for conversion fails because, in light of the contractual authorization for the foreign ATM transaction fees, Plaintiffs cannot allege that the fees were "wrongful."

Plaintiffs' fifth and sixth claims for violation of the UCL, seventh claim for violation of the CLRA and eighth claim for violation of the NY GBL fail because they are based on California and New York statutory claims, whereas New Jersey law governs. Each of these claims additionally fails for the same reason as Plaintiffs' breach of contract claim; Plaintiffs cannot allege adequately any wrongful actions based on Capital One's foreign ATM fees because those fees are expressly authorized in the governing contract.

For these reasons, Capital One respectfully requests the Court to grant this motion and dismiss Plaintiffs' FAC in its entirety.

## II.   SUMMARY OF FACTUAL ALLEGATIONS

### A.   Plaintiffs Hold A Capital One Bank Account That Provides For Non-Capital One ATM Fees.

Plaintiffs have a Capital One checking account, which is governed by a standardized account agreement. *See* First Amended Class Action Complaint ("FAC"), ¶ 24.

Specifically, Plaintiffs allege that their contract with Capital One is embodied in "Capital One's EFTA Agreement, Schedule of Fees and Charges, and related documentation." FAC, ¶ 67. The FAC references, and the Complaint attaches, Capital One's Electronic Fund Transfers Agreement and Disclosure ("EFTAAD"), effective August 22, 2014. Compl., Ex. A; FAC, ¶ 28. The FAC also quotes from a "Fee Schedule" ("Fee Schedule"), which is a document expressly referenced in the EFTAAD. *See, e.g.*, FAC, ¶ 49. Additionally, the EFTAAD expressly states that Plaintiffs' account is governed by the Rules Governing Deposit Accounts agreement ("Rules Governing Agreement"). Compl., Ex. A, ¶ 17.

Plaintiffs' allegations span from April 2015 to August 2017. *See* FAC, ¶¶ 42, 44, 46, 48. Within this time frame, the agreements governing Plaintiffs' account were updated, though the language relevant to Plaintiffs' claims *did not change*. The versions of these agreements that were in effect at the time of the transactions alleged in Plaintiffs' FAC are as follows and are submitted with this Motion (collectively, the "Account Agreements")[1]:

| Date of Transaction | Governing Agreements |
|---|---|
| April 28, 2015 | • Rules Governing Agreement, effective August 22, 2014 (Exhibit A[2])<br>• EFTAAD, effective December 16, 2013 (Exhibit B)<br>• Fee Schedule, effective November 17, 2014 (attached hereto as Exhibit C) |
| June 15, 2015 | • Rules Governing Agreement, effective August 22, 2014 (Exhibit A)<br>• EFTAAD, effective December 16, 2013 (Exhibit B)<br>• Fee Schedule, effective November 17, 2014 (Exhibit C) |
| February 31, 2017[3] | • Rules Governing Agreement, effective August 22, 2014 (Exhibit A)<br>• EFTAAD, effective November 14, 2015 (Exhibit D)<br>• Fee Schedule, effective September 18, 2015 (Exhibit E) |
| August 31, 2017 | • Rules Governing Agreement, effective March 15, 2017 (Exhibit F)<br>• EFTAAD, effective June 17, 2017 (Exhibit F)<br>• Fee Schedule, effective September 18, 2015 (Exhibit E) |

---

[1] The Court may consider the Account Agreements because the FAC explicitly references and necessarily relies upon them, as Plaintiffs' claims necessarily depend on whether Capital One's alleged actions were authorized by the governing Account Agreements. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (on motion to dismiss, incorporating billing agreement where question of whether alleged treatment of billings was authorized depended on billing agreement such that agreement was "integral" to complaint); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (on motion to dismiss, taking into consideration prospectus and website that were referenced in complaint). Capital One is not aware of any dispute regarding the Account Agreements' authenticity or relevance.

[2] All exhibits referenced in this Motion are attached to the concurrently submitted declaration of Thomas Stainback, unless otherwise indicated.

[3] Capital One believes that this is a typographical error and that the subject transaction occurred on February 21, 2017.

4

DOLL AMIR & ELEY LLP

Every version of the EFTAAD in effect during Plaintiffs' alleged transactions contains the following language: "You may also be charged a fee by us [Capital One], as disclosed in our then current Schedule of Fees and Charges, for *each* cash withdrawal, funds transfer *or balance inquiry* that you may make using a non-Capital One Bank branded ATM." Exs. B ¶ 7, D ¶ 7, F ¶ 7 (emphasis added).

Each Schedule of Fees in effect during the relevant time states that Capital One's "Foreign ATM Fee (initiated at an ATM other than a Capital One Bank ATM)" is "$2.00." Exs. C, E (emphasis added).

## B.   Plaintiffs Were Charged Fees At Non-Capital One ATMs.

Plaintiffs allege that on four separate occasions they were charged an ATM fee by Capital One for a balance inquiry undertaken at a foreign ATM. FAC, ¶¶ 26-33, 42-47, 48-52. Plaintiffs allege that on August 31, 2017 (in Studio City, CA), February 31, 2017[4] (in Hollywood, CA), and April 28, 2015 (in New York, NY), they withdrew money from a foreign ATM after checking their account balance. *See* FAC, ¶¶ 42-47. Each of these actions resulted in two fees being charged by Capital One—one for the balance inquiry and one for the cash withdrawal. *Id.* Plaintiffs also allege that on June 15, 2015, they "performed a balance inquiry" at a foreign ATM, were never warned such an action would incur a fee, but were, nevertheless, charged a fee by Capital One. FAC, ¶ 48.

