# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB FIGUEROA and MARY JACKSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE, N.A., Defendant. | Case No.: 18cv692 JM(BGS)<br><br>**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Presently before the court is a Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56 filed by Defendant Capital One, N.A. ("Capital One"). (Doc. No. 38.) The motion has been fully briefed and the court finds it suitable for submission on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, the motion is denied.

## I. BACKGROUND

In October 2014, Plaintiffs Figueroa and Jackson opened a Premier Rewards checking account at the Saddle Brook branch of Capital One in New Jersey. (Doc. No. 38-2 at 7; 38-2 at 35; 38-2 at 61.) After opening the account, Plaintiffs used their Capital One Automatic Teller Machine ("ATM") card at out-of-network ("OON") ATM's in California and New York. For each cash withdrawal, Plaintiffs were charged three separate fees. (Doc. No. 6, at ¶¶ 24, 42, 44, 46.) In 2015, Plaintiffs also performed a balance inquiry on an OON ATM and incurred a fee. (*Id.* at ¶ 48.)

1

On April 6, 2018, Plaintiffs initiated this action by filing suit. (Doc. No. 1.) On May 30, 2018, an amended complaint ("FAC") was filed that alleges eight causes of action, namely: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) conversion; (4) unjust enrichment; (5) violation of the unfair prong of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq*; (6) violation of the fraudulent prong of the UCL; (7) violation of the California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1770, *et seq*; and (8) violation of the New York Consumer Protection Act, N.Y. GEN. BUS. LAW §§ 349-350. (Doc. No. 6, "FAC".)

The dispute centers around the fees Capital One charges its customers for using OON ATMs to make balance inquiries and the assessment of two OON fees when an account holder conducts a balance inquiry that precedes a cash withdrawal at OON ATMs. (*Id.* at ¶ 1.) Plaintiffs allege the fees were wrongfully charged and were in violation of Capital One's standardized account agreement, Fee Schedule and Electronic Fund Transfers Agreement and Disclosure ("EFTAAD"). (*Id.* at ¶¶ 24, 28-31, 33, 50, 67-71.). Defendant counters that the terms and conditions set forth in the contract documents specifically provide for the charging of a fee for each balance inquiry, cash withdrawal, or funds transfer undertaken at a non-Capital One branded ATM.

On May 31, 2019, Capital One moved for summary judgment on the breach of contract claim, asserting Plaintiffs have failed to produce evidence sufficient to create a triable issue of fact as to that claim. (Doc. No. 38.) Plaintiffs filed an opposition (Doc. No. 46) and Defendant timely replied (Doc. No. 50).

After conducting the limited discovery ordered by the court[1], the parties agree that Plaintiffs were provided with a welcome kit when they opened their account with Capital

---

[1] On November 3, 2018, the court denied Defendant's motion to dismiss the breach of contract claim and deferred ruling on the remainder of Capital One's motion until the parties had conducted limited discovery to ascertain which contract documents were at issue. (Doc. No. 17 at 7.) The court noted that the parties were in agreement that the Rules Governing Deposit Accounts ("Rule"), the EFTAAD and a Fee Schedule govern the

2
18cv692 JM(BGS)

One that contained, at a minimum, the following three documents: the Rules Governing Deposit Accounts ("Rules") (Doc. No. 38-3 at 19-23), the EFTAAD (*id.* at 18-23) and the Schedule of Fees and Charges (*id.* at 26). The Signature Card signed by the Plaintiffs on the day they opened the account also states that Ms. Jackson and Mr. Figueroa:

> ACKNOWLEDGE RECEIPT OF A COPY OF THE BANK'S RULES GOVERNING DEPOSIT ACCOUNTS," DEPOSIT AVAILABILITY POLICY, ELECTRONIC FUND TRANSFERS AGREEMENT AND DISCLOSURE FOR PERSONAL AND COMMERCIAL ACCOUNTS AND ALL DISCLOSURES ASSOCIATED WITH THE TRUTH IN SAVINGS ACT AND REGULATION DD, AND AGREE TO THE TERMS AND CONDITIONS OF THIS ACCOUNT AS DESCRIBED IN SAID DISCLOSURES, INCLUDING ANY AND ALL AMENDMENTS THERETO.

