1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB FIGUEROA and MARY JACKSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE, N.A.,<br><br>Defendant. | Case No.:  18cv692 JM(BGS)<br><br>**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND SERVICE AWARDS** |

Presently before the court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Reimbursement of Costs and Service Awards.  (Doc. Nos. 81, 90.)  A hearing on the motions was held on January 11, 2021.  For the reasons set forth on the record and as explained in more detail below, the motions are granted.

**I.     Background**

This dispute centers around the fees Defendant Capital One, N.A., ("Capital One"), charges its customers for using Out-of-Network ("OON") automatic teller machines ("ATMs").  When a Capital One accountholder withdraws funds from an OON ATM they are typically assessed a $2 or $3 fee by the ATM owner along with a $2 charge by Capital One.  Capital One also charges its accountholders a third fee if a customer checks their balance while in the process of making a cash withdrawal at OON ATMs.  (Doc. No. 6,

1

"FAC" at ¶ 6.)  Plaintiffs allege that these fees for OON balance inquiries, or "third" fees, were wrongfully charged and were in violation of Capital One's standardized account agreement, Fee Schedule and Electronic Funds Transfers Agreement and Disclosure. (FAC at ¶¶ 24, 31, 33, 50, 67-71.)  Typically, Capital One charged its customers $2.00[1] for each OON balance inquiry about which they complain.

On April 6, 2018, Plaintiffs initiated this action by filing suit.  (Doc. No. 1.)   On May 30, 2019, an amended complaint was filed that alleges eight causes of action, namely: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) conversion; (4) unjust enrichment; (5) violation of the unfair prong of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq*; (6) violation of the fraudulent prong of the UCL; (7) violation of the California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1770, *et seq*; and (8) violation of the New York Consumer Protection Act, N.Y. GEN. BUS. LAW §§ 349-350.  (*See generally* FAC.)

On October 7, 2019, the court denied Defendant's motion for partial summary judgment on Plaintiffs' breach of contract claim.  (Doc. No. 56.)

On March 4, 2020, the parties participated in a private mediation before Bruce Freidman, Esq., which, after a full day's mediation, led to the proposed settlement currently before the court.

The Settlement Agreement ("Settlement") provides for settlement and full release of all claims relating to the subject matter of this action and requires Capital One pay a gross settlement amount of $13,000,000.  Subject to court approval, the settlement amount is to be allocated as follows: $10,000 as an incentive award for Figueroa; $10,000 as an incentive award for Jackson; and $3,900,000 to Plaintiffs' counsel. (*See* Doc. No. 75, "Agreement," at ¶¶ 1.6, 3.1, 3.2.)  Under the terms of the Settlement, the costs incurred by

---

[1] This third fee has now increased to $2.50.

BrownGreer, PLC, the settlement administrator, currently estimated at $997,933[2], along with Plaintiffs' counsels' costs, submitted at $15,686.18, are also to be paid. Once the court-approved deductions are removed, the net settlement amount is, therefore, estimated at $8,066,380.82.

The Settlement provides that each member who paid at least one OON Balance Inquiry Fee that was assessed during the class period shall be entitled to receive a class member payment from the Settlement Fund. "Each member's payment shall be equal to the member's pro rata share of the settlement fund based on the total number of OON Balance Inquiry Fees paid by class member." (Agreement at 7.) In exchange for their pro rata share, all class members will be deemed to release Capital One from claims relating to the subject matter of this action. (*Id.* at 7, 8.) A total of 1,683,345 Capital One customers are eligible class members. (Doc. No. 91-2, Kaliel Decl. at ¶ 33[3].) The settlement administrator projects that the average settlement class member payment will be $5.09, with the highest payment being $1,602.08. (Doc. No. 90-3 at 11[4].)

---

[2] *See* Doc. No. 90-3, at ¶ 21 n.6, Declaration of Corinne Titmus, Senior Counsel at BrownGreer, executed on December 3, 2020. Ms. Titmus noted that this estimate "could change as we near the date by which we must calculate the final Settlement Class Member Payments." (*Id.*) When the court questioned Class Counsel on BrownGreer's final bill at the hearing, Mr. Kaliel anticipated that it would be "in the $850,000 range," and he was certain it would be "south of $1 million."

[3] On December 22, 2020, Plaintiffs' counsel filed a Notice of Errata (Doc. No. 91) after discovering an inadvertent reference on page 9 of the Memorandum of Points and Authorities (Doc. No. 90-1) and on pages 6-7 of the Declaration of Jeffrey Kaliel (Doc. No. 90-2) filed in support of the Unopposed Motion for Final Approval of Class Action Settlement. Accordingly, the court will reference the corrected versions of these documents, filed as exhibits (Doc. Nos 91-1 and 91-2) to the Notice of Errata, within this order.

