1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   JACOB FIGUEROA and MARY                 Case No.:  18cv692 JM(BGS)
     JACKSON, on behalf of themselves and
12   all others similarly situated,
                                             **ORDER ON JOINT MOTION TO**
13                            Plaintiffs,    **APPROVE SETTLEMENT**
                                             **ADMINISTRATION FEES FOR**
14   v.                                      **SECONDARY DISTRIBUTION OF**
                                             **SETTLEMENT FUNDS AND**
15   CAPITAL ONE, N. A.,                     **DESIGNATION OF CY PRES**
                                             **RECIPIENT**
16                            Defendant.

17

18          On September 9, 21, 2023, the Parties filed Joint Motion to Approve Settlement

19   Administration Fees for Secondary Distribution of Settlement Funds and Designation of

20   *Cy Pres* Recipient, ("Joint Motion") (Doc. No. 95).  Upon review of the Joint Motion, the

21   court determined that supplemental briefing would be beneficial.  Subsequently, the Parties

22   submitted their supplemental briefing, and the court now finds the Joint Motion suitable

23   for submission on the papers and without oral argument in accordance with Civil Local

24   Rule 7.1(d)(1).  For the reasons set forth below, the Joint Motion is granted.

25                                    **Discussion**

26       **1.  Settlement Administrator Fees**

27          On January 21, 2021, this court entered a Final Approval Order regarding the

28   proposed settlement agreement in this class action suit.  (Doc. No. 93.)  The Final Order

                                          1

1   approved class settlement administrator fees not to exceed $900,000, "absent further order

2   of the court." *Id.* at 25.   The high settlement administrator fees sought by BrownGreer,

3   PLC, were approved based on a declaration it provided estimating costs of $997,933 and

4   Class Counsel relaying a revised estimate of $850,000 to the court at the final approval

5   hearing.  *Id.* at 22.  Indeed, when the court questioned Class Counsel on BrownGreer's

6   final bill at the hearing, Mr. Kaliel anticipated it would be "in the $850,000 range" and he

7   was certain it would be "south of $1 million."  *Id.* at 3 fn. 2.

8        The Joint Motion states that the settlement administrator has now completed both

9   the initial and second round of disbursements as contemplated by the settlement agreement,

10   and that the secondary distribution "which includes class member checks, postage, data

11   storage, coordinating and processing of mail and checks, amounted to $112,245.49." Doc.

12   No. 95 at 2.  No further information was provided.  Because BrownGreer's fees now exceed

13   over one-million dollars, the court's request for additional briefing ordered the Parties to

14   provide the court "by way of declarations from BrownGreer **and** Counsel, a full accounting

15   regarding the costs incurred by BrownGreer, along with any other pertinent information

16   that would explain" these costs.  Doc.  No. 96 at 2.

17        The additional briefing provides that BrownGreer's expenses have not exceeded the

18   $900,000 cap imposed by the court.  (Doc. No. 97 at 2.)  Indeed, the Parties represent that

19   Brown Green discounted its invoices by approximately $19,000 "in order to come in at the

20   cap set by the Court."  *Id.* at 2.  They contend that the settlement administrator fees of

21   $112,245.40 were not contemplated in the settlement agreement and were for the optional

22   services related to the secondary distribution not contemplated by the settlement

23   agreement, stating "the Parties did not understand the court's cap to apply to these

24   additional services."  *Id.* at 2-3.

25        While it is true that the settlement agreement is silent regarding administrator fees

26   for a secondary distribution, section 3:4 of the agreement provides:

27        Residual. In the event that there is any residual in the Settlement Fund
         Account after the distributions required by this Agreement are completed, said
28

2

1
2
3
4
5
6

> funds shall in no circumstance revert to Capital One. At the election of Class Counsel and counsel for Capital One, and subject to the approval of the Court, the funds may be distributed to Settlement Class Members via a secondary distribution if economically feasible or through a residual *cy pres* organization, which will be an entity jointly agreed by the Parties and approved by the Court. Any residual secondary distribution or *cy pres* distribution shall be paid as soon as reasonably possible following the completion of distribution of funds to the Settlement Class Members.

7   Doc. No. 75 at 15.  The Parties did not however ask for court approval before making the

8   secondary distribution, which the supplemental briefing provides was in excess of

9   $2 million.  Rather, after receiving a cost estimate for the secondary distribution, the Parties

10  determined that a secondary distribution made the most sense.  Since the secondary

11  distribution involved Class Members receiving a share of unused funds in excess of

12  $2 million (*see* Doc. 97 at 3), the court takes no issue with this decision.  Accordingly, the

13  court **APPROVES** the additional settlement fees in the amount of $112,245.49.