## III.   LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. Fed. R. Civ. Pro. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). As the Supreme Court has confirmed, "[t]o survive a motion to dismiss [brought pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter,

Doll Amir & Eley LLP

---

[4] *See supra*, FN 3.

1  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*
2  *Iqbal*, 556 U.S. 662, 678 (2009).

3       The court does not assume that "the [plaintiff] can prove facts which [he or she]
4  has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*
5  *Carpenters,* 459 U.S. 519, 526 (1983). Moreover, a court is not required to credit
6  conclusions cast as factual allegations, unwarranted deductions of fact, or
7  unreasonable inferences. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th
8  Cir. 2001); *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). A Rule
9  12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory"
10 or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*
11 *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

12 **IV.   ARGUMENT**

13     **A.   New Jersey Law Governs Plaintiffs' Claims.**

14       The Rules Governing Agreement provides that federal law controls, but, if no
15 federal law exists, then "applicable state law (the state where your account was
16 established)." Ex. A, p. 2; Ex. F, p. 9. Here, Plaintiffs' account was opened in Saddle
17 Brook, New Jersey, on October 21, 2014.[5] Therefore, the Account Agreements
18 provide that New Jersey law will control in the absence of controlling federal law.

19       A federal court sitting in diversity must apply the choice of law rules of the
20 forum state (here, California) to determine whether an agreement's choice of law
21 provision can control. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir.
22 2005); *Lloyd v. Navy Fed. Credit Union*, 2018 WL 1757609, at *4 (S.D. Cal. Apr. 12,
23 2018). California law follows a two-part analysis to determine whether a contract's
24 choice of law provision controls: "First, the court must determine whether: (1) the

25

26

27 [5] Capital One's records reflect that Plaintiffs' account was opened in New Jersey in
   2014. Stainback Decl., ¶ 4. Although this information falls outside of the pleadings,
28 Capital One does not anticipate any dispute on this point; should the Court wish,
   Capital One will to provide further supporting evidence.

DOLL AMIR & ELEY LLP

1   chosen state has a substantial relationship to the parties or their transaction, or (2)

2   there is any other reasonable basis for the parties' choice of law. . . . Second, if either

3   is shown, the court must next determine whether the chosen state's law is contrary to

4   a fundamental policy of California. *Id.* If there is no such conflict, the court shall

5   enforce the parties' choice of law. *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459,

6   466 (1992).

7       The parties' choice of law should be enforced here because Plaintiffs opened

8   their account with Capital One in New Jersey, and New Jersey law does not conflict

9   with any fundamental policy of California. Indeed, as demonstrated below, both

10  California and New Jersey law dictate the same result.

**B.   Plaintiffs Have Failed To Allege Adequately Their First Claim For Breach Of Contract.**

13      In both California and New Jersey, in order to prevail on a breach of contract

14  claim, a plaintiff must show "first, that '[t]he parties entered into a contract containing

15  certain terms'; second, that 'plaintiff[s] did what the contract required [them] to do';

16  third, that 'defendant[s] did not do what the contract required [them] to do[,]' defined

17  as a 'breach of the contract'; and fourth, that 'defendant[s'] breach, or failure to do

18  what the contract required, caused a loss to the plaintiff[s].'" *Globe Motor Co. v.*

19  *Igdalev*, 225 N.J. 469, 482 (2016); *see also PHL Variable Ins. Co. v. Crescent Fin. &*

20  *Ins. Agency, Inc.*, 2018 WL 1577709, at *4 (C.D. Cal. Mar. 26, 2018) (same), *citing*

21  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

22      Here, Plaintiffs allege that Capital One's imposition of fees for balance

23  inquiries at foreign ATMs breached the Account Agreements because "[n]o

24  contractual provision authorizes Capital One to assess an OON Fee for a balance

25  inquiry at an out-of-network ATM, without the Fee charged by Capital One being

26  displayed on the ATM screen and being given an opportunity to cancel the transaction

27  before the fee is imposed." FAC, ¶ 68.

28

DOLL AMIR & ELEY LLP

CAPITAL ONE, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs' argument is backward. The Account Agreements *do* authorize Capital One to charge a fee for a balance inquiry at a foreign ATM, and the Account Agreements *do not* require Capital One, before charging such a fee, to display information *on the foreign ATM* or ensure *that the foreign ATM* provides an opportunity for cancellation. In other words, Plaintiffs are attempting to impose non-existent requirements on Capital One before it exercises its express contractual right to charge a fee. In attempting to impose these requirements upon Capital One, Plaintiffs misconstrue contractual language regarding a separate fee that the foreign ATM operator (not Capital One) might impose.

Because Plaintiffs have failed to allege any action by Capital One that is not authorized by the Account Agreements, they have failed to allege adequately this claim, and it must be dismissed.

### 1.  The Account Agreements plainly state that a fee may be charged for balance inquiries separately from other actions.

Plaintiffs claim that Capital One "provid[ed] express and implied indications that balance inquiries would *not* incur [ATM] Fees." FAC, ¶ 23. Specifically, Plaintiffs argue, the Fee Schedule discloses $2.00 "per transaction," but a balance inquiry is not a "transaction." FAC, ¶¶ 29, 31, 51. Plaintiffs further argue that they were not adequately warned that they may incur two separate fees for checking their balance and then proceeding with a cash withdrawal. FAC, ¶¶ 31-32. These allegations fail because they mischaracterize and contradict the express language of the Account Agreements.