Doc. No. 38-3 at 31.

The Rules specifically enumerate that it:

> as may be amended from time, constitute[s] the deposit contract which governs all deposit accounts with Capital One Bank. Specifically incorporated by reference into these Rules, as applicable, are the following, also as may be amended from time to time: New Account Information Card, Account Disclosure, deposit receipt, Certificate of Deposit Receipt, Schedule of Fees and Charges, Electronic Fund Transfers Agreement and Disclosure, Privacy Policy, Capital One Bank Online Banking Terms and Conditions Agreement, Online Bill Payment Authorization and Agreement, and any other agreement pertaining to treasury management services or other services for which you have contracted in connection with your deposit account.

Doc. No. 38-1 at 7.

Additionally, the "Amendments and Fee Changes" provision of the Rules states:

> We reserve the right to change our fees, these Rules and any or all of the agreements, disclosures, and other documents incorporated by reference at any time…. You agree that continued use of your account(s) will constitute

---

parties' relationship, but the parties had submitted different versions of the governing Fee Schedule. (Doc. No. 17 at 6.)

> your agreement to any and all new fees, Rules, agreements, disclosures and other documents incorporated by reference.

Doc. No. 38-3 at 7.

The pertinent "Charges for ATM/Debit Card Transactions" provision of the EFTAAD, effective December 16, 2013, provides:

> When you use your ATM/Debit Card at a non-Capital One Bank branded ATM, the ATM owner/operator may charge you a fee for your use of their ATM, and you may be charged a fee for a balance inquiry even if you do not complete a transaction. The fee charged should be disclosed to you on the ATM and you should be given an opportunity to cancel the transaction before the fee is imposed. You may also be charged a fee by us, as disclosed in our then current Schedule of Fees and Charges, for each cash withdrawal, funds transfer or balance inquiry that you make using a non-Capital One Bank branded ATM. You will not be charged this fee at most ATMs owned and operated by Capital One Bank, except at certain gaming establishments and other non-branch locations, where we may charge a fee for each cash withdrawal. The amount of fees charged at such ATMs at non-branch locations varies. Any fee charged will be displayed on the ATM screen and you will be given an opportunity to cancel the transaction before the fee is imposed. Please refer to our then current Schedule of Fees and Charges for the amount of this fee.

*Id.* at 23.

The Schedule of Fees and Charges for the Premier Rewards Checking Account ("Fee Schedule") that was in effect beginning April 25, 2014, allows for the following ATM Fees:

| | |
|---|---|
| Foreign ATM Fee (initiated at an ATM other than a Capital One Bank ATM) | $2.00 |
| Transactions performed at certain non-branch Capital One Bank ATM locations* | $4.99 |
| Withdrawal from an ATM outside the U.S., Puerto Rico, and U.S. Virgin Islands | 3.00% |

4

> *At certain ATMs owned and operated by Capital One Bank in gaming establishments and at certain other non-branch locations having no Capital One Bank signage, you may be charged a fee up to $4.99 for each cash withdrawal. The amount of the fee will be displayed on the screen and you will be given an opportunity to cancel the transaction before the fee is posted.
> …
> Additional miscellaneous fees may apply. Please refer to a current Schedule of Miscellaneous Fees and Charges available upon request at any of our banking offices.

*Id.* at 26.

Plaintiffs contend that the "welcome kit" they received included three separate fee schedules along with the EFTAAD. Specifically, they allege that when they opened their Premier Rewards checking account they received: (1) an Explanation of Various Key Services and Charges (Doc. No. 46 at 8; Doc. No. 46-3 at 10, 20, 23-26); a Fees Schedule (Doc. No. 38-2 at 45, 75; Doc. No. 38-3 at 25-26) and; (3) a Schedule of Miscellaneous Fees and Charges (Doc. No. 46-3 at 39).