[4] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

The separately filed motion for attorneys' fees seeks 30 percent of the class action settlement amount, or $3,900,000.00, reimbursement of $15,686.18 in litigation costs and expenses, and for named Plaintiffs Figueroa and Jackson a class representative award of $10,000 each.  (Doc. No. 81.)

On May 8, 2020, Plaintiffs filed an unopposed motion for preliminary approval of the settlement.  (Doc. No. 74.)  After holding a telephonic hearing on the motion on June 8, 2020, the court granted the motion and preliminarily approved the settlement on June 16, 2020.  (Doc. No. 80.)  The final approval hearing took place on January 11, 2021.  Due to the current pandemic, all counsel appeared telephonically with the doors to the courtroom remaining open to the public including any objectors or other interested persons in this action.   A conference call number and access code were also posted on the Settlement website to allow class members to attend remotely.   Although a roll call of all participants was not taken, some class members may have attended as additional individuals dialed in to the call.  No class members filed objections to the settlement, and 39 members have requested exclusion from the settlement.  (*See* Doc. No. 90-3 at 9, 32-127.)

## II.     Final Approval of Settlement

## A. Certification of the Settlement Class

The Settlement here envisions certification of a class of:

> All Capital One accountholders in the United States who, within the Class Period, incurred at least one OON Balance Inquiry Fee.  Excluded from the Settlement Class is Capital One, its parents, subsidiaries, affiliates, officers and directors; all accountholders who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

(Agreement ¶ 1.22.)  The class period is defined as follows:

- For settlement Class Members whose accounts were established in Louisiana: the period from April 6, 2008 to June 30, 2020;
- For settlement Class Members whose accounts were established in Connecticut, New York, and New Jersey: the period from April 6, 2012 to June 30, 2020;

- For settlement Class Members whose accounts were established in Virginia: the period from April 3, 2013 to June 30, 2020;
- For settlement Class Members whose accounts were established in Texas: the period from April 6, 2014 to June 30, 2020; and
- For Settlement Class Members whose accounts were established in the District of Columbia, Maryland, and Delaware; the period from April 6, 2015 to June 30, 2020.

(Agreement at ¶ 1.4.)

Before approving the Settlement, the court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011). In the settlement context, the court "must pay undiluted, even heightened, attention to class certification requirements." *Id.* In addition, the court must determine whether class counsel is adequate (Fed. R. Civ. P. 23(g)), and whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (quoting *Amchem Prod., Inc., v. Windsor*, 521 U.S. 591, 614 (1997)).

### 1. Numerosity

This requirement is satisfied if the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class greater than forty members often satisfies this requirement …." *Walker v. Hewlett-Packard Co., 295 F.R.D. 472, 482 (S.D. Cal. 2013) (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008). Here, the settlement class consists of 1,683,345 Capital One accountholders, (Doc. No. 91-2 at ¶ 33), and the direct notice campaign reached 1,843,843 (95.9%) of all known class members, related to 1,584,550 (94.3%) of Accounts. Joinder of all these potential plaintiffs would be impracticable. Accordingly, this requirement has been met.

### 2. Commonality

This requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "To satisfy this commonality requirement, plaintiffs need only point to a single issue common to the class." *Vasquez v. Coast Valley Roofing, Inc.,* 670 F. Supp. 114, 1121 (E.D. Cal. 2009).  Here, the commonality requirement is satisfied because the class claims involve common questions of law and fact regarding Defendant's allegedly deceptive assessment of OON Balance Inquiry Fees which purportedly violated Capital One's standardized account agreement, fee schedule and disclosures.

### 3. Typicality

This requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted).  Here, the typicality requirement is satisfied because the claims of lead Plaintiffs and the class are based on the allegations that Capital One's practices violated the contracts it had entered into with class members.  Moreover, the Plaintiffs and the class members are alleged to have suffered the same injuries and will benefit from the relief provided by the settlement.  Therefore, for purposes of settlement, Plaintiffs have made an adequate showing of typicality.

### 4. Adequacy

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requires the court address two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *In re Mego*, 213 F.3d at 462.  A court certifying a class must consider: "(i) the work counsel has done in identifying

or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

Here, there is no obvious conflict between Figueroa's and Jackson's interests and those of the class members. Similarly, the court is unaware of any reason that would warrant changing its earlier determination that Class Counsel can adequately represent the interests of the class. Furthermore, no class member has filed an objection challenging the adequacy of the representative parties. Accordingly, the court finds this element satisfied for the purposes of certification of the settlement class.

### 5. Predominance and Superiority

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon,* 150 F.3d at 1022. "Rule 23(b)(3) permits a party to maintain a class action if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Conn. Ret. Plans & Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1173 (9th Cir. 2011), *aff'd* 133 S. Ct. 1184 (2013) (citing Fed. R. Civ. P. 23(b)(3)). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon,* 150 F.3d at 1022-23 (quoting *Amchem Prods, Inc.,* 521 U.S. at 623). An examination into whether there are "legal or factual questions that qualify each class member's case as a genuine controversy" is required. *Id.* The superiority inquiry "requires determination of whether the objectives of a particular class action procedure will be achieved in a particular case." *Id.* at 123.