14      **2.  *Cy Pres* Funds**

15      Additionally, the Parties request the court approve the distribution of the residual

16  $440,998.02 left in the settlement fund to a *cy pres* recipient they have chosen, Jump$tart

17  Coalition for Personal Financial Literacy ("Jump$tart Coalition').

18      "A *cy pres* remedy, sometimes called 'fluid recovery,' *Mirfasihi v. Fleet Mortg.*

19  *Corp.,* 356 F.3d 781, 784 (7th Cir. 2004), is a settlement structure wherein class members

20  receive an indirect benefit (usually through defendant donations to a third party rather than

21  a direct monetary payment." *Lane v. Facebook, Inc.* 696 F.3d 811, 819 (9th Cir. 2012).

22  The "*cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions

23  of a class action settlement fund to the 'next best' class of beneficiaries." *In re Google Inc.*

24  *Street View Elec. Commc'ns. Litig.*  21 4th 1102, 1111 (9th Cir. 2021) (quoting *Nachshin*

25  *v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)).  The requirement "that a *cy pres*

26  remedy must be the 'next best distribution' of settlement funds means only that a district

27  court should not approve a *cy pres* distribution unless it bears a substantial nexus to the

28  interests of the class members." *Lane v. Facebook, Inc*, 696 F.3d 811, 821 (9th Cir. 2012)

(quoting *Nachshin*, 663 F.3d at 1036) (finding a substantial nexus between Facebook privacy claims and charity giving grants promoting online privacy and security).  The district court's review of a class-action settlement that calls for a *cy pres* remedy is not substantively different from that of any other class-action settlement except that the court should not find the settlement fair, adequate, and reasonable unless the *cy pres* remedy 'account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members . . . ."  *Lane,* 696 F.3d at 819-20 (quoting *Nachshin* 663 F.3d at 1036).

Here, Plaintiffs alleged violations of numerous consumer protection laws designed to protect a consumer's rights, along with associated breach of contract claims.  All of Plaintiffs' claims centered around the fees Defendant, Capital One, N.A., charges its customers for using Out-of-Network ("OON") automatic teller machines.  Plaintiffs alleged that the fees for OON balance inquiries, or "third" fees, were wrongly charged and were in violation of Defendant's standardized account agreement, Fee Schedule, and Electronic Funds Transfers Agreement and Disclosure. The settlement agreement provides that any residual left in the settlement fund will be distributed to a "cy pres organization, which will be jointly agreed by the Parties and approved by the Court." Doc. No. 75 at 15.

Aside from the name of the proposed recipient of the *cy pres* award, no further information was provided in the original Joint Motion, prompting this court to require the Parties to demonstrate how their proposed *cy pres* remedy considers the nature of Plaintiffs' lawsuit, the objectives of the statutes underlying Plaintiffs' claims, and the interests of the silent class members, including their geographic diversity.  *See, e.g., In re Google Inc.,* 21 F.4th at 1112-13.  The court is now informed that Jump$tart Coalition "consists of more than 100 national organizations and a network of 51 independent, affiliated state coalitions that share a commitment to advancing youth financial literacy and raising public awareness about the importance of financial literacy." Doc. No. 99 at 2. *See also* Doc. No. 99-1 at ¶ 2, Declaration of Amina Carter, Director of Operations and Marketing for Jump$tart Coalition.  Thus, the Parties contend that Jump$tart Coalition's work can help class

18cv692 JM(BGS)

1    members and the public, writ large, better understand and decipher financial disclosures,
2    including the fees and costs associated with the services provided by financial institutions
3    in order to make informed decisions when selecting a banking provider.  Doc. No 99 at 2.
4    Relatedly, the Parties submit that improved financial literacy will better help class members
5    (and their family members) develop a greater comprehension when and how fees
6    associated with financial transactions are incurred, how such fees accrue over time, and
7    what impact those fees may have one one's finances.  *Id.* at 2-3.  Accordingly, the
8    substantial nexus requirement is satisfied.

9         Thus, in accordance with section 3.4 of the settlement agreement (*see* Doc. No. 75
10   at 15), the court **APPOINTS** Jump$tart Coalition as the *cy pres* recipient and **AWARDS**
11   it the $440,998.02 in residual funds.

## Conclusion

13        In accordance with the foregoing, the court **GRANTS** the Parties' Joint Motion to
14   Approve Settlement Administration Fees for Secondary Disbursement of Settlement Funds
15   and Designation of Cy Pres Recipient (Doc. No. 95).  All residual funds in the settlement
16   fund following the payment of $112,245.49 to the settlement administrator for the
17   secondary distribution shall be distributed to Jump$tart Coalition for Personal Financial
18   Literacy as the *cy pres* recipient.

19        IT IS SO ORDERED.
20    Dated:  December 1, 2023

         _____
         Hon. Jeffrey T. Miller
         United States District Judge

5

18cv692 JM(BGS)