First, the EFTAAD explicitly identifies cash withdrawals, funds transfers and balance inquiries as separate events that can *each* give rise to a fee:

> You may also be charged a fee by us, as disclosed in our then current Schedule of Fees and Charges, for *each* cash withdrawal, funds transfer or balance inquiry that you may make using a non-Capital One Bank branded ATM.

Ex. EFTAAD, Exs. B ¶ 7, D ¶ 7, F ¶ 7 (emphasis added); *see also* FAC, ¶ 28. This language does not in any way indicate that fees will apply only to "transactions" (it

DOLL AMIR & ELEY LLP

does not even use the word "transactions"), and to the contrary it indisputably states that a fee may be applied *for a balance inquiry*. *Id.* Nor does the language include any indication that a customer may avoid a fee by bundling two or more of these events at one foreign ATM. *Id.*

Second, contrary to Plaintiffs' characterization, the Fee Schedule does not limit the $2.00 fee to "transactions." In setting forth the foreign ATM fee, the Fee Schedule does not use the word "transaction" at all. Rather, under "ATM Fees," it states:

> Foreign ATM Fee (initiated at an ATM other than a          $2.00
>    Capital One Bank ATM)

Fee Schedule, Exs. C, E (emphasis added). This language simply states the amount of the fee that is applied pursuant to the EFTAAD and does not contain any information about what events may give rise to the fee.

The plain meaning of these documents is that a $2.00 fee will be applied for *each* cash withdrawal, funds transfer, or balance inquiry. There is no language indicating that the fee will be waived for a balance inquiry if it is paired with a cash withdrawal. Plaintiffs' contention otherwise is not grounded in (and directly contradicts) the express language of the Account Agreements. Neither New Jersey nor California law tolerates such acrobatics to create contractual ambiguity. *See Schor v. FMS Financial Corp.*, 357 N.J. Super. 185, 192 (2002) (The "court should not torture the language of [a contract] to create ambiguity."); *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 37 (1994), as modified (Mar. 2, 1995) ("Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.").

Because Capital One's alleged charging of fees for balance inquiries at foreign ATMs is clearly authorized in the Account Agreements, Plaintiffs fail to state any breach of the Account Agreements.

DOLL AMIR & ELEY LLP

**2.**      **The Account Agreements do not obligate Capital One to provide disclosures and a right to cancel on foreign ATMs prior to charging balance inquiry fees.**

Plaintiffs attempt to argue that Capital One's charging of foreign ATM balance inquiry fees breached the Account Agreements because Capital One promised not to do so unless the foreign ATM operator disclosed the fee and provided an opportunity to cancel. FAC, ¶¶ 30, 50, 68. Plaintiffs muddle apples and oranges to make this argument. The language Plaintiffs cite describes what the foreign ATM operator should disclose (as imposed by law) before *the foreign ATM operator* (not Capital One) imposes a fee. The language has no bearing on a fee charged *by Capital One.*

Plaintiffs appear to base their argument on the following italicized language in the Account Agreements:

> **Charges for ATM/Debit Card Transactions:** When you use your ATM/Debit Card at a non-Capital One Bank branded ATM, the ATM owner/operator may charge you a fee for your use of their ATM, and you may be charged a fee for a balance inquiry even if you do not complete a transaction. *The fee charged should be disclosed to you on the ATM, and you should be given an opportunity to cancel the transaction before the fee is imposed.* You may also be charged a fee by us, as disclosed in our then current Schedule of Fees and Charges, for each cash withdrawal, funds transfer or balance inquiry that you may make using a non-Capital One Bank branded ATM.

FAC, ¶ 28 (emphasis added); *see also* EFTAAD, Exs. B ¶ 7, D ¶ 7, F ¶ 7.

As a straightforward grammatical principle, this italicized language can only be read as applying to a fee charged *by the foreign ATM operator*; the foreign ATM operator may charge a fee, but before charging such fee, it should be disclosed on the ATM, with an opportunity to cancel. Indeed, in the following sentence the contract uses the word "also" to signal that, separate from any fee imposed by the foreign ATM operator, Capital One may charge another fee. After that grammatical transition, when describing the fee Capital One may impose, the contract sets forth no requirement of any display on the foreign ATM itself. Nor would it make logical sense to do so; Capital One does not control non-Capital One ATMs.

DOLL AMIR & ELEY LLP

This contractual language comports with federal law. The Electronic Funds Transfer Act ("EFTA"), which governs electronic banking transactions, including ATM transactions and associated disclosures, sets forth completely separate disclosure requirements for financial institutions and ATM owners/operators.

For example, EFTA requires the financial institution that has the relationship with the consumer (here, Capital One), *inter alia*, to disclose fees "at the time a consumer contracts for an electronic fund transfer service or before the first electronic fund transfer is made involving the consumer's account." 12 C.F.R. § 1005.7(a), § 1005.7(b)(5). The disclosures regarding fees must provide the consumer notice of "any fees imposed by the financial institution for electronic fund transfers or for the right to make transfers." § 1005.7(b)(5); *see* § 1005.9(b)(3) (requiring periodic statements to also include any fees during that period for electronic fund transfers). EFTA does not require the financial institution to make any disclosures on ATMs themselves, but requires disclosure (as Capital One provided here) that the ATM operator may impose a fee. *See* 12 C.F.R. § 1005.7(b)(11) (requiring "[a] notice that a fee may be imposed by an automated teller machine operator as defined in § 1005.16(a), when the consumer initiates an electronic fund transfer or makes a balance inquiry, and by any network used to complete the transaction.").