The Explanation of Various Key Services and Charges in effect when Plaintiffs opened their account contains the following table detailing ATM charges:

| Capital One Bank ATMs: | Free | When you use a Capital One Bank branded ATM to complete any transaction |
|---|---|---|
| Domestic Non-Capital One Bank ATMs: | $2 | For transactions made at non-Capital One Bank ATMs in the U.S. (plus any fees the ATM owner charges). |
| International ATMs: | $2 per transaction plus 3% of the total transaction amount | For transactions made at ATMs outside of the U.S., Puerto Rico, and the U.S. Virgin Islands. This international ATM charge is in addition to fees that may be charged by the ATM operator. |

(Doc No. 46.3 at 23.) The following language is included at the bottom of each page of the document: "For detailed account information, a list of other charges that may apply to

your account or the Funds Availability Policy, please review the Premier Rewards Checking account disclosure and Rules Governing Deposit Account Agreement." (*Id.*)

The applicable Schedule of Miscellaneous Fees and Charges sets forth the following:

| ATM Fees | |
|---|---|
| Foreign ATM Fee (initiated at an ATM other than a Capital One Bank ATM) | $2.00 |
| Transactions performed at certain non-branch Capital One Bank ATM locations* | $4.99 |
| Withdrawal from an ATM outside the U.S., Puerto Rico, and U.S. Virgin Islands | 3.00% |

> *At certain ATMs owned and operated by Capital One Bank in gaming establishments and at certain other non-branch locations having no Capital One signage, you may be charged a fee of up to $4.99 for each cash withdrawal. The amount of the fee will be displayed on the screen and you will be given an opportunity to cancel the transaction before the fee is imposed.
> These fees may be waived with certain account types. Please refer to the Schedule of Fees and Charges associated with your product disclosure for details.

(Doc. No. 46-3 at 39.)

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The moving party has the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. If a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos, Inc.,* 210 F.3d 1099, 1103 (9th Cir. 2000); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.3d 563, 574 (9th Cir. 1990); *Cline v. Indus. Maint. Eng'g & Contracting Co.,* 200 F.3d 1223, 1229 (9th Cir. 1991). Rule 56(e) requires "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party cannot "rest upon allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).

The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-248. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The inquiry is whether "the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-side that one party must prevail as a mater of law." *Id.* at 251-252. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-159 (1970).

### III. DISCUSSION

Defendant has moved for summary judgment on the ground that Plaintiffs cannot prevail on their first claim for relief for breach of contract. Defendant contends that the terms and conditions set forth in the contract documents specifically provide for the charging of a fee for each balance inquiry, cash withdrawal, or funds transfer undertaken

at a non-Capital One branded ATM.[2]  Additionally, Defendant asserts that Plaintiffs have failed to establish that the Explanation of Various Key Services and Charges (the "Various Key Services document") is one of the contract documents that formed the parties' contractual relationship.  Finally, Capital One posits that the language of the contract documents permit the fees charged, and therefore, Plaintiff cannot establish a triable issue of fact that it breached the terms of the contract.

**1.  Incorporation of Writings by Reference into the Contract**

The court will first turn to the arguments related to what writings constitute the contract at issue before addressing any arguments relating to the substance of Plaintiffs' breach of contract claim.

"Under New Jersey law, two or more writings may constitute a single contract even though they do not refer to each other.  Whether two writings are to be construed as a single contract, however, depends on the intent of the parties." *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 983 A.2d 604, 617 (N.J. Super. Ct. App. Div. 2009) (quoting *Van Orman v. Am. Ins. Co.,* 680 F.2d 301, 306 (3d Cir. 1982)).[3]  For a separate document to be enforceable and properly incorporated by reference, "the document to be incorporated must be described in such terms that its identity may be ascertained beyond doubt and the party to be bound by the terms must have had 'knowledge of and assented to the incorporated terms.'" *Id.* (quoting 4 Williston on Contracts § 30:25 (Lord ed. 1999)).

---

[2] Relatedly, Capital One argues that the Fee Schedule it has identified is one of the contract documents at issue, a fact conceded by Plaintiffs in their opposition papers.

[3] In the November 13, 2018 order, the court determined that the applicable Rules provision provides: "Applicable federal law will decide any questions under these Rules, or if no federal law exists, applicable state law (the state law where your account was established)." (Doc. No. 17 at 4.)  At the time the account was opened, Plaintiffs resided in New Jersey.  Therefore, finding no apparent conflict between California or New Jersey state law with respect to the parties' common law claims, the court concluded that New Jersey state law applies to these claims.  (*Id.* at 5.)