Here, all of the class members entered into the same or substantially similar agreements with Defendant and each was charged an OON Balance Inquiry Fee that

allegedly violated the agreements in question.  Thus, although each class member may have paid different cumulative amounts of OON Balance Inquiry Fees over the class period, the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* 244 F.3d 1152, 1162 (9th Cir. 2001).  Moreover, Capital One's policies have been applied and continue to be applied uniformly to the settlement class.  In sum, the legal and factual questions common to each class member's claim predominate over any questions affecting individual class members. The relatively limited potential recovery for the class members as compared with the costs of litigating the claims also support the conclusion that a class action is superior to other methods for adjudicating this controversy.

In accordance with the above, the court conditionally certifies the Rule 23 Class for the purposes of settlement.

### B. Legal Standard for Final Approval of Class Settlement

When a settlement is reached prior to formal class certification, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Products. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P.  23(e).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025.  The Rule also "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate and reasonable." *Id.* at 1026.  In making this determination, the court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012).  Because a "settlement is the offspring of compromise, the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Traditionally, district courts within the Ninth Circuit balanced several factors when assessing a settlement proposal, namely:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.

Rule 23(e)(2) of the Federal Rules of Civil Procedure, which was added in 2018, generally encompasses the list set forth in *Hanlon.* Factors a court must consider include whether:

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

When reviewing a proposed settlement, the court's primary concern "is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.,* 688 F.2d 615, 624 (9th Cir. 1982). Ultimately, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C. Analysis**

    **1.  Adequacy of Notice**

      The court approved notice of this class action and proposed settlement in the June 16, 2020 Preliminary Approval Order.  The Agreement called for sending the Notice directly to class members through email ("email notice") or, where email was not possible, via U.S. Mail.  ("postcard notice").  A detailed notice containing more detail than either the email notice or postcard notice was available on the Settlement website and via U.S. mail upon request.  (Doc. No. 90-3 at ¶¶ 8.)  The settlement administrator has informed the court that the direct notice campaign reached 1,843,843 (95.9%) of all known settlement class members, related to 1,584,550 (94.3%) of Accounts.  (*Id.*  ¶ 18.)  Of those, 724,713 potential class members were sent email notices and 1,119,130 potential class members were mailed postcard notices.  (*Id.*)  Additionally, the settlement administrator established a P.O. Box dedicated to the Settlement and has received and processed 133,525 pieces of mail.  (*Id.* at 3.)  The administrator reports that, to date, the Settlement website, has been visited 39,265 times since it was established on August 12, 2020, and visitors have downloaded documents from the Settlement website a total of 29,408 times.  (*Id.* at 4.)  Additionally, the toll-free number which opened on August 25, 2020 has received 20,591 calls, totaling 55,200 minutes.  (*Id.*)

      The Notices advised the class of the terms of the Settlement, of their rights: (1) to participate and to receive their share of the Settlement automatically, without submission of a claim form; (2) to object to the Settlement and to appear at the Final Approval Hearing; (3) to request exclusion from the Settlement; (4) the manner and timing for doing any of these acts; and (5) the date and time set for the Final Approval Hearing.  Included on the Notices was adequate information regarding the different class periods.  The Notices also displayed the Settlement's website: www.ATMBalanceInquiryFeeSettlement.com and the toll-free number 1-888-716-1219.  No class members objected to the Settlement or the adequacy of the Notice.  Accordingly, the court determines that the Notice in the case was adequate and satisfied both the requirements of Rule 23 and due process.

1       Furthermore, Capital One sent CAFA Notice to the Comptroller of the Currency and

2  the appropriate government officials for all 50 states, the District of Columbia, America

3  Samoa, Guam, Northern Mariana Islands, Puerto Rico, and the Virgin Islands on May 15,

4  2020.  (Doc. No. 90-3 at 5.)  The settlement administrator attests that the tracking slips

5  indicate that 55 out of the 57 notices have been delivered and 2 were in transit.  (*Id.*)

6  Accordingly, the court determines that the appropriate CAFA notice has been given.  *See*

7  28 U.S.C. § 1715(b) (requiring settling defendants give notice of a proposed class

8  settlement to appropriate state and federal officials).