By contrast, EFTA imposes different disclosure requirements for foreign ATM operators, defined as "any person that operates an automated teller machine at which a consumer initiates an electronic fund transfer or a balance inquiry and *that does not hold the account to or from which the transfer is made, or about which an inquiry is made*." § 1005.16(a). In contrast to financial institutions, foreign ATM operators are required to provide notice of fund transfer or balance inquiry fees that the foreign ATM operators may charge: "[a]n automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall: (1) Provide notice that a fee will be imposed . . . [and] (2) Disclose the amount of the fee." 12 C.F.R. § 1005.16(a), (b). The foreign ATM operators are further required to

11

provide such notice "before the consumer is committed to paying a fee." 12 C.F.R. §1005.16(c). (Thus, Capital One's description in the EFTAAD was a straightforward recitation of what the foreign ATM operator "should" do under the EFTA.)

Because Plaintiffs' argument about disclosures and cancellation options on foreign ATMs is not supported by the Account Agreements (which instead describe the foreign ATM operators' obligations regarding fees *that the foreign ATM operators* charge), it fails to state a basis for this claim. Accordingly, this claim must be dismissed.

### C.    Plaintiffs Have Failed To Allege Adequately Their Second Claim For Breach Of Good Faith And Fair Dealing.

In tacit acknowledgement that Capital One has not breached the plain language of the Account Agreements, Plaintiffs additionally allege that Capital One's imposition of foreign ATM balance inquiry fees breaches the covenant of good faith and fair dealing. FAC, ¶ 76. This claim fails because Capital One is only alleged to have exercised its contractual right to charge a fee under the Account Agreements.

Both California and New Jersey law interpret every contract to contain an implied covenant of good faith and fair dealing. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001) ("A covenant of good faith and fair dealing is implied in every contract in New Jersey."); *Ramirez v. Baxter Credit Union*, 2017 WL 118859, at *5 (N.D. Cal. 2017) ("California law implies a covenant of good faith and fair dealing in every contract."). However, "an implied obligation of good faith and fair dealing does not and cannot 'alter the terms of a written contract.'" *East Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*, 294 N.J. Super. 158, 170 (1996); *see also Walters v. Target Corp.*, 2017 WL 4700087, at *3 (S.D. Cal. Oct. 19, 2017) (court cannot create implied terms that "vary express contractual terms"), *citing Carma Developers (Cal.), Inc., v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 374 (1992).

Accordingly, "the duty of good faith and fair dealing . . . may not be invoked to preclude a party from exercising its express rights under such an agreement." *Hassler*

DOLL AMIR & ELEY LLP

*v. Sovereign Bank*, 644 F. Supp. 2d 509, 518 (D.N.J. 2009) (granting motion to dismiss claim for breach of covenant of good faith and fair dealing where bank posted payment transactions in a manner authorized by governing agreement); *see also Walters*, 2017 WL 4700087, at *3 (claim for breach of covenant of good faith and fair dealing could not be based on Target's charging a fee at or below an amount authorized in the governing agreement).

Because the Account Agreements expressly authorized Capital One to charge a fee of $2.00 for "each cash withdrawal, funds transfer, or balance inquiry," its exercise of this contractual right cannot form the basis of a claim for breach of the covenant of good faith and fair dealing, and this claim must be dismissed.

### D. Plaintiffs Have Failed To Allege Adequately Their Third Claim For Conversion.

Plaintiffs' third claim asserts that Capital One has committed the tort of conversion by wrongfully collecting and retaining fees charged. FAC ¶ 81. This claim fails because the fees were expressly authorized by the Account Agreements.

Both New Jersey and California law require, for a plaintiff to maintain a claim of conversion, that the plaintiff demonstrate the defendant's "wrongful" interference with the plaintiff's property. *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 312 (D.N.J. 2013) ("The elements of common law conversion under New Jersey law are (1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant."); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009) (to state claim for conversion in California, plaintiff must plead: "plaintiff's ownership or right to possession of property, defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession, and damage to plaintiff."). Here, Plaintiffs have failed to allege facts demonstrating that Capital One's retention of foreign ATM fees was "wrongful" because the Account Agreements plainly authorize those charges.

13

To the extent California law applies, the claim also fails because federal courts in California have repeatedly held that "[a] bank may not be sued for conversion of funds deposited with the bank" because title to a deposit passes immediately to the bank upon deposit. *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009) (granting summary judgment for defendant bank on conversion claim); *Chavez v. Bank of Am. Corp.*, 2012 WL 1594272, at *11 (N.D. Cal. May 4, 2012) (granting motion to dismiss conversion claim with prejudice based on "well-settled" law "that a claim against the bank for conversion will not lie[] [b]ecause title to a deposit passes immediately to the bank upon deposit"); *see also Romero v. Securus Technologies, Inc.*, 216 F. Supp. 3d 1078, 1094 (S.D. Cal 2016) ("[A]s the California Court of Appeal has noted, there is no support for the position that an overcharge, without more, gives rise to a claim for conversion.").

For the forgoing reasons, this claim must be dismissed.

**E.     Plaintiffs Have Failed To Allege Adequately Their Fourth Claim For Unjust Enrichment.**

Plaintiffs' fourth claim asserts that Capital One has been unjustly enriched through its imposition of and retention of the alleged foreign ATM fees. FAC, ¶ 95. This claim fails because a claim for unjust enrichment cannot be maintained where there exists an express contract.