Here, the Rules' preamble expressly incorporates by reference the New Account Information Card, Account Disclosure, deposit receipt, Certificate of Deposit Receipt, Schedule of Fees and Charges, the EFTAAD, Privacy Policy, Capital One Bank Online Banking Terms and Conditions Agreement, and the Online Bill Payment Authorization and Agreement as the documents constituting the deposit contract. (*See* Doc. No. 38-1 at 7.) In their opposition papers, Plaintiffs do not dispute that the Schedule of Fees and Charges Premier Rewards Checking (the "Fee Schedule") proffered by Defendant (Doc. No. 38-3 at 26) is expressly incorporated by reference in the contract documents (Doc. No. 46 at 10). Accordingly, the court concludes that the Fee Schedule is one of the contract documents.

The court also agrees with Plaintiffs that the Schedule of Miscellaneous Fees and Charges ("Schedule of Miscellaneous Fees") (Doc. No. 46-3 at 39) forms part of the contract documents. Defendant's counter-arguments to the contrary are not persuasive, and the court finds sufficient evidence in the record to support Plaintiffs' contention. Mr. Stainback, Capital One's designated 30(b)(6) witness, testified at his deposition that he was confident that Plaintiffs would have received the Schedule of Miscellaneous Fees along with the product specific schedule of fees when they opened their account. (Doc. No. 38-2 at 13-14.) Moreover, the applicable Schedule of Fees expressly contains the admonition: "Additional miscellaneous fees may apply. Please refer to current Schedule of Miscellaneous Fees and Charges available upon request at any of our banking offices." (Doc. No. 38-3 at 26.) And notably, the document titled Compliance – Regulation DD Procedure states:

> As a best practice, the Schedule of Miscellaneous Fees and Charges should be printed from TouchPoint > Forms > Fee Disclosures > Miscellaneous Fees and always given to customers and shoppers along with the above disclosures. Although a limited Schedule of Fees and Charges prints with the Reg DD disclosure, this document includes additional fees and charges that are not contained in the Reg DD version.

(Doc. No. 48-1 at 5.) Accordingly, the court concludes that the Schedule of Miscellaneous Fees is one of the contract documents.

The parties also disagree as to whether the Explanation of Various Key Services and Charges ("Various Key Services") is a document that should be incorporated into the contract documents. Defendant argues that neither the Rules, nor "other controlling documents" make any mention of the Various Key Services which is illustrative of the fact that Capital One never intended the document to control the terms of the parties' agreement. (Doc. No. 38-1 at 19.) Further, Defendant maintains that the title of the document and the plain language contained within it: "For detailed account information, a list of other charges that may apply to your account, or the Funds Availability Policy, please review the Essential Checking account disclosure and Rules Governing Deposit Account agreement" demonstrate that "by its very nature, this document is neither controlling, nor exhaustive of all fees that may apply to Plaintiffs' Account, and cannot be used to contradict the plain, clear terms of the Governing Agreements." (Doc. No. 38-1 at 19-20.)

Plaintiffs counter that the "welcome kit" they received included three separate fee schedules along with the EFTAAD. (Doc. No. 46 at 7-11.) Specifically, they assert that when they opened their Premier Rewards checking account they received: the Explanation of Various Key Services and Charges ("Various Key Services"), (Doc. No. 46 at 8; Doc. No. 46-3, Jackson Decl., at 10; Doc. No. 46-3, Figueroa Decl., at 20; Doc. No. 46-3 at 23-26); along with the Fees Schedule and Schedule of Miscellaneous Fees (Doc. No. 38-2, Figueroa Decl., at 45; Doc. No. 38-2, Jackson Decl., at 75; Doc No. 38-3 at 25-26; Doc. No. 46-3 at 39). Plaintiffs posit that because the Various Key Services document was provided to them during the account opening process, and because it cites to the other three documents contained within the welcome packet and the Rules Governing Deposit Accounts, it therefore also forms part of the contract documents. (Doc. No. 46, 11-15.) Relatedly, they contend that the Rules allows for the Various Key Services to be incorporated by reference including a "catch all" provision which states "[s]pecifically incorporated by reference in these Rules …., and any agreement pertaining to treasury

management services or other services for which you have contracted in connection with your deposit account." (*Id.* at 12-13.)