9 / 10      **2.  Strength of Plaintiffs' Case; Risk of Further Litigation; and Risk of Maintaining Class Action Status**

11       The preferable nature of settlement over the uncertainties, expense, and length of

12  litigation, means "when assessing the strength of plaintiff's case, the court does not reach

13  any ultimate conclusions regarding the contested issues of fact and the law that underlie

14  the merits of this litigation." *Four in One Co. v. S.K. Foods, L.P.,* No. 2:08-CV-3017 KJM

15  EFB, 2014 WL 4078238, at *7 (E.D. Cal. Aug. 14, 2014) (internal quotations omitted).

16  Similarly, "a proposed settlement is not to be judged against a speculative measure of what

17  might have been awarded in a judgment in favor of the class." *Nat'l Rural Telecomms.*

18  *Coop,* 221 F.R.D. at 526.

19       Here, the Settlement was reached just short of two years after this case was filed and

20  involved disputed legal claims and issues.  The inherent risk of further litigation is known

21  to all involved.   Proceeding with the case presents very real risks regarding class

22  certification, renewed summary judgment, *Daubert* and *in limine* motions, proving the

23  necessary damages at trial, and a possible unfavorable decision on the merits.  *See*

24  *Fernandez v. Victoria Secret Stores, LLC,* No. CV 06-04149 MMM (SHx), 2008 WL

25  81508566, at *6 (C.D. Cal. July 21, 2008) ("Because both parties face extended, expensive

26  future litigation, and because both faced the very real possibility that they would not

27  prevail, this factor supports approval of the settlement.")  While Plaintiffs believe in the

28  merits of their case, Defendant presents defenses to class liability and damages

determinations, and there is no guarantee Plaintiffs will prevail.  The court finds these risks weigh in favor of settlement.

### 3.  The Amount Offered in Settlement

"Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] * * * is the need to compare the terms of the compromise with the likely rewards of litigation."  *In re TD Ameritrade Accountholder Litig.*, 226 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 3980 U.S. 414, 424-25 (1968)).  "The fact that a proposed settlement may only amount to a fraction of the potential does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, the Settlement authorizes a recovery of $13,000,000.00, less court-awarded fees and expenses, and the costs of administering the Settlement. The Settlement will be distributed on a *pro rata* basis. Class Counsel maintains that this $13,000,000 figure represents approximately 33% of total damages.  (Doc. No. 91-1 at 14.)  In the order granting preliminary approval, the following footnote was included: "[t]he court anticipates that an explanation of how class counsel calculated the most likely recoverable damages will accompany Plaintiffs' motion for Final Approval of the Settlement.  (Doc. No. 80 at 10 n. 4.).  Plaintiffs now explain, that at Plaintiffs' request, Capital One undertook an extensive analysis to determine damages for the fees charged in Louisiana, Connecticut, New York, New Jersey, Virginia, Texas, Maryland, Delaware, and the District of Columbia during the relevant Class Periods.  From this analysis, the parties estimated total damages to be approximately $39 million. (Doc. No. 91-1 at 14.)

Assuming the court grants the full fees, costs and awards requested, on average class members will receive approximately $5.09 each.  (Doc. No. 90-3 at 11.)  The maximum award any class member will receive is $1,602.08.  (*Id.*)  Counsel tout these monetary benefits as significant, given that each fee charged was only $2-$2.50.  Under the terms of the Settlement, Capital One has also agreed to change its disclosures which

will purportedly result in additional savings for the Class and other customers "who will now participate in a more free and more fair marketplace for banking services." (Doc. No. 91-1 at 15.) Further, Capital One bore the burden of performing significant data analysis work, thereby greatly reducing notice and administration costs.

In light of the risks associated with continuing this litigation, the court finds the proposed payouts to be fair, reasonable and adequate and the total to be in favor of approval of the settlement. The relief is also adequate under Rule 23(e)(2) considering the effectiveness of the method of distributing the funds directly to the class members' bank accounts or via check without the requirement for a claims process, the non-revisionary nature of the Settlement, the terms of the proposed award of attorneys' fees, and the fact that any delay of trial and appeal may result in zero recovery.

### 4. Extent of Discovery and Stage of Proceedings

A court should focus on whether the "parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting *Linney,* 151 F.3d at 1239). *See also Onitverso v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution.").

Here, the parties have litigated this case for almost two years, with Plaintiffs filing an original complaint, First Amended Complaint, and a motion for partial summary judgment. Both parties have been engaged in formal and informal discovery and document exchange, Class Counsel conducted two depositions of Capital One's corporate representatives and both Plaintiffs were deposed. The parties also engaged in a full day formal mediation session with a neutral third party. Thus, the court is comfortable concluding that the parties have "sufficient information to make an informed decision about settlement." *Linney,* 151 F.3d at 1239. Accordingly, this factor weighs in favor of approval of the settlement.