Under New Jersey law, unjust enrichment is a quasi-contractual remedy that is imposed "for the purpose of bringing about justice." *Suburban Transfer Service, Inc.*, 716 F.2d 220, 226 (1983). "Quasi-contract liability will not be imposed, however, if an express contract exists concerning the identical subject matter." *Id.*, at 226-27. This is because "[t]he parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties." *Id.*, at 227. As New Jersey's highest court explained, the "essential requirement of unjust enrichment of defendant does not appear . . . [where] from defendant's point of view, it cannot be said that it accepted a benefit which enriched it

DOLL AMIR & ELEY LLP

14

beyond its contractual right." *St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co. of North America*, 32 N.J. 17, 22-23 (1960). Similarly, to the extent unjust enrichment exists under California law as a quasi-contract claim seeking restitution,[6] "an unjust enrichment claim does not lie where the parties have an enforceable express contract." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370-71 (2010).

Here, Plaintiffs have pled and admit the existence of the Account Agreements, which govern Capital One's imposition of fees for balance inquiries made at foreign ATMs. Accordingly, this claim for unjust enrichment cannot lie under either New Jersey or California law and it must be dismissed. *Hassler*, 644 F. Supp. 2d at 519-520 (granting motion to dismiss claim of unjust enrichment where defendant bank's handling of payment transactions was authorized under governing agreement); *Durell*, 183 Cal. App. 4th at 1370-71 (affirming order sustaining demurrer to unjust enrichment claim where the plaintiff alleged that the parties entered into express contracts).

> **F.     Plaintiffs Have Failed To Allege Adequately Their Fifth, Sixth, Seventh and Eighth Claims Based On California and New York Statutes.**

Plaintiffs' fifth and sixth claims allege violations the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.*, their seventh claim alleges violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770, *et. seq.*, and their eighth claim alleges violation of the New York Consumer Protection Act, N.Y. Gen. Bus. Law §§ 349, 350.

---

[6] In California, "unjust enrichment is not a cause of action." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307(2011); *see also Melchoir v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment."); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010) ("In California, unjust enrichment is a theory of recovery, not an independent legal claim.")

DOLL AMIR & ELEY LLP

DOLL AMIR & ELEY LLP

1   Each of these claims fails because, as set forth above, New Jersey law governs

2   Plaintiffs' claims. *Supra*, Section IV.A. Plaintiffs thus may not maintain claims based

3   on other states' statutes. *See Aliya Medcare Finance, LLC v. Nickell*, 2015 WL

4   4163088, *19 ("Because Nevada law—rather than California law—applies, CTB's

5   California state law unfair competition and trademark infringement claims must be

6   dismissed. If CTB wishes to replead these claims, it must do so under Nevada law.");

7   *Century 21 Real Estate LLC v. All Professional Realty, Inc.*, 889 F. Supp. 2d 1198,

8   1235 (E.D. Cal. 2012) (granting defendant's motion for summary adjudication of

9   California UCL claim because New Jersey law governed); *Medimatch, Inc. v. Lucent*

10  *Techs., Inc.*, 120 F. Supp. 2d 842, 861–62 (N.D. Cal.2000) (dismissing with prejudice

11  California UCL claim on basis that claim fell within scope of New Jersey choice-of-

12  law provision).

13  Even if the California and New York statutory claims could be maintained

14  despite application of New Jersey law (they cannot), each of these claims is still

15  subject to dismissal.

16          **1.  Plaintiffs' Fifth and Sixth Claims Under The "Unfair" And**

17                  **Fraudulent" Prongs Of UCL Are Barred By A "Safe Harbor."**

18  Plaintiffs allege that Capital One's conduct was "unfair" under the UCL

19  because it "charged two separate OON Fees for a cash withdrawal preceded by a

20  balance inquiry at the same out of network ATM," and "charged an OON Fee for a

21  balance inquiry at an out of network ATM" without warning accountholders. FAC, ¶¶

22  104-05. Plaintiffs also allege that these same actions are evidence of Capital One's

23  affirmative misrepresentations and omissions sufficient for a claim under the UCL's

24  fraudulent prong. *Id.*, ¶¶ 115-16. However, Plaintiffs' claims under the UCL (both the

25  unfair and fraudulent prongs) fail because Capital One's disclosures are protected

26  under the "safe harbor" established in *Cel-Tech Communications v. Los Angeles*

27  *Cellular Tel. Co.*, and therefore cannot be the subject of UCL allegations.

28

16

In *Cel-Tech Communications*, the Supreme Court of California established a "safe harbor" from UCL liability, which provided that:

> [a]lthough the unfair competition law's scope is sweeping, it is not unlimited. . . . If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor.

20 Cal. 4th 163, 182 (1999). This safe harbor extends to federal statutory and regulatory authority. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164-68 (9th Cir. 2012). In *Davis*, the plaintiff challenged the annual fee disclosures provided in the defendants' application and marketing material as violative of the UCL. *Davis*, 691 F.3d at 1164. The Court reviewed *Cel-Tech* at length and determined that TILA and Regulation Z expressly provided for the exact type of disclosure provided on the defendants' online application, and therefore "[b]ecause the disclosure in the application clearly was permitted by federal law, it cannot serve as the basis for UCL liability." *Id.* at 1164-68.

Here, Capital One's Account Agreements comply with the EFTA and its implementing regulations, Regulation E, 12 C.F.R. § 1005.7 ("Regulation E"), as it relates to the disclosure of certain fees. As discussed above, every instance in which a fee may be charged is clearly enumerated in EFTAAD Paragraph 7, and the Fee Schedule states that each such fee will be $2.00. As the fees giving rise to Plaintiffs' claims are allowed by and were charged in compliance with EFTA, they cannot give rise to UCL liability and these claims must be dismissed.