Regardless of whether or not the Various Key Services document was included in the welcome kit, ordinary principles of New Jersey contract law dictate that it cannot be considered one of the contract documents. This is because a contract or agreement is the product of mutual assent which "requires that the parties have an understanding of the terms to which they have agreed." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306 (N.J. Sup. Ct. 2014). If the parties do not understand a document to be a part of the contract, there can be no mutual assent with respect to the terms contained within it. *Bacon v. Avis Budget Grp., Inc.* 357 F. Supp. 3d 401, 417 (D.N.J. 2018).

Defendant has provided evidence that demonstrates that it never assented to the Various Key Services document forming part of the contract. As Mr. Stainback testified at his deposition, TouchPoint, Capital One's system of record, orchestrates the printing of the required disclosures a customer is given when an account is opened. (Doc. No. 38-2, Stainback Decl., at 11.) Mr. Stainback declared that, typically, no other preprinted materials are handed to new account holders. (*Id.* at 12.) When asked if Capital One maintained data that indicates precisely which documents were printed from TouchPoint at the opening of a new account, Mr. Stainback, responded "We do." (*Id.*) Mr. Stainback went on to elucidate that after reviewing the data he was able to confirm that when Plaintiffs opened their account the "the rules governing, EFT, wires, and privacy notices was printed, along with the schedule of fees for the particular product." (*Id.* at 13.)

Mr. Stainback's testimony regarding the documents contained in the Welcome Packet given to Plaintiffs on October 21, 2012 is further supported by the internal bank documents, Compliance – Regulation DD Procedure ("Compliance") and the internal audit trail, reflecting the time the documents were printed and distributed. (Doc. No. 48-1; Doc. No. 48-2 at 3.) Because Capital One must comply with Regulation DD procedures, TouchPoint is programmed to print certain account disclosures when a customer opens an account. (Doc. No. 48-1.) The documents printed for customer accounts are: the Rules,

EFTAAD, Privacy Notice, Addendums/Buck Slips (as instructed), Product Specific Disclosures and Schedule of Fees for Select Products. (Doc. No. 48-1 at 4.) The consumer disclosures are then folded in half, top to bottom and placed in the Welcome Kit. (*Id.*) The audit trail from the database[4] demonstrate that at 11:48 a.m. on October 21, 2014, Elbin Gutierrez requested Premier Rewards Checking Reg DD Form, Rules Governing Deposit Accounts/ EFT Funds Agreement, Privacy Notice and Miscellaneous other forms be printed. (Doc. No. 48-2 at 3.) The audit trail does not indicate the Various Key Services document was provided to Plaintiffs.

Additionally, the New Account Information Card ("Signature Card") signed by both Plaintiffs, acknowledges receipt of a handful of documents: the Rules, EFTAAD, and "ALL DISCLOSURES ASSOCIATED WITH THE TRUTH IN SAVINGS ACT AND REGULATION DD." (Doc. No. 38-3 at 31.) As set forth above, the Regulation DD compliance document's list of required disclosures does not include a Various Key Services document. In fact, the document contains a section devoted to Various Key Services wherein it is noted that "[b]ranches are encouraged to provide these documents to customers and shoppers, but note that they DO NOT replace the required disclosures that must be provided at account opening and upon request for written fee information." (Doc. No. 48-1 at 5.) This Signature Card also provides that the parties "AGREE TO THE TERMS AND CONDITIONS OF THIS ACCOUNT AS DESCRIBED IN SAID DISCLOSURES, INCLUDING ANY AND ALL AMENDMENTS THERETO." (Doc. No. 38-3 at 31.) Even though they stated at their depositions that they did not read the documents, this does not excuse them. "[T]o hold otherwise would contravene the well settled principal that 'a failure to read a contract will not excuse a party who signs it, nor

---

[4] As explained by Mr. Stainback, Capital One retains the data in two separate databases, one called BDW and the other named Snowflake. The data related to Plaintiffs' files was pulled from the BDW database as indicated by the reference "BDW_PUBLN_ID." (Doc. No. 38-2 at 12; Doc. No. 48-2 at 3.)

will the party's ignorance of its obligations.'" *ADP, LLC v. Lynch*, Civ. Nos. 2:16-01053 (WJM), 2:16-01111 (WJM), 2016 WL 3574328, * 5 (D.N.J. June 30, 2016) (quoting *Paper Express, Ltd v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)).