///

///

### 5. Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)).  Here, Class Counsel has provided a declaration detailing their experience in prosecuting class actions.  Class Counsel declares that continued litigation would be difficult, expensive and time consuming, the settlement provides immediate benefits to the class, outweighs the gamble of continued litigation, and is the best vehicle for the class to receive the relief to which they are entitled in a prompt and efficient manner.  (Doc. No. 91-2 at ¶¶ 29, 30.)  Mr. Kaliel attests that "the $13 million Settlement Amount and the significant savings related to the practice changes are fair and reasonable in light of Capital One's defenses, and the challenges and unpredictable path of litigation Plaintiffs would have faced absent settlement."  (*Id.* at ¶ 32.)  In light of the foregoing, and according proper weight to the judgment of counsel, the court finds this factor weighs in favor of the settlement.

### 6. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop., Inc.,* 221 F.R.D. at 529 (citations omitted).  Here, 39 class members have opted out of the class[5]  and no objections to the settlement have been received.  *Id.*  (the absence of a single objection "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.")  Accordingly, the court finds this factor weighs in favor of settlement.

///

///

---

[5] Although only one opt out request has complied with the procedures set forth in the Preliminary Approval Order, the parties have agreed that all requests to opt out will be deemed valid.  (Doc. No. 91-1, at 7 n.2).

18cv692 JM(BGS)

### 7. Other Factors

In looking at the fairness of the Settlement, the court considers two additional factors: the process by which the settlement was reached and the involvement of the named plaintiffs in the process. *See Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding factors "(9) the procedure by which the settlements were arrived at, see MANUAL FOR COMPLEX LITITGATION (FOURTH) § 21.6 (2004), and (10) the role taken by the plaintiff in that process."). Here, the parties reached agreement after attending a full day mediation before a neutral third party. Thus, the court can put "a good deal of stock in the product of an arms-length, non-collusive negotiated resolution." *Rodriquez v. West Publishing Group,* 563 F.3d 948, 965 (9th Cir. 2009). *See also Todd v. STARR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal citation omitted).

Class Counsel also declares that Plaintiffs have provided assistance throughout this litigation, have expended hours in advancing this litigation and conferred with Class Counsel on numerous occasions and, although neither Plaintiff personally attended the mediations, they were available by phone, and presumably reviewed the finalized settlement before signing it. Further, there is no evidence of preferential treatment for certain class members because final approval is not contingent upon the court's determination of the class representative incentive awards. Accordingly, the court finds these factors weigh in favor of settlement.

### 8. Balancing of the Factors

"Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation." *Id.* Having considered the relevant factors, the court finds they all

weigh heavily in favor of settlement of the Rule 23 Class claim.  Consequently, the court finds the settlement fundamentally fair, adequate, and reasonable.

**III. Motion for Attorneys' Fees, Cost and Representative Payments**

    **A.  Attorneys' Fees**

In *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d. 988, 993-94, (9th Cir. 2010), the Ninth Circuit held that the "plain text of Fed. R. Civ. P. 23(h) requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed.'"  Plaintiffs timely filed their fee motion on August 25, 2020, and no class member has filed an objection to the request in the time allotted to file objections.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to the amount."  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 946.  That Defendant has agreed in the settlement not to oppose Counsel's request for $3,900,000 "does not detract from the need carefully to scrutinize the fee award."  *Staton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003).

In a diversity action under CAFA, federal courts apply state law when determining both the right to fees and the method of calculating them.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating fees.").  Following the California Supreme Court's decision in *Lafitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016), courts may either use the lodestar approach or "may determine the amount of reasonable fees by choosing an appropriate percentage of the fund created."  *Lafitte,* 1 Cal. 5th at 503-06.  In discerning an appropriate percentage in a common fund case, the California Supreme Court suggested considering the risks and potential value of

the litigation, the contingency, novelty, and difficulty of the litigation, the skills shown by counsel, and a lodestar cross-check. *Id.* at 495, 503-06. Although the court recognized the Ninth Circuit's 25 percent benchmark in common fund cases, it did not adopt this touchstone.[6] Generally, "California courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (approving a fee award of one-third of the $15,150,000 settlement fund in a class action settlement).

Here, Class Counsel submit that awarding $3,900,000.00 or 30 percent of the settlement fund is fair and reasonable in light of the substantial hours expended, the discovery conducted, preparation and attendance at one mediation, the litigation risks associated with proceeding, the novel nature of the liability, the complex nature of the case, the contingent nature of the fee, Class Counsel's experience, and the benefit that has been conferred on the class. (Doc. No. 81-1 at 8-9.) The court is persuaded that the requested fees are reasonable.