**2.      Plaintiffs' Fifth Claim Under The "Unfair" Prong Of UCL Fails Because Capital One Disclosed Its Fees To Customers.**

Plaintiffs' fifth claim that Capital One's foreign ATM balance inquiry fees are "unfair" under the UCL additionally fails on the merits. First, the claim is wholly derivative of Plaintiffs' breach of contract claim, and it thus fails for the same reasons. Second, Plaintiffs have failed to allege adequately the elements of this claim.

DOLL AMIR & ELEY LLP

1    **a.    Plaintiff's Claim Is Derivative Of Their First Claim.**

2    As a preliminary matter, Plaintiffs' claim is wholly derivative of the breach of

3    contract claim, and it thus fails for the same reasons. *Plascencia v. Wachovia Bank*,

4    2011 WL 249492, at *2 (N.D. Cal. Jan. 26, 2011) (dismissing § 17200 claims, where

5    they were derivative and dependent on fraud, promissory estoppel and breach of

6    covenant of good faith and fair dealing claims that were subject to dismissal).

7    Notably, a breach of contract claim may only serve as the basis of a UCL claim

8    if "it *also constitutes* conduct that is 'unlawful, or unfair, or fraudulent.'" *Conder v.*

9    *Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010) (emphasis in

10   original), *quoting Puentes v. Wells Fargo Home Mtg., Inc.*, 160 Cal.App.4th 638, 645

11   (2008). That is, there must be an additional reason why the act is unlawful, unfair, or

12   fraudulent, beyond a basic contract claim. *See Rosell v. Wells Fargo Bank, N.A.*, 2014

13   WL 4063050, at *6 (N.D. Cal. Aug. 15, 2014) ("A contract-based UCL claim must

14   have a 'plus' factor to make it independently actionable under the UCL. Otherwise,

15   every garden-variety breach of contract claim, which often includes the charge that

16   the breach was 'unfair' to the non-breaching party, would double as a UCL claim.").

17   Here, Plaintiffs have failed to allege any actions other than Capital One's alleged

18   breach of the Account Agreements.

19   **b.    Plaintiffs Have Failed To Allege Adequately An**

20   **"Unfair" Business Practice.**

21   Moreover, to the extent Plaintiffs' UCL claim stands on its own, Plaintiffs have

22   failed to allege a viable claim. In *Phipps*, the court recognized that the California

23   Supreme Court has not established a definitive test when considering whether a

24   business practice is unfair under the UCL, but the Courts of Appeal have created three

25   tests for determining "unfairness" under the UCL. *Phipps v. Wells Fargo Bank, N.A.*,

26   2011 WL 302803, at *16 (E.D. Cal. Jan. 27, 2011), *citing Drum v. San Fernando*

27   *Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010).

28

DOLL AMIR & ELEY LLP

The three tests are as follows: (1) "the public policy which is a predicate to a consumer unfair competition act under the 'unfair' prong of the UCL must be tethered to a specific constitutional, statutory, or regulatory provision[]." *Phipps*, 2011 WL 302803 at *16, *citing Drum*, 182 Cal. App. 4th at 256 (internal citations omitted); (2) "whether the alleged business practice 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim,'" *id.*; or (3) whether the practice meets the definition of "unfair" of the Federal Trade Commission Act (15 U.S.C. § 45, subd.(n)), which is "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.*, *citing Drum*, 182 Cal. App. 4th at 257.

Plaintiffs have failed to allege facts satisfying any of these tests. First, Plaintiffs do not point to any specific statutory or regulatory provision to support their UCL claim. Second, Plaintiffs' only support that Capital One's charging of the fees is "immoral" is their allegation that Capital One did not disclose the fees in its contract with Plaintiffs, which is belied by the express language of the Account Agreements. Third, Plaintiffs cannot plead unavoidable injury; the Account Agreements clearly disclosed the applicable fees, and Plaintiffs do not allege any facts demonstrating that their performance of balance inquiries at foreign ATMs was compulsory. Plaintiffs' failure to satisfy these tests provides a third independent basis to dismiss this claim.

### 3. Plaintiffs' Sixth Claim Under The "Fraudulent" Prong Of UCL Fails Because Plaintiffs Fail To Allege Adequately A Misrepresentation Or Omission.

Plaintiffs' sixth claim under the "fraudulent" prong of the UCL fails for the additional independent reason that Plaintiffs have not alleged adequately that Capital One made a misrepresentation or omission. Plaintiffs assert that Capital One

DOLL AMIR & ELEY LLP

19

"affirmatively and knowingly omitted the total price of out of network ATM transactions and failed to inform consumer they would be charged two fees for a cash withdrawal preceded by a balance inquiry." FAC ¶¶ 115-16. However, this assertion is contravened by the clear contractual language in the Account Agreements.

To plead a claim under the UCL's fraudulent prong, a plaintiff must "show deception to some members of the public . . . [or] allege that members of the public are likely to be deceived." *McMillan v. Bank of Am., N.A.*, 2015 WL 1942743, at *16 (S.D. Cal. Apr. 15, 2015), *quoting Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1207 (E.D. Cal. 2013) (internal quotations and citations omitted). UCL fraudulent conduct claims "trigger the heightened pleading standard of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.2009).

To sufficiently plead an affirmative misrepresentation, a plaintiff must plead with particularity "representations to the public which are untrue," and "also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006), *quoting Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1289 (2002). Moreover, plaintiffs must allege the particular circumstances of the alleged misrepresentation—including their "exposure to those alleged misrepresentations." *Lloyd*, 2018 WL 1757609, at * 18 (internal citations omitted), *quoting Letizia v. Facebook, Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) ("Plaintiffs must state the who, what, when, where, and how of the misconduct charged . . .").