Moreover, the catchall provision of "any agreement pertaining to treasury management services or other services for which you have contracted in connection with your deposit account" contained in the preamble to the Rules which Plaintiffs rely on to support their argument for inclusion of the Various Key Services document is not persuasive. This is simply a general reference that in no way identifies the Various Key Services document "in such terms that its identity may be ascertained beyond doubt." *Quinn,* 410 N.J. Super at 533.

In sum, the Various Key Services document is noticeably absent from any of the lists of required documents provided to customers upon the opening of a new account at Capital One. As a consequence, the court concludes that the Various Key Services document is not one of the contract documents.

### 2. Terms of the contract

The court now turns to the question of whether the relevant portions of the EFTAAD, the Fee Schedule and the Schedule of Miscellaneous Fees adequately set forth when and what fees will be charged by Capital One for balance inquiries at OON ATMs. Defendant contends that the terms and conditions set forth in the contract documents specifically provide for the charging of a fee for each balance inquiry, cash withdrawal, or funds transfer undertaken at a non-Capital One branded ATM. Plaintiffs dispute Defendant's position regarding the EFTAAD, instead theorizing that the EFTAAD does not set account fees or authorize the OON Fees. At bottom, Plaintiffs are arguing that the contract documents bar the assessment of two OON Fees when a balance inquiry is performed with

///

///

///

a cash withdrawal.[5] Plaintiffs claim the contract is ambiguous, and such ambiguity should not be resolved in the contract drafter's favor.

"Contracts should be read 'as a whole in a fair and common sense manner.'" *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958 (N.J. Sup. Ct. 2014) (quoting *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165 (2009)). Generally, courts enforce contracts by looking at the intent of the parties, the express terms of the contract, the surrounding circumstances and the underlying purpose of the contract. *Caruso v. Ravenswood Developers, Inc.*, 767 A.2d 979, 983 (N.J. Super. Ct. App. Div. 2001). "If the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect." *Manahawkin,* 85 A.3d at 958-59 (internal quotation marks and citations omitted). But, if the language of a contract is ambiguous and therefore properly subject to interpretation, a court begins by examining the plain language and punctation used in the contract and considers whether it is susceptible to different meanings. *Meco, Inc. v. Twp. of Freehold*, 2011 WL 1376687, *5 (Apr. 13, 2011) (citing 11 *Williston on Contracts,* § 30:5 (Lord ed. 1999). An ambiguity in a contract exists if "the terms of the contract are susceptible to at least two reasonable alternative interpretations …." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.,* 948 A.2d 1285, 1289 (N.J. Sup. Ct. 2008). *See also Eriksson v. Nunnink*, 233 Cal. App. 4th 708, 722 (2015) ("An ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of a writing.")

The pertinent provision of the EFTAAD provides:

> When you use your ATM/Debit Card at a non-Capital One Bank branded ATM, the ATM owner/operator may charge you a fee for your use of their ATM, and you may be charged a fee for a balance inquiry even if you do not complete a transaction. The fee charged should be disclosed to you on the ATM and you should be given an opportunity to cancel the transaction before

---

[5] Having found the Various Key Services document to not be one of the contract documents, the court declines to address any arguments Plaintiffs make in relation to this document or terms found within it.

14

18cv692 JM(BGS)

the fee is imposed. You may also be charged a fee by us, as disclosed in our then current Schedule of Fees and Charges, for each cash withdrawal, funds transfer or balance inquiry that you make using a non-Capital One Bank branded ATM. You will not be charged this fee at most ATMs owned and operated by Capital One Bank, except at certain gaming establishments and other non-branch locations, where we may charge a fee for each cash withdrawal. The amount of fees charged at such ATMs at non-branch locations varies. Any fee charged will be displayed on the ATM screen and you will be given an opportunity to cancel the transaction before the fee is imposed. Please refer to our then current Schedule of Fees and Charges for the amount of this fee.

Doc. No. 38-3 at 23.