As the court has acknowledged above, the settlement amount of $13,000,000 confers substantial benefits upon the Settlement Class, particularly in light of the risks associated with continuing this litigation to trial and weighs in favor of the fee amount. The litigation as a whole involves some novel legal issues involving OON Balance Inquiry Fees, coupled

---

[6] When employing their discretion and utilizing the percentage-of-recovery method, federal "courts typically calculate 25% of the [common settlement] fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942. In assessing the reasonableness of the award in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to be used, including "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g. cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

with some standard theories surrounding breach of contract and UCL claims.  *See In re Heritage Bond Litig.,* 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award.")   The experience of Class Counsel in litigating class actions of this type also supports the request.  Class Counsel took this case on a contingency fee basis and assumed the contingent risk of non-payment which weighs in favor of the award.  *See In re Quantum Health Res., Inc. Sec. Litig.,* 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) ("Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case.")   Moreover, the reaction of the class to the settlement supports the fee application as no class member has objected and only 39 out of over 1.6 million class members request exclusion.  *See In re Heritage Bond,* 2005 WL 1594403, at *21 ("The existence or absence of objectors to the attorneys' fee award is a factor in determining the appropriate fee award") (citation omitted).   The fact that the Settlement has been reached relatively early should not detract from the success achieved, especially in light of Counsel's successful defense of the partial summary judgment motion brought on Plaintiffs' breach of contract claim.  Finally, Plaintiffs point to Capital One's adoption of industry-leading disclosures on OON Fees and the performance of significant data analysis work Capital One performed that significantly reduced notice and administration costs to bolster their fee request. (Doc. No. 81-1 at 17-19.)

Class Counsel have submitted a lodestar calculation with their request.  (Doc. No. 81-1 at 24-27.)  Class Counsel declare a total of 1,794.2 hours have been worked on this case and estimate an additional 70 hours of work will occur before this case is closed.[7]  The

---

[7] This additional 70 hours is for final approval, settlement execution, distribution of common fund and includes: "prepare motion for final approval, and all supporting declarations, respond to objections, respond to class member inquiries, prepare for and attend final approval hearing, work with settlement administrator to ensure proper

calculated lodestar for these hours is $1,164,254.50.  Class Counsel's loadstar calculation results in a multiplier of 3.35.  It is attested that: (1) Kaliel PLLC expended a total of 1086.6 hours on the case and that the calculated lodestar fee on these hours is $704,937, (Doc. No. 81.2 at ¶ 46); (2) Carlson Lynch LLP, expended a total of 732.60 hours on the case and that the calculated lodestar fee on these hours is $423,317.50 (Doc. No. 81-3 at ¶ 46); and (3) Kick Law Firm, APC, expended 45 hours on the case, and that the calculated lodestar fee on these hours is $36,000. (Doc. No. 81.2 at ¶ 49.)  Included in the lodestar calculation was work performed by paralegals. Counsel calculate the lodestar with hourly rates for attorneys from all three firms ranging from $450 to $850 an hour, and the paralegals are billed at $125 and $203 an hour.

In support, Class Counsel have submitted declarations attesting to the hours worked and billing rates, a Kaliel PLLC firm profile, a Carlson Lynch Sweet Kilpela & Carpenter LLP 2018 Firm Resume, a list of overdraft fee cases awarding 30 percent or more of the settlement fund in attorneys' fees, and a list of class action matters that Carlson Lynch's customary rates have been approved in the Superior Courts in California. (Doc. No. 81-1 at 25-6; 81-2 at 15-19, 21; 81-3 at 11-34.)  Mr. Kaliel declares that his hourly rate is $747, and his colleague, Sophia Gold's partner rate is $458.00.  (Doc. No. 81-2 at ¶ 43.)  Mr. Carpenter declares that the partner rate at his firm is $750 an hour and the hourly rate for the associates is $450 an hour.   (No. 81-3 at ¶ 9.)  The work performed by the individuals at the Carlson Lynch and Kaliel firms are summarized in charts, which provide brief summaries of the tasks performed.  (*See* Doc. Nos. 81-2 at 9-11; 81-3 at 5-8.)

The chart provided by Mr. Carpenter allots tasks by simply assigning them under the following categories: "partner tasks;" "associate tasks;" and "paralegal tasks."  But neither the names of the partners nor the associates who worked on this case were submitted as

_____

distribution of funds to class members, prepare any post-final approval motions."   (Doc. No. 81-2 at 11; Doc. No. 81-3 at 8.)

part of the lodestar calculation.  Mr. Carpenter does, however, attest that both he and his partner, Eddie Kim, "were actively involved in the management of the Action.  We assigned litigation tasks to our associates, but performed the high-level litigation strategy, expert vetting, negotiation of the settlement and oversaw the approval process and law & motion work."  (Id at ¶ 7.)  The resume of Mr. Carpenter's firm, Carlson Lynch, (*see* Doc. No. 81-2 at 11-34) lists ten associates and one attorney working in an "of counsel" capacity with varying degrees of experience and provides no information regarding Mr. Jae K. Kim.