To plead a fraudulent omission with sufficient specificity under Rule 9(b), a plaintiff must "describe the omission and where the omitted information should have or could have been revealed" and explain what was represented that failed to include the allegedly omitted information. *Stewart v. Electrolux Home Prod., Inc.*, 2018 WL 339059, at *6 (E.D. Cal. Jan. 9, 2018), *citing Eisen v. Porsche Cars N.A., Inc.*, 2012 WL 841019, at * 3 (C.D. Cal. Feb. 22, 2012). Further, a plaintiff must demonstrate reliance on the alleged omission in one of two ways, either by "establishing had the

20

CAPITAL ONE, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

omitted information been disclosed, the plaintiff would have been aware of it and behaved differently," or by demonstrating that when the omission was revealed there was an intense "public outcry." *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *35 (N.D. Cal. May 27, 2016), *quoting Hoffman v. 162 North Wolfe LLC*, 228 Cal.App.4th 1178, 1193-94 (2014) and *In re Carrier IQ*, 78 F. Supp. 3d 1051, 1114 (N.D. Cal. 2015).

Here, Plaintiffs cannot allege adequately a misrepresentation or omission regarding Capital One's foreign ATM balance inquiry fees. As set forth in detail above, *supra* Section IV.B.1, the Account Agreements explicitly provided that a fee could be charged for "*each* cash withdrawal, funds transfer or balance inquiry that you may make using a non-Capital One Bank branded ATM." Exs. B ¶ 7, D ¶ 7, F ¶ 7 (emphasis added); *see also* FAC, ¶ 28. Plaintiffs have not alleged any facts (as opposed to conclusory accusations) demonstrating that Capital One misrepresented or omitted information in conflict with this explicit disclaimer. Accordingly, this claim must be dismissed. *Kirsopp v. Yamaha Motor Co.*, 2015 WL 11197829, at *7 (C.D. Cal. Jan. 7, 2015) (dismissing a UCL-fraudulent claim because plaintiffs had failed to "identify a single statement or advertising material that [they] relied on in making [their] purchases").

### 4. Plaintiffs' Seventh Claim For Violation Of CLRA Claim Fails Because No "Goods" Or "Services" Are At Issue.

Plaintiffs' seventh claim alleges that Capital One violated the CLRA by virtue of its "affirmative misrepresentations regarding the total price of out of network ATM transactions." FAC, ¶ 122-23. The CLRA "prohibits certain 'unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or that results in the sale or lease of goods or services to any consumer.'" *Lloyd*, 2018 WL 1757609, at *18; *see also* Cal. Civ. Code § 1770(a). Plaintiffs fail to allege adequately a claim under the CLRA because they have not and cannot allege that

DOLL AMIR & ELEY LLP

21

Capital One's bank and/or debit account is a sale or lease of goods or a service to any consumer, as required under Cal. Civ. Code § 1770.

As this Court has recently acknowledged, the CLRA does not apply to debit cards because this is not the type of service contemplated in the CLRA. *Lloyd*, 2018 WL 1757609, at *18-20. Specifically, the plaintiffs in *Lloyd* challenged the overdraft practices (including the imposition of overdraft fees) of Navy Federal Credit Union and alleged that the defendant-credit union misled consumers to believe that overdraft fees would not be charged when sufficient funds could "cover" transactions, but fees were charged in such circumstances. *Lloyd*, 2018 WL 1757609, at *18. The *Lloyd* court undertook an extensive analysis of the California Court of Appeal decision, *Berry v. American Express Publishing, Inc.*, and ultimately rejected the plaintiff's CLRA claim. *Id.*, *citing* 147 Cal. App. 4th 224 (2007).

In *Berry*, the Court of Appeal analyzed whether issuance of credit is a "service" under the CLRA. 147 Cal. App. 4th at 229. The Court reviewed the legislative history of the CLRA and found that an earlier draft of the statute included a definition of consumer that specifically included "an individual who seeks or acquires, by purchase or lease, any goods, services, *money, or credit* for personal, family or household purposes," but that the references to "money" and "credit" were removed prior to enacting the CLRA in the form in which is exists today. *Id.* at 231-32. The Court also examined the Legislature's narrowing of the CLRA by "limiting liability to transactions involving the actual or contemplated sale or lease of goods and services." *Id.* at 232. Thus, the *Berry* court held that "credit transactions, separate and apart from any sale or lease of goods or services" are not covered under the CLRA. *Id.* at 233.

The *Lloyd* court also recognized that courts in the Ninth Circuit have followed *Berry* to find the CLRA inapplicable in claims involving credit cards, including cases involving fees associated with credit cards. *Lloyd*, 2018 WL 1757609, at *19, *citing Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1359 (N.D. Cal. 2007) (dismissing with prejudice CLRA claims concerning credit cards, including

DOLL AMIR & ELEY LLP

22

CAPITAL ONE, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

defendant's alleged misleading disclosures regarding fees); *Augustine v. FIA Card Servs., N.A.*, 485 F. Supp. 2d 1172, 1175 (E.D. Cal. 2007) (dismissing CLRA claims regarding defendant's alleged retroactive increase of interest rates on credit cards because "California law provides that the CLRA does not apply to credit card transactions"). Further, *Lloyd* found persuasive other courts that had applied this reasoning to debit card overdrafts and overdraft fees to find that an extension of funds to cover overdrafts and associated fees is not a "good" or "service" under the CLRA. *Id.*, *citing Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 957 (N.D. Cal. 2009); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1326–27 (S.D. Fla. 2010).