Additionally, both the Fee Schedule for Premier Rewards Checking and the Schedule of Miscellaneous Fees set forth the following:

| ATM Fees<br>Foreign ATM Fee (initiated at an ATM other than a Capital One Bank ATM) | $2.00 |

Doc. No. 38-3 at 26; Doc. No. 46.3 at 39.

Defendant relies on the following sentence: *[y]ou may also be charged a fee by us, as disclosed in our then current Schedule of Fees and Charges, for each cash withdrawal, funds transfer or balance inquiry that you make using a non-Capital One Bank branded ATM"* from the EFTAAD to justify the fees charged, claiming the language explicitly identifies each separate event that gives rise to a fee and "indisputably states that a fee may be applied *for a balance inquiry*." Doc. No. 38-1 at 22. Defendant also claims that the use of the word "each" discloses to customers that for each cash withdrawal, funds transfer, or balance inquiry, the customer will "unequivocally" be charged a fee. Relatedly, Defendant asserts that the Fee Schedule supports the language of the EFTAAD and does not limit the $2.00 charge to transactions.

First, Plaintiffs contend that the provision of the EFTAAD promises that Capital One will assess OON fees only for the same services in the same number as the ATM owner

15

does. (Doc. No. 46 at 16-17.) But Plaintiffs are overreaching, and if the court were to read this statement as Plaintiffs suggest, the court would be ignoring the language of the entire provision and altering the terms of the contract for the benefit of one party to the detriment of the other. *See, e.g., Newark Publs' Ass'n v. Newark Typographical Union, No. 103*, 22 N.J. 419, 426 (1956) ("Words and phrases are not to be read in isolation but related to the context and contractual scheme as a whole."); *James v. Federal Ins. Co.,* 5 N.J. 21, 23 (1950) (courts may not remake a better contract for the parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other).

Plaintiffs also argue that the sentence regarding the onscreen warning and right to cancel being provided to account holders before fee-causing events applies equally to the ATM owner/operator and to Capital One, to be plausible. (Doc. No. 46 at 19-20.) In its reply brief, Capital One asserts that the use of the word "such" in one of the sentences immediately preceding the warning and right to cancel "makes clear that fees will appear on screens at" certain gaming establishments and non-branch Capital One ATM's. (Doc. No. 50 at 9.) When reading the entire provision of the EFTAAD, the court finds Plaintiffs' argument to be fairly debatable and the scope of the cancellation language subject to reasonable interpretation.

The difficulty with Defendant's position is that two remarkedly similar sentences regarding a customer's opportunity to cancel transactions appear twice in the pertinent paragraph of the EFTAAD. It is not beyond reasonable comprehension that Plaintiffs construed the warning language to be applicable to any fee causing event. As currently written, the paragraph does not make it clear when the parties intended the warnings and right to cancel to apply and buttressed by arbitrarily citing to sentences within the paragraph Defendant has not helped the court with its analysis. By combining in a single paragraph two sentences regarding onscreen warnings and the right to cancel, with fees charged by OON entities, along with charges Capital One may assess against its own customers, Capital One has infused these areas of fees, warnings, and transaction cancellation options with uncertainty and ambiguity which must be construed against the

drafter. *Kotkin v. Aronson,* 815 A.2d 962, 963 (N.J. Sup. Ct. 2003) (citing *In re Estate of Miller,* 447 A.2d 549 (1982)) (when dealing with ambiguous provisions they must be construed against the drafter).

Furthermore, the court finds Defendant's assertion that the Fee Schedule supports the imposition of a $2.00 fee for each cash withdrawal, funds transfer, or balance inquiry to be an oversimplification of the issue. While it is true that "there is no language indicating that that fee will be waived for a balance inquiry if it is paired with a cash withdrawal," (Doc. No. 38-1 at 23), the purposes of the Agreement and the Regulation DD disclosures is to provide the account holders with adequate notice of fees. The minimum information provided here, namely: "Foreign ATM Fee (initiated at an ATM other than a Capital One Bank ATM)," uses the singular term of "fee" and provides no further explanation as to what "initiated" means.