The court does not take issue with the rates being charged by either Mr. Kaliel ($747), Ms. Gold ($458), nor Mr. Carpenter ($750).  Their hourly rates appropriately reflect their years of experience in the arena of class action litigation: Mr. Carpenter has been practicing law for nearly twenty years, Mr. Kaliel for 15 years and Ms. Gold for 5 years.  But, based on the little information provided by Mr. Carpenter, it is more difficult for the court to determine if the rates of the associates or that of Mr. Kim, are reasonable.  Nevertheless, the court may "rely on its own familiarity with the legal market" to determine the reasonable rate of the unidentified members of the Carlson Lynch firm.  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  Partner rates of $750 and associate rates of $450 have been accepted in other class action cases by this court and other district courts in class action litigation in this community  *See, e.g., Lopez v. Mgmt. & Training Corp.,* Case No. 17cv1624 JM(RBM), 2020 WL 1911571, at * (S.D. Cal. Apr. 20, 2020) (approving attorneys' fee request with rates ranging from $500 to $900 per hour); *McGrath v. Wyndham Resort Dev. Corp.,* Case No.: 15cv1631 JM (KSC), 2018 WL 637858, at *7-10 (S.D. Cal. Jan 30, 2018) (approving attorneys' fee request from class counsel with rates ranging from $450 to $850); *Nunez v. BAE Systems San Diego Ship Repair Inc.,* 292 F. Supp. 3d 1018, 1055-1057 (S.D. Cal. 2017) (approving hourly rate of $600 and awarding 25 percent of common fund).  Accordingly, after reviewing the evidence and awards in similar cases, the court concludes the hourly rates Class Counsel seek are reasonable. *See United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990)* ("rate determinations in other cases, particularly those setting a rate for the plaintiffs'

attorney, are satisfactory evidence of the prevailing market rate.") (internal citation omitted).

While the court need not engage in a full-blown lodestar analysis when the primary basis remains the percentage method, the calculation is meant to provide a "useful perspective on the reasonableness of a given percentage award." *Vizcaino,* 290 F.3d at 1050. Some review is required, however, even though the court need not closely scrutinize each claimed attorney-hour.

Here, Class Counsel assert they have worked 1,864.2 on this case but provided very little detail to support their fee request. Both Kaliel PLLC and Carlson Lynch, LLP provided charts outlining the tasks performed that lumped portions of this litigation together and made it difficult for the court to perform a close review to determine what work was reasonable and necessary under the circumstances. (*See* Doc. Nos. 81-2 at 9-11; 81-3 at 5-8.) After reviewing this less than robust submission, the court had questions regarding: (1) the overly general nature of the entries as whole: (2) the potential overlap in the fees being charged and the amount of time being assigned for tasks related to "the final approval, settlement execution, distribution of common fund;" (3) entries related to "the pre-suit investigation, including in-person transactions at 43 separate ATM machines;" and (4) entries regarding consulting with experts. (See Doc. Nos. 81-2 at 9-11; 81-3 at 5-8.) During a lengthy hearing, the court's initial reservations were ultimately assuaged by Counsel.[8]

Thus, guided by the principle that it is incumbent upon it to award fees for work that was reasonable and necessary under the circumstances, the court finds the full award requested appropriate here. This reflects the very positive result achieved for the class, the

---

[8] At the final hearing, when the court suggested additional information on performed tasks would have been helpful, Counsel stressed a reluctance to burden the court with timesheets. There is, however, a happy medium between timesheets and the cryptic summaries that were submitted.

novel legal issue litigated, the contingent nature of the litigation, the changes Capital One has agreed to make to its OON disclosures and the creative notice requirement agreement reached by the parties.  *See Spann v. J.C. Penny Corp.,* 211 F. Supp. 3d 1244, 1263 (C.D. Cal. 2016) ("As always, when determining attorneys' fees the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.") (quoting *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 2211862, at *14 (N.D. Cal. 2007) *aff'd* 331 Fed. Appx. 452 (9th Cir. 2009)).  Accordingly, the court awards Class Counsel attorneys' fees in the amount of $3,900,000.

### B. Settlement Administration Costs

BrownGreer provided a declaration, estimating administrative costs at $997,933. (Doc. No. 90-3 at ¶ 21 n.6.)  At the final hearing, Counsel relayed a revised estimate of $850,000 to the court.  Accordingly, the court approves class administrator fees not to exceed $900,000 absent further order of the court.

### C. Costs

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Plaintiffs assert that they have incurred $ 15,685.18 in costs over the course of the litigation. (Doc. Nos. 81-2 at ¶ 50; 81-3 at ¶ 17.)  The court has reviewed the request and finds it to be reasonable.  Accordingly, the court awards $15,685.18 in costs.

### D. Class Representative Payments

Although "incentive awards are fairly typical in class action cases," they are discretionary.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement."  *Staton*, 327 F.3d at 976.  (internal ellipses, quotations, and citation omitted).  The purpose of incentive awards, therefore, is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez,* 563 F.3d at

958-59.  However, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions Inc.,* 715 F.3d 1157, 1164 (9th Cir. 2013).