*Lloyd*'s analysis is on point. Because Plaintiffs' claim is based on alleged misrepresentations associated with their debit card accounts and associated fees, and because these such accounts and fees are not a "good" or "service" under the CLRA, the CLRA does not apply, and this claim must be dismissed.

### 5. Plaintiffs' Eighth Claim For Violation Of NY GBL Fails Because It Based On The Same Mischaracterization Of The Account Agreements.

Plaintiffs' final claim alleges that the same underlying behavior in all of the preceding counts also violates the NY GBL. FAC, ¶127. Plaintiffs assert that "certain of Defendant's polices and/or practices described in this Complaint" are unfair, unconscionable or deceptive, and that Capital One's actions have been done in a "substantially aggravating" manner in that it intentionally and knowingly engaged in "this unlawful practice." FAC ¶¶ 128-29. Plaintiffs allege that, as a result of "these violations," they have been damaged. FAC ¶ 131.

NY GBL § 349 creates a private cause of action for any person injured by "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York. *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *14 (C.D. Cal. 2014), *citing* N.Y. Gen.

DOLL AMIR & ELEY LLP

Bus. Law § 349. To state a claim under § 349, "'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *38, *quoting Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). To be misleading, the "alleged act must likely to mislead a reasonable consumer acting reasonably under the circumstances." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007).

There appears to be some disagreement by courts in the Ninth Circuit as to whether a claim under NY GBL requires plaintiffs to meet the particularity requirement of Rule 9(b) or whether the minimal requirements of Rule 8 apply. *Compare In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *14, *with In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *38. Regardless of which standard applies, however, Plaintiffs' allegations regarding their NY GBL claim fail because they set forth only legal conclusions and vague allegations.

Moreover, Plaintiffs' NY GBL claim fails on its merits for the same reasons as the other claims in the FAC. The Account Agreements expressly state that a $2.00 fee may be charged for "*each* cash withdrawal, funds transfer or balance inquiry that you may make using a non-Capital One Bank branded ATM." Exs. B ¶ 7, D ¶ 7, F ¶ 7 (emphasis added); *see also* FAC, ¶ 28. Further, this is the precise fee Plaintiffs allege they were charged for foreign ATM balance inquiries. Thus, Plaintiffs cannot allege that Capital One misled them as to this fee, and this claim must be dismissed.

//

//

DOLL AMIR & ELEY LLP

## VI.   **CONCLUSION**

For all the foregoing reasons, Capital One requests that its Motion to Dismiss be granted in its entirety and Plaintiffs' FAC be dismissed with prejudice.

DATED: July 13, 2018                              DOLL AMIR & ELEY LLP


By: _/s/ Hunter R. Eley_
HUNTER R. ELEY
Attorneys for Defendant,
CAPITAL ONE. N.A.

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **1888 Century Park East, Suite 1850, Los Angeles, California 90067**.

On July 13, 2018, I served the foregoing document described as **DEFENDANT CAPITAL ONE, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE** on the interested parties in this action by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **BY REGULAR MAIL:** I deposited such envelope in the mail at 1888 Century Park East, Suite 1850, Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT DELIVERY:** I caused such documents to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressees. The envelope or package was deposited with delivery fees thereon fully prepaid.

☐ **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) via electronic mail, and no error was reported. Said email was directed as indicated on the service list.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ **BY CM/ECF:** I electronically transmitted a true copy of said document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the aforementioned CM/ECF registrants.

I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 13, 2018, at Los Angeles, California.

Diana Kang

PROOF OF SERVICE

**SERVICE LIST**

| | |
|---|---|
| Todd D. Carpenter, Esq.<br>Brittany C. Casola, Esq.<br>CARLSON LYNCH SWEET KILPELA<br>& CARPENTER, LLP<br>1350 Columbia Street, Ste. 603<br>San Diego, CA 92101 | T: (619) 762-1900<br>F: (619) 756-6991<br>tcarpenter@carlsonlynch.com<br>bcasola@carlsonlynch.com<br><br>*Attorneys for Plaintiff, Jacob Figueroa* |
| Edwin J. Kilpela, Esq.<br>1133 Penn Avenue, 5th Floor<br>Pittsburgh, PA 15222 | T: (412) 322-9243<br>F: (412) 231-0246<br>ekilpela@carlsonlynch.com<br><br>*Attorneys for Plaintiff, Jacob Figueroa* |
| Jeffrey D. Kaliel, Esq.<br>Sophia Gold, Esq.<br>KALIEL PLLC<br>1875 Connecticut Avenue NW, 10th Floor<br>Washington, DC 20009 | T: (202) 350-4783<br>jkaliel@kalielpllc.com<br>sgold@kalielpllc.com<br><br>*Attorneys for Plaintiff, Jacob Figueroa* |
| Richard D. McCune, Esq.<br>Jae (Eddie) K. Kim, Esq.<br>MCCUNE WRIGHT LLP<br>2068 Orange Tree Lane, Suite 216<br>Redlands, CA 92374 | *Attorneys for Plaintiff, Jacob Figueroa* |
| Taras P. Kick, Esq.<br>THE KICK LAW FIRM APC<br>201 Wilshire Boulevard, Suite 350<br>Santa Monica, CA 90401 | *Attorneys for Plaintiff, Jacob Figueroa* |

DOLL AMIR & ELEY LLP

PROOF OF SERVICE