Plaintiffs argue that, although the contract documents do not define what constitutes "initiated," Merriam-Webster defines "initiate" as "to cause or facilitate the beginning of: set going." (Doc. No. 46 at 22-24.) Thus, it is Plaintiffs' position that a balance inquiry followed by a withdrawal performed sequentially on a single trip to an OON Capital One ATM authorizes the imposition of only a single OON fee. Defendant's response is simply that the EFTAAD expressly authorizes the imposition of fees for each of the three activities. (Doc. No. 50 at 10.) At this juncture, the court cannot conclude that Plaintiffs' argument is wholly without merit, and "in the context of the [contract] document[s] [themselves] and the transaction to which [they] pertain[] the terminology employed, despite a facile simplicity, actually is not free from doubt as to its meaning." *Schor v. FMS Financial Corp.,* 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002).

And the other contract documents contain no further information expanding the definition of the term that would provide additional guidance to the court.[6] Accordingly,

---

[6] In making this determination, the court declines to consider the Various Key Services document as parol evidence because it will not help the court understand "the structure of

the court finds an ambiguity in the term "initiate" that is "susceptible to at least two reasonable alternative interpretations." *Schor,* 814 A.2d at 1112.

In sum, the court has read the contract documents as a whole in a fair and common sense manner and finds the plain and ordinary meaning of the term "initiate" used in the Fee Schedule, read along with the "may also be charged....." phrase in the EFTAAD does not "indisputably" state that a fee will be applied for each and every cash withdrawal and balance inquiry as Defendant would have the court believe. Having concluded that an ambiguity exists in the contract documents regarding (1) the meaning of the language "Foreign ATM Fee (initiated at an ATM other....) and (2) whether the on-screen ATM warning and opportunity to cancel applied to any fee causing event, the court **DENIES** the motion for partial summary judgment. *See, e.g., Great Atl. & Pac. Tea Co., Inc. v. Cheechio*, 335 N.J. Super. 495, 502 (2000) (Although the interpretation of a written contract is usually a legal question for the trial judge, "where there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury.") (citations omitted).

### 3. Breach of Contract Claim

To prevail on their breach of contract claim Plaintiffs must demonstrate that (1) the parties entered into a contract containing certain terms, (2) plaintiffs did what the contract required them to do, (3) defendants did not do what the contract required them to do, "defined as a breach of contract", and (4) defendant's breach, or failure, caused a loss to the plaintiffs. *Globe Motor Co. v. Igdalev,* 139 A.3d 57, 64 (N.J. Sup. Ct. 2016).

Because the court has determined there are ambiguities regarding the contract terms, the court cannot conclude as Defendant suggests that "Plaintiffs cannot carry their burden to prove any breach of the Governing Agreements." (Doc. No. 38-1 at 23.) Accordingly,

---

the contract, the bargaining history and the conduct of the parties that reflects their understanding of the contract's meaning." *Am. Cyanamid Co. v. Fermenta Animal Health Co.,* 54 F.3d 177, 181 (3d. Cir. 1995).

Defendant's request that the court grant its motion to dismiss the remaining claims in Plaintiffs' FAC with prejudice is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendant Capital One, N.A.'s Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract Claim is **DENIED**. (Doc. No. 38.)

Further, the court **DENIES** Defendant's request to dismiss the remaining claims in Plaintiffs' FAC. In so doing, the court makes no finding regarding the adequacy of Plaintiffs' breach of good faith and fair dealing, conversion, unjust enrichment, violation of California's UCL, violation of the California's CLRA, and violation of the New York Consumer Protection Act claims. The court previously deferred ruling on these claims pending determination of the terms and documents forming the contract at issue and neither party addressed these claims in the summary judgment papers. Since this order may negate some of the arguments made in the original motion to dismiss, the court has concluded that it would be far more practicable for Defendant to refile its motion if it still wishes to move for dismissal. Accordingly, Defendant has up to an including **October 21, 2019**, to move to dismiss these claims *and/or* file an amended answer.

If Defendant chooses to file a motion to dismiss, Plaintiffs shall have up to an including **November 5, 2019** to file their response in opposition. Defendant shall have up to and including **November 11, 2019** to file its reply. The matter will then be taken under submission and the court will issue an order in due course.

IT IS SO ORDERED.

Dated: October 7, 2019

Hon. Jeffrey T. Miller
United States District Judge