In the settlement papers, the two named Plaintiffs ask for incentive awards of $10,000 each.  Class Counsel declare that the two named Plaintiffs expended hours advancing this litigation, disclosed their personal financial difficulties, and opened themselves up to notoriety.  Mr. Kaliel attests that Plaintiffs submitted to interviews, provided discovery documents, each sat for a deposition and participated in conferences with Counsel.  (Doc. No. 81-2 at ¶ 51.)  Further, Mr. Kaliel commends Plaintiffs for "taking action to protect the interests of over a million Capital One accountholders who were affected by Capital One's fee policies."  (*Id.*)  Neither Mr. Figueroa nor Ms. Jackson submitted a declaration in support of the request.

Given Plaintiffs' level of involvement in the case, the undertaking of the risk in bringing this action, and the fact the amount of the request is consistent with those typically awarded as incentive payments, the court determines that Plaintiffs' request is reasonable.  *See, e.g., McGrath,* 2018 WL 637858, at *11 (awarding $10,000 to class representative); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) ($25,000 award); *Cicero v. DirecTV,* No EDCV 07-1182, 2010 WL 2991486, at *7 (C.D. Cal. July 27, 2010) (approving incentive awards of $7,500 and $5,000).  There are no circumstances indicating that these awards would create a conflict between the named Plaintiffs and Class Members.  Accordingly, Plaintiffs Figueroa and Jackson are each awarded $10,000 as a service award.

### III.    Conclusion

In accordance with the foregoing, the court ORDERS as follows:

1. The court **GRANTS** final approval of the proposed Settlement Agreement (Doc. No. 91);

2. Class Members are defined as:

All Capital One accountholders in the United States who, during the Class Period, incurred at least one Out of Network ("OON") Balance Inquiry Fee.  Excluded from the Settlement Class is Capital One, its parents, subsidiaries, affiliates, officers and directors; all accountholders who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

Class period is defined as follows:

For settlement Class Members whose accounts were established in Louisiana: the period from April 6, 2008 to June 30, 2020;

For settlement Class Members whose accounts were established in Connecticut, New York and New Jersey: the period from April 6, 2012 to June 30, 2020;

For settlement Class Members whose accounts were established in Virginia: the period from April 6, 2013 to June 30, 2020;

For settlement Class Members whose accounts were established in Texas: the period from April 6, 2014 to June 30, 2020; and

For settlement Class Members whose accounts were established in the District of Columbia, Maryland, and Delaware: the period from April 6, 2015 to June 30, 2020.

3.  This order applies to all claims or causes of action settled under the Settlement Agreement and binds all Class Members who did not affirmatively opt-out of the Settlement Agreement by submitting a timely and valid Request for Exclusion. This order does not bind persons who filed timely and valid Requests for Exclusion;

4.  Plaintiffs and all Class Members who did not timely submit a valid Request for Exclusion are: (1) deemed to have released and discharged Defendant from any and all Released Claims accruing during the Class Period; and (2) barred and permanently enjoined from prosecuting any and all Released Claims against the Released Parties. The full terms of the releases described in this paragraph are set

18cv692 JM(BGS)

forth in paragraph 2.3 of the Settlement Agreement and are specifically incorporated herein by this reference;

5. The Settlement Administrator will issue individual settlement payments to participating Class members according to the terms and timeline stated in the Settlement Agreement;

6. The court **GRANTS** Plaintiffs' motion for attorneys' fees, costs and class representative payments (Doc. No. 81). The court **GRANTS** Class Counsel attorneys' fees in the amount of $3,900,000 and $15,686.18 in costs from the Settlement Fund. The Settlement Administrator shall pay Class Counsel from the Settlement Fund within ten (10) days of Final Approval of the Settlement, as set forth in Paragraph 3.2(b) of the Settlement Agreement;

7. The court **GRANTS** a class representative award of $10,000 to each of the named Plaintiffs, Jacob Figueroa and Mary Jackson, to be paid from the Settlement Fund. The Settlement Administrator shall pay Plaintiffs from the Settlement Fund within ten (10) days of the Final Approval of the Settlement, as set forth in Paragraph 3.2(b) of the Settlement Agreement;

8. The court **APPROVES** settlement administrator costs not to exceed $900,000 absent further order of the court. Payment shall be made from the Settlement Fund to BrownGreer pursuant to the timeline stated in the Settlement;

9. The court retains continuing jurisdiction over this Settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters and addressing such post-judgment matters as may be appropriate under court rules and applicable law; and

///
///
///
///
///

18cv692 JM(BGS)

10. Judgment is entered on the terms set forth above.  The Clerk of the Court shall
close the case.

IT IS SO ORDERED.

Dated:  January 21, 2021

Hon. Jeffrey T. Miller
United States District Judge

18cv692 JM(BGS)